**JACOBSON LAW FIRM**
2730 EAST BROADWAY BLVD., SUITE 160
TUCSON, ARIZONA 85716
TELEPHONE (520) 885-2518
FACSIMILE (520) 844-1011
jeff@jhj-law.com
Jeffrey H. Jacobson, PCC #65402; SB#019502
Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| CARRIE FERRARA CLARK, | Case No.  4:14-CV-02543-TUC-CKJ |
| Plaintiff, | |
| vs. | **AMENDED JOINT RULE 16 PRETRIAL CONFERENCE REPORT** |
| CITY OF TUCSON, | |
| Defendant. | |

The parties, having met and conferred pursuant to the Court's April 3, 2015, Order, submit their Amended Joint Case Management Conference Report pursuant to Rule 16, Fed.R.Civ.P., to reflect that counsel for the parties will appear telephonically at the Scheduling Conference set for May 11, 2015, at 10:15 a.m.

1. **Nature of the Case**

Factual and Legal Basis for Plaintiff's Claims:

Plaintiff was an employee with the City of Tucson's Fire Department (TFD) since 2007, first as a paramedic, and most recently as a fire inspector.  Plaintiff gave birth to her first child on July 19, 2012, and returned to work on October 27, 2012.  When she returned to work, Plaintiff was a Swing Paramedic on "C" Shift, where she was scheduled to work at different fire stations depending on TFD's needs.

Before she returned to work, because Plaintiff knew she would be pumping breast milk throughout her work day, she notified Battalion Chief (BC) Paul McDonough, of her

need for a private lactation room while on duty.  At the time, TFD did not have any procedures in place for dealing with Plaintiff's request.  Initially, BC McDonough and Plaintiff discussed having her work from Station 20 so as not to displace other employees and to bring as little attention to her situation as possible.  BC McDonough and Plaintiff were both aware that working from Station 20 was only temporary because she would be filling a temporary vacancy at that Station until the end of the year.

On or about October 27, 2012, Paramedic Jeff Todd, who was then-assigned to Station 12, told Plaintiff that he wanted to move to another station and would like to help her.  The next day, Todd sent an email to BC Brian Stevens formally requesting a transfer from Station 12 to fill the vacancy at Station 20, knowing this would help Plaintiff because her home is close to Station 12.  TFD, however, ignored Todd's request.

BC McDonough asked Plaintiff's husband, TFD Fire Captain Gordon Clark, whether Station 12 was a better fit for Plaintiff and if she would rather be there than at Station 20.  Captain Clark responded, "absolutely."  Station 12 was a perfect fit for Plaintiff because it has a private room suitable to express and pump her breast milk and available refrigerator storage space.  At the time, Station 12 had two other mothers on Plaintiff's shift, as well as a mother on a different shift, one of whom was also pumping breast milk.

On or about October 30, 2012, BC Stevens and Deputy Chief (DC) Ed Nied met with TFD's Human Resources Manager Joann Acedo regarding Todd's temporary transfer request to Station 12.  TFD denied Todd's transfer request even though TFD had previously granted other transfers between male coworkers for various reasons.  TFD also granted Todd's request to leave Station 12 and assigned him to a Swing position.  Contrary to Section 201 of the Rules of Assignment in TFD's Manual of Operations, TFD put Todd's Station 12 assignment out to bid.  On or about November 9, 2012, Plaintiff submitted a memorandum formally requesting a temporary assignment to Station 12.  In her memorandum, Plaintiff explained the reasons for her request.  Plaintiff's memorandum was

2

preceded by memoranda prepared by Todd and BC McDonough requesting Plaintiff's temporary assignment to Station 12.

As a result of the uncertainty surrounding her work assignment location, Plaintiff experienced stress and anxiety.  This contributed to her inability to produce enough milk for her son during the 24 hours she was at work, necessitating either Plaintiff's husband or mother to come to her work location to pick up additional milk during her shift.

On or about November 12, 2012, BC McDonough brought Plaintiff to headquarters to meet with DC Nied and DC Rodriguez.  Plaintiff attempted to explain her situation but was met with insensitive and inappropriate questions from DCs Nied and Rodriguez. Following the meeting, Plaintiff was advised that she would remain at Station 12 for only five additional days.  Due to the efforts of BC McDonough and as a result of other vacancies at Station 12, Plaintiff was able to remain at Station 12 through January 1, 2013.

Beginning in January 2013, Plaintiff was given swing assignments to locations which were not equipped with appropriate lactation rooms.  When Captain Clark mentioned this to TFD's scheduler, Captain Rick L'Heureux, he responded, "I don't think she deserves any special accommodations."  As a result, Plaintiff had to use vacation and sick leave time when she was assigned to stations that did not have a private space for lactation. This situation exacerbated Plaintiff's stress and anxiety because she never knew from day to day if she would be assigned to work at a station that would allow her to privately express and store her breast milk.

In approximately mid-January 2013, Plaintiff met with Marty Macias, an investigator in the City's Office of Equal Opportunity Programs (OEOP) to discuss the discrimination she was experiencing.  Ms. Macias told Plaintiff that she had a valid claim and gave Plaintiff a complaint form to fill out.  Plaintiff, however, chose not to file a formal complaint at that time, hoping that the situation would improve.  The situation did not

approve, and Plaintiff continued to be assigned to stations that were not equipped with an appropriate lactation room.

On or about March 20, 2013, after receiving another assignment that was not equipped with an appropriate lactation room, Plaintiff made repeated telephone calls to DC Rodriguez and Assistant Chief (AC) Mike Fischback, leaving messages that it was urgent she speak with them.  Her calls to DC Rodriguez and AC Fischback, however, were not returned.  Shortly before 5:00 p.m. on March 20, 2013, AC Fischback answered Plaintiff's fourth phone call, immediately put her on hold, and returned with DC Rodriguez and HR Manager Acedo.  Plaintiff explained that she had again been assigned to work at Station 9 that night which was not equipped with an appropriate lactation room.  DC Rodriguez responded that Station 9 was, "the only thing we have open for you tonight."  HR Manager Acedo told Plaintiff that "per the law," Station 9 was on an "approved list" because the Chief's combined office/bedroom and the Emergency Captain's combined office/bedroom both had closing doors.  HR Manager Acedo advised Plaintiff to just ask them to leave their rooms when she needed to pump.  Plaintiff then explained that she pumped milk every 2-3 hours, including   throughout the night, and that awakening her supervisors to leave their rooms so she could pump was unreasonable.  HR Manager Acedo then told Plaintiff, "your pumping seems excessive to me."  Plaintiff responded that this was normal for a newborn baby.  HR Manager Acedo replied, "well, it seems to me that you're not fit for duty." Exasperated and frustrated with HR Manager Acedo's lack of understanding and her offensive comments, Plaintiff responded, "you are out of your friggin' mind if you think I would awaken and ask a Chief or Captain to leave their assigned room every 2-3 hours to pump."  In response, both DC Rodriguez and AC Fischback agreed that Station 9 was not an acceptable location for pumping breast milk.  Plaintiff was so distraught that she was in tears and was unable to work her shift.

/ / /

4

On or about March 26, 2012, Plaintiff was summoned to TFD headquarters for a meeting with DC Rodriguez, AC Fischback and DC Nied.  Under normal TFD practice, her supervisor, BC McDonough, should have also been in attendance, but was not present.  Per the terms of City of Tucson Administrative Directives and the International Association of Fire Fighters Local 479 and City of Tucson Contract (CBA), Plaintiff called her C Shift Union Griever, Sloan Tamietti, to accompany her to the meeting.  Union Griever Tamietti called DC Rodriguez.  DC Rodriguez told Union Griever Tamietti, "labor doesn't need to be here for this."  Plaintiff told Union Griever Tamietti that she wanted him there anyway, and eventually he was allowed to join them.

During the meeting, Plaintiff was handed a letter stating that she was being written up for using the phrase "you're out of your friggin' mind" during the March 20, 2013, phone call.  AC Fischback then told Plaintiff that until August 2013, when her son would turn one year old, she would be assigned to work exclusively at Station 6 because the other TFD stations did not have conforming lactation rooms.  Station 6 is located at the far southeast boundary of the City on Wilmot off of I-10, and primarily responds to calls from the federal and state prisons on Wilmot.  Plaintiff asked AC Fischback for the list of approved stations but was told she could not have the list until it was revised because OEOP had just listed the stations that had a room with a locking door, and had not taken into account that some of those rooms were commander bedrooms.  TFD has never provided the approved list to Plaintiff, and as a result, because she was exclusively assigned to Station 6, Plaintiff was deprived of overtime earning opportunities and with one exception, station trades.  Plaintiff asked AC Fischback about working overtime and about trades.  AC Fischback told her that they had not "thought about that yet."  Plaintiff then asked why she could not work at Station 12, whereupon AC Fischback responded that Station 12 was not on the approved list.  Plaintiff pointed out that the only other nursing mother at the time in TFD, Arianne Phaneuf, was assigned to Station 12.  AC Fischback

replied, "well, that's what happens when you file a complaint with EEO."  Plaintiff told AC Fischback that she had not filed a complaint.  He responded, "well, someone called and got them involved."   Plaintiff's reassignment to a firefighter position at Station 6 occurred without formal notice via a TFD Employee Personnel Record Update Form and at the displeasure of the existing Station 6-assigned employee who was displaced as a result.

Plaintiff was continually approached by coworkers who asked if she was the one who complained about breastfeeding locations.  On or about July 19, 2013, TFD issued a new nursing room policy.  Shortly after the new policy was enacted, both Plaintiff and her husband, Captain Clark, were told by several individuals that the policy had become known as the "Carrie Clause."

While working at Station 6, an extra duty Captain, Jamie Sieminski, walked in, threw up his hands, and said, "oh, is this the nursing room?  I don't want to come in here if this is the nursing room."  Captain Nate Webber overheard Captain Sieminski's remark, and asked what he meant, to which Captain Sieminski replied, "oh, you haven't heard about the new nursing room policy?"  Plaintiff, who was embarrassed by the flippant remarks, then left the room.

In August 2013, during her first shift at Station 6 after her son's first birthday, Plaintiff received a call from HR Manager Acedo, advising Plaintiff that her time at Station 6 was up and that if she wanted more time she needed to formally request it through a memorandum.   In a subsequent meeting with Plaintiff, AC Brad Olson permanently assigned Plaintiff to Station 6.  Although working conditions improved significantly at Station 6 due to the efforts of AC Olson, it did not eliminate the damage that had previously been done to Plaintiff since her return to work after her son's birth.

On July 31, 2013, Plaintiff filed a written charge of discrimination with the Arizona Attorney General's Office, Civil Rights Division pursuant to the Arizona Civil Rights Act,

6

§ 41-1481(A).  In January 2014, Plaintiff informed TFD that she was again pregnant.  On April 24, 2014, the Attorney General's Office issued Plaintiff a Right to Sue letter.

On or about May 22, 2014, Captain Ted McDonough singled Plaintiff out and instructed Plaintiff to perform firefighting drills that none of the other members of her crew were required to perform.  When Plaintiff repeatedly asked Captain McDonough why she was being singled out, he ignored her and would not reply to her questions.  On May 22, 2014, Plaintiff filed a notice of claim against the City of Tucson for sex discrimination and retaliation that she had experienced since returning to work in October 2012.

Plaintiff was assigned to light duty on June 16, 2014 as a result of her pregnancy.  Up to the time Plaintiff went on her light duty assignment, HR Manager Acedo was frequently contacting Plaintiff asking her if she still had the same need to pump her breast milk, or words to that effect.

On or about June 17, 2014, BC Tim Nofs asked her to submit a memo about the May 22nd incident when Captain McDonough took her out to drill by herself because TFD administration wanted to pursue disciplinary action against her for insubordination.

On June 19, 2014, Plaintiff started her day at 6:00 a.m. in her light duty assignment (in the fire prevention division), planning to work a 10-hour shift.  Plaintiff's supervisor, Ken Brouillette, was aware of her schedule.  At approximately 2:40 p.m., Plaintiff left to exercise as she is required to do pursuant to TFD's Manual of Operations.  At approximately 2:45 p.m., HR Assistant Veronica Muñoz called Plaintiff and said that HR Manager Acedo told her that Plaintiff was not authorized to leave, and that she could not exercise without a doctor's note.  Further, Plaintiff was told that she was not allowed to come in to work before 7:00 a.m. Plaintiff proceeded to obtain a doctor's note which indicated that she was authorized to engage in low-impact exercise.  To Plaintiff's knowledge, TFD has never required a pregnant employee who is on a light duty assignment to provide a doctor's note in order to exercise.

7

On or about June 19 or 20, 2014, at HR Manager Acedo's direction, TFD's HR department changed Plaintiff's computerized time entry for June 18, 2014, and withdrew 6 hours from her vacation time bank instead of 3 hours.   The three additional hours withdrawn without Plaintiff's consent represented the one-hour differential between 6:00 a.m. and 7:00 a.m., the 1.5 hours she exercised and .5 for lunch.   Plaintiff's schedule was also changed to begin her day at 7:00 a.m.

Also on June 19, 2014, a meeting or meetings occurred between Mr. Brouillette, AC Joe Gulotta and HR Manager Acedo, amongst others.   Eventually, it was decided that Plaintiff would be allowed to exercise, but only at Station 1.   They also decided that Plaintiff would not be allowed to flex her time and that her schedule would be 7:00 a.m. to 5:30 p.m. every day.   To Plaintiff's knowledge, other than what is articulated in the TFD Manual of Operations, TFD has never restricted the exercise location for any employee.   To Plaintiff's knowledge, other TFD employees on light duty are allowed to start their shifts at 6:00 a.m. and are allowed to flex their time.

Since returning to work in October 2012, and continuing to this day, TFD has subjected Plaintiff to sex discrimination resulting in a hostile work environment including, but not limited to, the incidents discussed above.   Since TFD became aware that Plaintiff had contacted the OEOP in January 2013, and continuing to this day (including, but not limited to, the incidents discussed above), TFD has continued to retaliate against the Plaintiff in reprisal for Plaintiff reporting the FLSA violations.

<u>Factual and Legal Basis for Defendant's Defenses:</u>

Plaintiff Clark was hired by the City of Tucson, Tucson Fire Department ("TFD") on July 7, 2007.   She was promoted to the rank of paramedic on January 2, 2011, and was assigned to fire Station 4 from January 22nd through December 24th 2011. She then worked light duty, per her request, through July 16, 2012. She was assigned to swing shift on July

12, 2012 through November 15, 2012, and was out on Family Medical Leave during that same time period.  Clark returned from FMLA leave on October 27, 2012.

Upon her return, Clark sent a memorandum to her Battalion Chief, Paul McDonough, requesting that she be assigned to Station 12 for the duration of the time she would be expressing milk because her mother lived closer to that station; her mother was picking up milk for her son during this time. Positions at specific stations are governed by policies that allow for bidding for the assignment based upon seniority.  At the time Clark was assigned, there was one open assignment available for bid.  Clark was initially assigned to the position while it was open for bid.  Another TFD member won the bid and got the Station 12 assignment. Clark was assigned 5 more shifts at Station 12 and McDonough agreed to schedule her at Station 12 when other members from that Station were not on duty; this continued through the end of December 2012.

On January 7, 2013, Clark spoke with Marti Macias from the City's Office of Equal Opportunity Programs ("OEOP") department, but she never filed a formal complaint.  In March 2013, the City's OEOP department conducted an informal investigation into what Clark told them about the availability of lactation rooms and the department was provided some recommendations; i.e. put locks on the doors of the rooms provided for lactation.  The Tucson Fire Department implemented the recommendation by placing locks on the doors of the rooms made available at each fire station in April 2013.

On March 26, 2013, Clark was given verbal counseling for the manner in which she behaved with her superiors during a conversation they had on March 20, 2013.  On July 31, 2013, Plaintiff Clark filed her complaint with ACRD and EEOC alleging sex discrimination and retaliation for "condition postpartum" and "because [she] opposed a practice made unlawful under the Arizona Civil Rights Act, as amended, and Title VII of the Civil Rights Act of 1964, as amended." Her complaint contains various factual allegations beginning in October 2012 through March 26, 2013.

In March 2013, Clark was assigned to station 6 until August 2013.  On July 27, 2013, Plaintiff Clark submitted a memorandum requesting to remain at Station 6. In the memorandum she also stated that she was "mocked and joked with" by another member because of the implementation of the department's new nursing policy and that it made her "uncomfortable." In August 2013, TFD's Assistant Chief, Brad Olson, the Deputy Chief Rob Rodriguez, and Captain McDonough met with Plaintiff Clark to discuss the statements she made in the memorandum relating to being "mocked and joked with." The TFD members asked who engaged in this behavior and Clark refused to provide any additional information or provide the name(s) of any individual(s) allegedly involved.  The members also advised Clark of the need to report any misconduct or harassing behaviors and provided her with information about how to do so.  TFD was not able to address the alleged mocking or joking because Clark would not provide the department with any information.

As far as the City knows, Plaintiff Clark has not filed any other ACRD/EEOC complaint, other than the one she filed on July 31, 2013.

**2. Elements of Proof**

a.  Plaintiff's Claims:

The elements to prove sex discrimination in employment by a preponderance of the evidence are:

(1)     That Plaintiff was a member of a protected class by virtue of her sex;

(2)     That Plaintiff suffered an adverse employment action because of her sex; and

(3)     That Plaintiff sustained damages as a result of the adverse employment actions by Tucson Fire Department.

The elements to prove retaliation by a preponderance of the evidence are:

(1)     That Plaintiff filed a charge of discrimination with the Arizona Attorney General's Office Civil Rights Division regarding a claim of discrimination based on sex in

10

violation of the Fair Labor Standards Act (FLSA), Title VII of the Civil Rights Act of 1964, as amended, and the Arizona Civil Rights Act (ACRA);

(2)     That Plaintiff's initiation of the discrimination charge is a protected activity under the FLSA, Title VII, and the ACRA;

(3)     That Plaintiff was retaliated against by Tucson Fire Department in reprisal for reporting the FLSA violations; and

(4)     That Plaintiff sustained damages as a result of the retaliation by Tucson Fire Department.

b.  Defendant's Defenses:

**(1)     Count One-Sex Discrimination/Retaliation in Violation of FLSA, 29 U.S.C. § 207(r) and § 215**

The City complied with 29 U.S.C. § 207(r) by providing Clark with reasonable break time and "a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk." Clark never filed any formal complaint with the City's OEOP department or any agency alleging violation of the FLSA.  Clark therefore has no basis for a claim of retaliation under FLSA.

**(2)     Count Two-Sex Discrimination in Violation of Title VII**

"Before bringing suit under Title VII, a plaintiff must exhaust the administrative remedies under [42 U.S.C. § ] 2000e–5." *Karim–Panachi v. L.A. Police Dep't,* 839 F.2d 621, 626 (9th Cir.1988).  Plaintiff Clark filed a complaint with the ACRD/EEOC on July 31, 2013.  No claim has been filed regarding any actions by Defendant after that date, and all such claims are therefore barred by the failure to exhaust administrative remedies.

Plaintiff Clark claims she was subjected to "sex" discrimination based on her need to express milk at work. Under Title VII, as amended with the Pregnancy Discrimination Act ("PDA"), provides that "[t]he terms 'because of sex' or 'on the basis of sex' include, but are

not limited to, because of or on the basis of pregnancy, childbirth, or related medical

conditions[.]" 42 U.S.C. § 2000e-(k).  To pursue her claim under Title VII, Clark must first

make out a prima facie case by showing, "(1) [she] is a member of a protected class,

(2)[she] was qualified for [her] position, (3)[she] experienced an adverse employment

action, and (4) similarly situated individuals outside [her] protected class were treated more

favorably, or other circumstances surrounding the adverse employment action give rise to

an inference of discrimination." *See Peterson v. Hewlett–Packard Co., 358 F.3d 599, 603*

(2004) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d

668 (1973)). If Clark makes such prima facie showing, the burden shifts to the City to

articulate a "legitimate, non-discriminatory reason[ ] for the allegedly discriminatory

conduct." *Godwin v. Hunt Wesson, Inc.,* 150 F.3d 1217, 1220 (9th Cir.1998). If the City

articulates "a facially nondiscriminatory reason," the burden shifts back to Clark to show

"the [City's] reason was a pretext for discrimination." *Id.*

Plaintiff is unable to meet her burden of proving a prima facie case of sex

discrimination. Her need to express milk does not fall under the protections of Title VII and

the PDA as a "medical condition." *See Martinez v. N.B.C., Inc.*, 49 F.Supp. 2d 305, 310,

311, 84 Fair Empl. Prac. Cas. (BNA) 1683 (S.D. N.Y. 1999); *Derungs v. Wal-Mart Stores,*

*Inc.*, 374 F.3d 428, 2004 FED App. 0203P, 5 A.L.R.6th 751 (6th Cir.2004).

Clark did not suffer from any adverse employment action, let alone one that was

motivated by her need to express milk at work. Even if the court were to agree with the

Fifth Circuit Court of Appeals on the issue of whether expressing milk is protected under

Title VII and the PDA, her claim still fails because she was not subjected to any adverse

employment action as a result of her need to express milk at work. *See E.E.O.C. v. Houston*

*Funding II, Ltd.*, 717 F.3d 425, 430, fn. 6 (5th Cir. 2013). The decisions made and actions

taken by TFD and the City that relate to Clark's employment were done based on

articulable, non-discriminatory reasons.

1    All actions taken by the City were based upon neutral policies and legitimate, non-

2    discriminatory reasons.  The burden of proof therefore shifts to the Plaintiff to show that the

3    articulated reasons were pretextual.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93

4    S. Ct. 1817, 36 L. Ed. 2d 668 (1973).  Plaintiff cannot satisfy that burden.

5    **(3)    Count Three-Sex Discrimination/Hostile Work Environment in Violation of**

6    **A.R.S. § 41-1463(B)(1)**

7        Under A.R.S. § 41-1463(B)(1), it is unlawful "[t]o fail or refuse to hire or to

8    discharge any individual or otherwise to discriminate against any individual with respect to

9    the individual's compensation, terms, conditions or privileges of employment because of the

10   individual's…sex…" Arizona Civil Rights Act ("ACRA") is generally identical to Title VII;

11   therefore, federal Title VII case law is persuasive in interpreting the ACRA. *Bodett v.*

12   *CoxCom, Inc.,* 366 F.3d 736, 742 (9th Cir. 2004).

13       Plaintiff Clark is unable to prove a prima facie case for sex discrimination under the

14   ACRA for the same reasons stated under (2), above. Also, any allegations of sex

15   discrimination occurring after July 31, 2013, are barred for failure to exhaust her

16   administrative remedies.  *See* 42 U.S.C. § 2000e–5;  *Karim–Panachi v. L.A. Police Dep't,*

17   839 F.2d 621, 626 (9th Cir.1988).  Plaintiff also failed to provide information to Defendant

18   regarding alleged hostile conduct and thus prevented Defendant from addressing the issue.

19   **(4)    Count Four-Retaliation in Violation of A.R.S. § 41-1464(A)**

20       Under A.R.S. . § 41-1464(A), it is unlawful "to discriminate against any of [its]

21   employees…because the member…has opposed any practice which is an unlawful

22   employment practice under this article..." To state a claim of retaliation under Title VII,

23   plaintiff must allege:  1) that she committed a protected act; 2) that she suffered some sort

24   of adverse employment action; and 3) there is a casual connection between her action and

25   the adverse act.  *See Davis v. Team Elec Co.*, 520 F.3d 1080, 1093-94 (9th Cir.2008).  Title

26   VII case law is persuasive in interpreting Arizona Civil Rights Act since it is modeled after

federal employment discrimination laws.  *See Timmons v. City of Tucson,* 171 Ariz. 350, 354, 830 P.2d 871, 875 (App.1991) (citing *Higdon v. Evergreen International Airlines,* 138 Ariz. 163, 673 P.2d 907 (1983).

Plaintiff Clark cannot show she suffered from an adverse employment action.

All actions taken by the City were based upon neutral policies and legitimate, non-discriminatory reasons.  The burden of proof therefore shifts to the Plaintiff to show that the articulated reasons were pretextual.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *Sees v. KTUC, Inc.*, 148 Ariz. 366, 714 P.2d 859 (Ct. App. 1985).   Plaintiff cannot satisfy that burden.

### 3.  Factual and Legal Issues Genuinely in Dispute

Plaintiff's Version of Factual and Legal Issues Genuinely in Dispute:

(1)    Whether the Defendant discriminated against the Plaintiff on the basis of her sex;

(2)    Whether the Defendant retaliated against the Plaintiff for exercising her right to file a claim of discrimination with the Arizona Attorney General's Office;

(3)    Whether Plaintiff has suffered recoverable damages; and

(4)    Whether Plaintiff's claims and/or damages are barred or reduced by application of any of the affirmative defenses asserted by Defendant.

Defendant's Version of Factual and Legal Issues Genuinely in Dispute:

In addition to those factual and legal issues set forth by Plaintiff, above, Defendant believes the following are genuinely in dispute as well:

(1)    Whether Plaintiff has a private cause of action under the FLSA, 29 U.S.C. § 207(r).

(2)    Whether Plaintiff exhausted her administrative remedies.

(3)    Whether the City was in compliance with the FLSA, 29 U.S.C. § 207(r).

(4)    Whether Plaintiff was discriminated against in any way.

14

(5)     Whether Plaintiff is a member of a protected class as a result of her need to express milk at work; is it considered a "medical condition" under the PDA, thus entitling her to protection under Title VII and the PDA.

(6)     Whether Plaintiff suffered from any adverse employment action.

(7)     Whether Defendant's acts were based upon neutral policies and were for legitimate, non-discriminatory reasons.

(8)     Whether similarly situated individuals outside her sex were treated more favorably.

(9)     Whether the City or TFD took any action against Plaintiff Clark after she filed her ACRD/EEOC complaint on July 31, 2013.

(10)     Whether there is in causal connection between any alleged actions taken by the City or the TFD and her filing her ACRD/EEOC complaint.

(11)     Whether Plaintiff failed and refused to provide Defendant with information regarding alleged hostile comments that would have allowed Defendant to address them.

**4.  Jurisdictional Basis of Case**

Jurisdiction is conferred on this Court by 28 U.S.C. §§1331 and 1367.

**5.  Parties That Have Not Been Served**

None.

**6.  Names of Parties Not Subject to Court's Jurisdiction**

None

**7.  Dispositive or Partially Dispositive Issues**

If warranted after discovery is completed, dispositive motions will be filed.

**8.  Whether Case is Suitable for Reference to Arbitration or to Magistrate**

No.

**9.  Status of Related Cases**

None.

15

**10-15.  <u>Initial Disclosures, Changes in Discovery, and Deadlines</u>**

Initial disclosures shall be completed by May 26, 2015, pursuant to Rule 26(a), Fed.R.Civ.P.

<u>Proposed Deadlines</u>:

| | | |
|---|---|---|
| a. | Initial Disclosures | May 26, 2015 |
| b. | Add Parties or Amend Pleadings | June 26, 2015 |
| c. | Completion of Discovery | November 9, 2015 |
| d. | Filing dispositive motions | December 18, 2016 |
| e. | Expert witnesses and reports: | |
| | Plaintiff's experts and reports | July 24, 2015 |
| | Defendant's experts and reports | August 24, 2015 |
| | Rebuttal expert witnesses and reports | September 25, 2015 |
| f. | Disclosure of witness list | September 25, 2015 |
| g. | Filing joint settlement status reports | July 23, 2015, and every 60 days thereafter. |
| h. | Joint Pre-trial Statement | January 18, 2016; however, if dispositive motions are filed and still pending, then 45 days following the Court's ruling on dispositive motions. |

**16.  <u>Evidentiary Hearings</u>**

None at this time.

**17.  <u>Trial</u>**

The parties estimate that the case will be ready for trial on March 22, 2016. Estimated length of trial is three (3) days.

**18.  <u>Jury Trial</u>**

Neither party has requested a jury trial.

/ / /

**19.  <u>Settlement</u>**

It is too early in the process to determine if the case can be settled.

**20.  <u>Unusual, Difficult, or Complex Problems</u>**

None.

**21.  <u>Suggestions to Expedite Disposition of This Case</u>**

None.

DATED this 1st day of May, 2015.

JACOBSON LAW FIRM                              TUCSON CITY ATTORNEY


  s/Jeffrey H. Jacobson_____              s/ Michelle Saavedra_____
Jeffrey H. Jacobson                          Michelle Saavedra
Attorney for Plaintiff                       Attorney for Defendant



Filed via the CM/ECF system and copy electronically
provided this 1st day of  May, 2015, to:

Michael W.L. McCrory
Principal Assistant City Attorney
Michelle Saavedra
Senior Assistant City Attorney for
MICHAEL G. RANKIN
City Attorney
P.O. Box 27210
Tucson, AZ 85726-7210


  s/Kate Manns_____
Kate Manns