**JACOBSON LAW FIRM**
2730 EAST BROADWAY BLVD., SUITE 160
TUCSON, ARIZONA 85716
TELEPHONE (520) 885-2518
FACSIMILE (520) 844-1011
jeff@jhj-law.com
 Jeffrey H. Jacobson, PCC #65402; SB#019502
 Attorney for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| CARRIE FERRARA CLARK,<br><br>  Plaintiff,<br><br>vs.<br><br>CITY OF TUCSON,<br><br>  Defendant. | No. CV-14-02543-TUC-CKJ<br><br>**RESPONSE TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO AMEND COMPLAINT** |

Plaintiff, through undersigned counsel, responds to Defendant's July 10, 2015, Opposition to her Motion to Amend Complaint. For the reasons discussed below, Defendant's opposition should be rejected and leave given to file the Amended Complaint.

Fed.R.Civ.P. Rule 15(a)(2) states, in relevant part:

> A party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Defendant's opposition is based on a singular, flawed premise; that the new allegations in the proposed Amended Complaint "bear no relation to those in the original complaint." Doc. 15, pg. 3, ln. 3-5.[1] In support of this premise, Defendant cites *Planned Parenthood v. Neely*, 130 F.3d 400 (9th Cir. 1997), which states that supplemental complaints which introduce a "separate, distinct and new cause of action" should be

---

[1] The abbreviation "Doc" refers to the docket number in this case.

rejected. *Id.* at 402. However, the factual and procedural posture of the instant action is distinguishable from *Neely*.

In *Neely*, the plaintiffs sought to enjoin enforcement of the State of Arizona's parental consent abortion statute. *Id*. at 401–402. The district court eventually entered an order declaring the statute unconstitutional and issued a permanent injunction and the State of Arizona defendants did not appeal. *Id.* Several years later, the state legislature amended and reenacted the parental consent abortion statute. Plaintiffs then sought leave to supplement their complaint to challenge the new legislation before its effective date. *Id.* The district court granted plaintiffs' motion to supplement, found the revised statute unconstitutional and permanently enjoined defendants from enforcing the statute. *Id.* The Ninth Circuit reversed and held that plaintiffs' supplemental complaint involved a new and distinct action that should have been the subject of a separate suit. *Id.* at 402. Critically, the court noted that plaintiffs were challenging a different statute than the one originally at issue, and that the original suit had already concluded in a final judgment rendered four years earlier which was not appealed. *Id.* Additionally, the court emphasized the fact that since the earlier action had been concluded, the efficiency that would otherwise have been realized by resolving the original and supplemental claims together would not exist. *Id.*

In this case, the original dispute has not been resolved and remains ongoing. The parties are the same and all of the involved employees, upon information and belief, remain employed by Defendant. Because all of the people involved in this matter are City of Tucson employees, Defendant is legally responsible for the acts and/or omissions giving rise to all of the causes of action in this case. This Court has jurisdiction over Plaintiff's discrimination and (new) retaliation claims. Next, as discussed below, there is a clear factual relationship between the claims in Plaintiff's Complaint and her proposed Amended Complaint.

Many in TFD's upper management were aware of Plaintiff's EEO activity. On or about March 26, 2012, Plaintiff was summoned to TFD headquarters for a meeting with DC Rodriguez and AC Fischback. During the meeting, Plaintiff received a letter stating that she was being written up for using the phrase "you're out of your friggin' mind" during a

March 20, 2013, phone call. AC Fischback then told Plaintiff that until August 2013, when her son would turn one year old, she would be assigned to work exclusively at Station 6 because the other TFD stations did not have conforming lactation rooms. During the meeting, Plaintiff asked why she could not work at Station 12. AC Fischback responded that Station 12 was not on the list of stations where lactating mothers could be placed. When Plaintiff pointed out that the only other nursing mother at the time in TFD, Arianne Phaneuf, was assigned to Station 12, AC Fischback replied, "Well, that's what happens when you file a complaint with EEO."

On or about July 19, 2013, TFD issued a new nursing room policy. Shortly after the new policy was enacted, both Plaintiff and her husband, Captain Gordon Clark, were told by several individuals that the policy had become known as the "Carrie Clause." Plaintiff continues to be approached by coworkers who ask if she is the one who complained about breastfeeding locations.

In or around June or July 2014, Plaintiff competed for a position in the Fire Prevention Division (Division) and was promoted to the position of Fire Inspector. In or about August 2014, Capt. Jeff Langejans, a Captain in the Fire Prevention Division, became aware of Plaintiff's discrimination complaint against TFD. Capt. Langejans approached one of Plaintiff's co-workers and told him to look up articles about the lawsuit and read the comments about Plaintiff. According to Plaintiff's co-worker, Capt. Langejans enjoyed reading negative comments posted about Plaintiff. Therefore, Defendant's claim that Capt. Langejans' actions have no relationship to Plaintiff's original Complaint is demonstrably false.

Capt. Langejans' hostility towards Plaintiff and her husband did not stop there. Capt. Langejans began spreading rumors that Plaintiff and her husband were having marital problems. Capt. Langejans told one of Plaintiff's co-workers that TFD should have anticipated a complaint such as Plaintiff filed "the day they started hiring females." Capt. Langejans also told Inspector Sisterman that, regarding Plaintiff and her husband, he thinks "it would be very easy to kill his enemies and get away with it."

On or about November 24, 2014, Plaintiff returned from leave after the birth of her second child to begin her new position as a Fire Inspector. After Plaintiff returned to work, Plaintiff's co-workers advised her of the derogatory and discriminatory comments Capt. Langejans had made about her in her absence. Capt. Langejans continued to make derogatory, discriminatory and inappropriate comments about Plaintiff, which created an intimidating and hostile work environment continuing to this day, and which TFD has failed or refused to address.

Plaintiff, Captain Clark, and others in the Fire Protection Division complained to TFD management, all the way up to the Fire Chief, about Capt. Langejans' bizarre, threatening behavior, hostility, and misconduct. TFD failed or refused to address the complaints against Capt. Langejans. TFD's failure to act upon Plaintiff's complaints against Capt. Langejans was in retaliation for Plaintiff's lawsuit against TFD for violating federal law.

Defendant attempts to characterize Plaintiff's new allegations "conflicts with Capt. Jeff Langejans" who was not personally involved in any of the allegations in her Complaint, and involves her position in Fire Prevention and the employees there, none of whom were involved in the original events. Doc. 15, pg. 3, ln. 3-14. Defendant concludes that Plaintiff's conflict with Capt. Langejans "has nothing to do with adequate facilities in the fire stations for expressing milk or her complaints that she was singled out on exercise policies. *Id*. This, however, is a mischaracterization of Plaintiff's new allegations. The retaliation which forms the basis for the new Count Five in the proposed Amended Complaint was caused by TFD and its management's failure and refusal to take timely and/or appropriate action against Capt. Langejans. TFD's failure to address Capt. Langejans' ugly behavior in this case was an intentional response to Plaintiff's lawsuit alleging sex discrimination and a hostile work environment.

Defendant all but ignores the remaining applicable standards for amended and supplemental pleadings. A supplemental claim is *not* new and distinct if it has "some relationship" to the claims originally alleged. *Keith v. Volpe*, 858 F.2d 467, 474 (9th Cir. 1988). The *Keith* plaintiffs filed suit against various federal and state agencies seeking

injunctive relief to halt freeway construction until the agencies guaranteed compliance with environmental protection laws (among other claims). *Id.* at 470. The parties eventually entered into a consent decree. The district court then approved the consent decree and retained jurisdiction to ensure that the terms of the agreement were fulfilled. *Id.*

The *Keith* court determined that claims raised in a supplemental or amended complaint need not arise out of the same transaction as the original claims, and that such claims should not be barred for raising what is essentially a new cause of action. *Id.* at 467. The court in *Keith* held that multiple factors should be considered in determining whether subsequent claims can be added to an ongoing case, including whether there is a clear relationship between the claims, as well as possible prejudice. *Id.* As discussed above, there are many factors in this case which establish a clear relationship, including the fact that the most recent events occurred less than a year after the last events outlined in the original complaint, as well as the fact that the Defendant in all of the claims has remained singular and unchanged. Given the relationship between the original and supplemental claims, permitting Plaintiff to supplement her Complaint, as opposed to commencing an entirely new action, would promote judicial efficiency.

Next, Fed.R.Civ.P. Rule 15(d) allows a party to supplement her pleading to set forth transactions or events that have happened since the date of the original pleading. While Rule 15(a) explicitly requires that leave to amend be freely granted, no comparable admonition applies to motions to supplement under Rule 15(d). Rather, the Court has broad discretion when deciding whether or not to allow a party to supplement his complaint. *U.S. for the Use of Atkins v. Reiten,* 313 F.2d 673, 675 (9th Cir.1963). The goal of Rule 15(d) is to promote as complete an adjudication of the dispute between the parties as possible by allowing the addition of claims which arise after the initial pleadings are filed. *William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.*, 668 F.2d 1014, 1057 (9th Cir. 1981) (internal citations omitted.) Further, the "clear weight of authority ... in both the cases and the commentary, permits the bringing of new claims in a supplemental complaint to promote the economical and speedy disposition of the controversy." *Keith, supra,* 858 F.2d at 473. Finally, "While the matters stated in a supplemental complaint should have some

relation to the claim set forth in the original pleading, the fact that the supplemental pleading technically states a new cause of action should not be a bar to its allowance, but only a factor to be considered by the court in the exercise of its discretion, along with such factors as possible prejudice or laches." *Id.* (citing 3 James W. Moore, Moore's Federal Practice ¶ 15.16 [3] (1985)).

Plaintiff brought her motion within the time period for seeking leave to amend; almost four months remain for fact discovery; while some written discovery has been propounded, no depositions have occurred. In any event, denying Plaintiff's motion would entail filing a separate action. Consequently, allowing the new claims will not prejudice Defendant in any manner.

As for Defendant's argument that the jury demand in the proposed Amended Complaint must be denied, the Defendant correctly cites Fed.R.Civ.P. Rule 38(d). The question for the court, however, is whether the Amended Complaint, should this Court allow it to be filed, retriggers and revives the Rule 38(d) time period because the Amended Complaint raises new issues, facts and causes of action different from (though related to) those originally presented. As discussed in *Lutz v. Glendale Union High Sch.*, 403 F.3d 1061 (9th Cir. 2005), "the presentation of a new *theory* does not constitute the presentation of a new *issue* on which a jury trial should be granted [as of right] under ... Rule 38(b). *Trixler Brokerage Co. v. Ralston Purina Co.,* 505 F.2d 1045, 1050 (9th Cir.1974). Rather, Rule 38(b) is concerned with issues of *fact. See Las Vegas Sun, Inc. v. Summa Corp.,* 610 F.2d 614, 620 (9th Cir.1979)." *Id*. at 1066 (emphasis in original.) In this case, after Plaintiff sued the City of Tucson, after she was promoted to a Fire Inspector and after she returned to work after the birth of her second child, Capt. Jeff Langejans commenced a campaign of harassment and hostility towards Plaintiff based on his knowledge of her EEO activity. Defendant, while aware of Capt. Langejans' behavior, did nothing to prevent it and intentionally retaliated against Plaintiff by ignoring his misconduct. Therefore, the Amended Complaint does not allege new theories or methods of recovery based on the original facts, but alleges new facts and new causes of action which, while interrelated, presents new issues upon which a jury trial should be granted as a matter of right under

Fed.R.Civ.P. Rule 38(b).  In fact, the word "issue," as used in Rule 38(b), means an issue of fact.  Such issues are not fully developed until all parties have denied, admitted or claimed a lack of knowledge as to allegations relating thereto.  *Bentler v. Bank of Am. Nat. Trust & Sav. Ass'n,* 959 F.2d 138, 141 (9th Cir. 1992).

Finally, Fed.R.Civ.P. Rule 39(b) also gives courts the discretion to order a jury trial even if no timely demand was made within the proscribed 14-day period.  The lack of a request for a jury trial in the initial Complaint was not caused by oversight; rather, the need for a jury trial has only now become apparent given the continued retaliation Plaintiff is suffering.  The case has now broadened beyond a technical analysis of whether the Defendant met its obligations under the Fair Labor Standards Act, Title VII and its requirements, the Arizona Civil Rights Act, and retaliated against her for reporting these violations to her management.  Based on the Defendant's Answer and its denials (or lack of information to respond to Plaintiff's allegations), and despite the sensitive, personal nature of these issues, a fact-intensive inquiry in this case favors a jury trial.

## CONCLUSION

This case is still in its early stages of development.  The Defendant would not be prejudiced in any way by the filing of the Amended Complaint or the Court's decision – whether it be by right or at its discretion – to allow a jury trial in this case.  For these reasons, Defendant's opposition should be rejected and Plaintiff be given leave to file her Amended Complaint.

DATED this 20th day of July, 2015.

**JACOBSON LAW FIRM**

 *s/ Jeffrey H. Jacobson*
Jeffrey H. Jacobson
Attorney for Plaintiff

Filed via the CM/ECF system and copy electronically
provided this 20th day of July, 2015, to:

Michelle Saavedra, Principal Assistant City Attorney
Office of the City Attorney, Civil Division
255 West Alameda, 7th Floor
Tucson, AZ 85701

1. Michael W.L. McCrory, Principal Assistant City Attorney
   Office of the City Attorney, Civil Division
2. 255 West Alameda, 7th Floor
3. Tucson, AZ 85701

4.  s/Kate Manns
   Kate Manns