**JACOBSON LAW FIRM**
2730 EAST BROADWAY BLVD., SUITE 160
TUCSON, ARIZONA 85716
TELEPHONE (520) 885-2518
FACSIMILE (520) 844-1011
jeff@jhj-law.com
Jeffrey H. Jacobson, PCC #65402; SB#019502
Attorney for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| CARRIE FERRARA CLARK,<br><br>        Plaintiff,<br><br>vs.<br><br>CITY OF TUCSON,<br><br>        Defendant. | No. 4:14-CV-02543-TUC-CKJ<br><br>**PLAINTIFF CARRIE CLARK'S REPLY BRIEF REGARDING SPOUSAL PRIVILEGE**<br><br>Hon. Cindy Jorgenson |

Plaintiff Carrie Ferrara Clark (Plaintiff), by and through undersigned counsel, and per the Court's Order dated February 7, 2017 (Doc. 64), hereby submits her reply brief regarding the application of the spousal communication privilege to this case, and urges the Court to uphold her privilege to have confidential communications between her and her husband, Gordon Clark (Mr. Clark), excluded from the evidentiary record.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    Relevant Facts**

Plaintiff has worked for the Tucson Fire Department (TFD) since 2007. At all times relevant to this case, she has been married to Mr. Clark. Mr. Clark is also employed by TFD. On July 19, 2012, Plaintiff gave birth to her son, and returned to work on October 27, 2012. Plaintiff was breastfeeding and expressing milk for her son when she returned to work. TFD, however, lacked both legally-compliant space to express breast milk as mandated by federal law, and did not have an internal scheduling process for handling accommodations required for mothers expressing breast milk. After Plaintiff complained, TFD subjected Plaintiff to

1

unlawful harassment and retaliation because of her request for reasonable accommodation under the law. From August to November 2014, Plaintiff was on maternity leave after the birth of her second child. TFD continued to subject Plaintiff to harassment and retaliation following her return to work after the birth of her second child.

On January 10, 2017, the City of Tucson (City) conducted a deposition of Mr. Clark as part of discovery for the case at bar. During the deposition, Defendant repeatedly attempted to question Mr. Clark on the content of his confidential communications with Plaintiff about the events that gave rise to this case.

## II.     Legal Standard

The marital communications privilege "bars testimony concerning statements privately communicated between spouses." *U.S. v. White*, 974 F.2d 1135, 1137 (9th Cir. 1992).   This privilege applies in both criminal and civil cases. 3 Handbook of Fed. Evid. § 505:2 (7th ed.).  Further, the privilege applies to both oral and written communications. *See e.g. U.S. v. Montgomery*, 384 F.3d 1050, 1057 (9th Cir. 2004).

When the following three conditions are present at the time of a communication between spouses, the communication is privileged under federal common law. *In re Reserve Fund Securities and Derivative Litig.*, 275 F.R.D. 154, 157 (S.D.N.Y. 2011). First, there must be a valid marriage (as defined under state law) at the time of the communication. *U.S. v. Lustig*, 555 F.2d 737, 747 (9th Cir. 1977). Second, the communication in question must be an utterance or expression intended to convey a message from one spouse to the other. *Id*. at 748. Finally, the communication must have been made in confidence. *Pereira v. U.S.*, 347 U.S. 1, 5 (1954).

There is a presumption under the federal common law that communications between spouses are confidential. *U.S. v. Strobehn*, 421 F.3d 1017, 1021 (9th Cir. 2005). The burden rests with the party opposing the privilege to prove that the communication was not made in confidence, and that the privilege should thus not apply. *Id.* The opposing party can only rebut the presumption of confidentiality by proving facts that suggest the communication was not intended to be private, or that there was a third party present at the time of the communication. *Pereira*, 347 U.S. at 6. The marital communications privilege pertains

individually to each specific communication, not to communications between the two spouses as a whole. *See e.g. Blau v. U.S.*, 340 U.S. 332, 333 (1951) ("this Court recognized that a confidential communication between husband and wife was privileged"). The privilege can be invoked by either spouse to render the contents of a communication between the two inadmissible. *U.S. v. Marashi*, 913 F.2d 724, 729 (9th Cir. 1990).

The marital communications privilege is grounded "upon considerations of public policy." *Arizona Title Guarantee & Trust Co. v. Wagner*, 251 P.2d 897, 899 (Ariz. 1952), *citing Sexton v. Sexton*, 105 N.W. 314, 315 (Iowa 1905). This policy is to protect the "confidences inherent in the marital relation," so as to "guard and foster the marital relation." *Id*. Thus, the privilege bars the introduction of communications that would not have been shared "but for the marriage relation and the confidence growing out of it," or that "would tend to unduly embarrass or disturb the parties in their marital relations." *Id*. The Supreme Court of Arizona has held that "it would seem proper that all marital communications are by implication confidential, and that the contrary intention must be made to appear by the circumstances of any given instance." *Id. citing Wigmore on Evidence*, 3rd Ed. Vol. VIII, § 2336, page 640.

### III.   Argument

In this case, Defendant asks the Court to ignore Plaintiff's marital communications privilege simply because she and her husband work for the same employer, and may have discussed topics at issue in this case. This request is completely unsupported by legal authority, and would completely eviscerate the public policy considerations behind the marital communications privilege. Unless a specific communication was made in the presence of a third party, or unless it was made with the knowledge and intention that it later be disclosed to a third party, that communication is privileged from discovery in this case. Further, all communications between Plaintiff and Mr. Clark are presumptively privileged, and it is Defendant's responsibility to establish that the communication was public or disclosed before it can ask about its content. Thus, Defendant's line of questioning proposed in its brief should be rejected, unless and until it can provide foundation for the communication to not be privileged.

1    Here, the marital communications privilege presumptively bars the introduction of the
2 content of discussions between Plaintiff and Mr. Clark into the evidentiary record. There is
3 no genuine dispute as to whether or not a valid marriage existed between the Clarks at all
4 times relevant to this case. Thus, the marital privilege applies to bar all "utterance[s] or
5 expression[s] intended to convey a message from one spouse to the other." *Lustig*, 555 F.2d
6 at 747. To defeat the privilege, Defendant must establish that a specific communication was
7 not made in confidence. A wholesale waiver of the marital communications privilege like the
8 one Defendant is requesting is unprecedented, and would frustrate the important public policy
  of fostering marital relationships by promoting confidence between spouses.
9    Throughout Mr. Clark's deposition, Defendant sought to elicit testimony from Mr.
10 Clark about the content of his confidential communications with his wife:

> Assistant City Attorney Michelle Saavedra (Saavedra): And the comments that we talked about being in the [news]paper, did you ever discuss those comments with Carrie?
>
> …
>
> Mr. Clark: Yes.
>
> Saavedra: What was your discussion?

Gordon Clark Deposition Transcript (Gordon Depo.), Defendant's Exhibit 2, p. 24, l. 14-16, p. 25, l. 4-5.

> Saavedra: Did you talk to Carrie about the fact that you were going to be submitting this memo?

*Id.*, p. 29, l. 23-24.

> Saavedra: Did Carrie -- was Carrie interviewed as part of the internal investigation?
>
> Mr. Clark: I believe so.
>
> Saavedra: Did she talk to you about that interview?

*Id.*, p. 34, l. 9-12.

> Saavedra: Did Carrie talk to you about the complaint that she filed with the City Manager's Office?

4

*Id.*, p. 36, l. 16-18.

Each of these questions elicits the contents of specific communications between Plaintiff and Mr. Clark without establishing the requisite foundation to suggest that the communications are not privileged. In fact, the instances of communication in these questions are exactly the type of questions prohibited by the marital communications privilege. Discussions between spouses pertaining to negative and offensive comments on a newspaper article, or to workplace disputes and discipline, are likely to contain highly sensitive, and perhaps emotionally charged information that would not be shared but-for the marital relationship. Disclosure of such information, especially during a deposition or trial, is likely to cause great discomfort or embarrassment to one or more spouses. The primary public policy purpose for the marital communications privilege is to foster marital relations by promoting discussions between spouses about difficult issues like workplace disputes, without fear that the information may one day become public knowledge. To order disclosure of the answers to these questions in this case would be to completely frustrate this public policy. Further, common law *presumes* that these discussions are confidential, and therefore it is up to Defendant to prove if they were not. Defendant has failed to provide any such proof, and thus its request to compel Mr. Clark to answer the questions above should be denied.

Defendant argues that the marital communications privilege is waived when one of the spouses "raises an issue by initiating a lawsuit and seeking damages." This assertion is completely unsupported by the well-established common law of spousal privilege, and contrary to public policy. Plaintiff is unaware of any case adopting a waiver of the spousal communication privilege in such a manner, and such an assertion is not present in *Arizona Title Guarantee & Trust Co. v. Wagner*; the case relied upon by Defendant in its argument. 251 P.2d 897, 899 (Ariz. 1952). On the contrary, the Court in *Wagner* stressed the importance of protecting "the free and unrestrained privacy of communications," especially in cases where the disclosure of a communication would embarrass or disturb one or both spouses. *Id*.

Here, Defendant seeks a wholesale waiver of the marital communications privilege for any discussions pertaining to issues that may be raised at trial. However, it is these communications that are especially likely to be protected by the privilege. There would be no

5

need for a marital communications privilege if it could be overcome simply by a showing that the contents of the communication are relevant to the case at hand. Instead, the privilege exists specifically to protect those communications between spouses that are related to the matter at bar. Defendant attempts in its brief to discover issues related to Plaintiff's motives and strategy for filing this case, such as her decision to use sick leave to avoid working at non-compliant fire stations, her reaction to negative comments on the newspaper article about her complaints, and her reaction to Defendant's investigation of Captain Langejans. Information like this is highly likely to be discussed between spouses during the trying times leading up to a lawsuit, and is exactly the type of information that an individual would not reasonably expect their spouse to disclose during the subsequent litigation. To allow its disclosure in this case would be to discourage individuals from seeking the advice, counsel, and support of their spouses when they face potential lawsuits. This would entirely defeat the public policy goal behind the marital communications privilege.

Finally, Defendant argues that it should be able to discover the contents of any discussions between the Clarks pertaining to events that occurred while she was out on maternity leave for her second child simply because she was not working at the time, so it is reasonable to assume that she learned of the events from Mr. Clark. However, such an assumption is not sufficient to defeat the marital communications privilege. At the outset, it is not reasonable to assume that Plaintiff must have learned of a fact alleged in her complaint from Mr. Clark simply because she was out on leave when it occurred. Plaintiff has been a TFD employee for roughly 10 years. During that time she has established close collegial and social relationships with numerous TFD employees, many of which witnessed the events that gave rise to this case. Thus, there are a number of possible sources from whom Plaintiff could have learned of events that occurred while she was out on maternity leave, not necessarily just her husband. Thus, the assumption that Plaintiff learned of all of the events in her complaint that occurred while she was on maternity leave from Mr. Clark is unreasonable, and not sufficient to support defeating the marital communications privilege.

Even if the assumption that Plaintiff learned of some of the events in her complaint from Mr. Clark was reasonable, such an assumption is insufficient to defeat the martial

communications privilege. The Ninth Circuit has held that all marital communications are presumed confidential, and the burden is on the opposing party to prove that a communication was made in the presence of a third party or for the purpose of being relayed to a third party. *Strobehn*, 421 F.3d at 1021. A mere assumption, especially in light of reasonable alternatives, does not satisfy Defendant's burden of proving that a marital communication is not privileged. Thus, Defendant should be barred from asking Mr. Clark about his discussions of the events that gave rise Plaintiff's complaint with Plaintiff simply because she was on maternity leave when the events occurred.

## IV. Conclusion

The marital communications privilege functions as a broad shield to prevent opposing parties from piercing the sanctity of the marital relationship. The public policy consideration that provides the primary basis for this privilege seeks to encourage open communications between spouses. In this case, Defendant seeks to deprive the Clarks of their marital communications privilege simply because they have the same employer, and may have discussed some of the issues of this case together. This flies in the face of the marital communication privilege that is designed to protect exactly the types of conversations that Defendant seeks to disclose. Unless Defendant can establish that a communication between the Clarks occurred in the presence of a third party or with the purpose of being relayed to a third party, such a communication is privileged and cannot be disclosed in discovery. This is based upon the strong common law presumption that all marital communications are privileged. Thus, Plaintiff asks that Defendant's request to compel Mr. Clark to answer the questions outlined in its brief be denied, and that Defendant be cautioned to desist from pursuing privileged information throughout the remaining course of discovery in this case.

DATED this 28th day of February, 2017.

**JACOBSON LAW FIRM**

 *s/ Jeffrey H. Jacobson*
Jeffrey H. Jacobson
Attorney for Plaintiff

7

Filed via the CM/ECF system and copy electronically provided this 28th day of February, 2017, to:

Michelle Saavedra
Principal Assistant City Attorney
Office of the City Attorney, Civil Division
255 West Alameda, 7th Floor
Tucson, AZ 85701

Michael W.L. McCrory
Principal Assistant City Attorney
Office of the City Attorney, Civil Division
255 West Alameda, 7th Floor
Tucson, AZ 85701