1
2
3
4
5
6           **IN THE UNITED STATES DISTRICT COURT**
7             **FOR THE DISTRICT OF ARIZONA**
8
9
10 Carrie Ferrara Clark,                    No. CV-14-02543-TUC-CKJ
11          Plaintiff,
12 v.                          **ORDER**
13 City of Tucson,
14          Defendant.
15
16

17        The Court held a hearing on February 7, 2017, regarding a discovery dispute.

18 There were two issues before the Court: (1) whether Plaintiff's husband, Gordon Clark,

19 could claim spousal privilege during his deposition, and (2) whether counsel for Mr.

20 Clark could make objections to form and foundation when not representing a party in the

21 case. During the hearing, the Court requested the parties, as well as counsel for the

22 Plaintiff's husband, to file briefs on the spousal communications privilege. The Court has

23 reviewed the parties' briefs (Docs. 66, 69, 70) and orders as follows.

24 ***Factual History***

25        On May 15, 2016, Plaintiff filed a Second Amended Complaint ("SAC") alleging

26 sex discrimination and retaliation under both state and federal laws resulting from her

27 employment with the Tucson Fire Department ("TFD"). (Doc. 42.) In the SAC, the

28 Plaintiff referred to several instances involving her husband, Gordon Clark, who was a

Fire Captain at the TFD at the time of the alleged discrimination. (Doc. 42 at ¶ 21.) Mr. Clark is not a party in this case.

On January 10, 2017, the City of Tucson ("Defendant") deposed Mr. Clark. (Doc. 70 at 2.) Mr. Clark was represented by attorney Ivelisse Bonilla. At numerous times during the deposition, Mrs. Bonilla and Plaintiff's counsel Jeffrey Jacobson objected based on spousal privilege. The parties were unable to proceed, and requested a hearing to clarify the limits of the spousal privilege as it applies in this case. Additionally, the parties asked the Court to decide whether Mr. Clark's counsel was permitted to make objections to form and foundation.

***Spousal Communications Privilege***

Both Federal common law and Arizona law recognize that spousal communications are privileged. *United States v. Griffin*, 440 F.3d 1138, 1143 (9th Cir. 2006); A.R.S. §§ 12-2231, 12-2232.[1] The marital communications privilege provides that "[c]ommunications between the spouses, privately made, are generally assumed to have been intended to be confidential, and hence they are privileged." *Wolfle v. United States,* 291 U.S. 7, 14, 54 S.Ct. 279, 78 L.Ed. 617 (1934); *see Blau v. United States*, 340 U.S. 332, 333, 71 S.Ct. 301, 95 L.Ed. 306 (1951); *see also Arizona Title Guarantee and Trust Co. v Wagner*, 75 Ariz. 82, 87 (Ariz. 1952) ("It would seem proper that *all* marital communications are by implication confidential, and that the contrary intention must be made to appear by the circumstances of any given instance." (emphasis in original)). "The privilege (1) extends to words and acts intended to be a communication; (2) requires a valid marriage; and (3) applies only to confidential communications." *United States v. Vo*, 413 F.3d 1010, 1016 (9th Cir. 2005) (internal citations omitted); *see United States v. Marashi,* 913 F.2d 724, 729–30 (9th Cir. 1990), *see also State v. Narten*, 407 P.2d 81, 87

---

[1] In Arizona, exceptions to the privilege are quite limited. In a civil action, "[a] husband . . . shall not be examined as to any communications made by one [spouse] to the other . . . except: (1) in an action for divorce or civil action by one against the other, (2) in a criminal action or proceeding . . .  [or] (3) in an action for damages against another person for adultery." A.R.S. § 12-2232(A). "These specific exceptions imply the legislature did not intend other exceptions." *Blazek v. Superior Court,* 869 P.2d 509, 513 (Ariz. Ct. App. 1994).

(Ariz. 1965). The party opposing the privilege bears the burden of showing that the communication was not intended to be confidential. *Blau v. United States,* 340 U.S. 332, 333, 71 S.Ct. 301, 95 L.Ed. 306 (1951); *United States v. Strobehn*, 421 F.3d 1017, 1021 (9th Cir. 2005); *Wagner*, 75 Ariz. at 87.

- ***Third Party Waiver of Privilege***
  - ***Incident at Roosevelt Lake***

During the deposition, Defendant questioned Mr. Clark about an argument that he had with his wife at a gathering at Roosevelt Lake. (Gordon Clark Deposition Transcript, Doc. 66-2 at 5-10[2].) Mr. Clark conceded that there were other TFD employees at the lake, but when asked whether he had a verbal or physical altercation, counsel for both Plaintiff and Mr. Clark objected based on spousal privilege. (*Id.*) Communications made in the presence of others or with the intention of revealing the information to third parties are not deemed privileged spousal communications. *Pereira v. United States*, 347 U.S. 1, 6-7, 74 S.Ct. 358, 98 L.Ed. 435 (1954); *see Strobehn*, 421 F.3d at 1021; *see also Wagner*, 75 Ariz. at 87. In this circumstance, it is apparent the alleged argument occurred in the presence of third parties. As such, there was no intent for the conversation to be private, and the defense has shown the spousal privilege does not apply. Questioning about this specific incident is therefore permissible.

  - ***Conversations with Other Employees***

Defendant also asked a series of questions about whether Mr. Clark discussed Plaintiff's difficulties with station assignments with other members of TFD. (Doc. 66-2, at 17-20.) Mr. Clark stated he spoke to several employees, namely Pat Quinn and Bert Thomas, about Plaintiff's difficulties. (*Id.*) When Defendant inquired as to the content of the complaints, Mrs. Bonilla and Mr. Jacobson claimed the discussions with other employees were privileged because some of the information came from his wife. (*Id.* at 6.)   The conversations between Mr. Clark and other TFD employees are not

---

[2] !!!The numbering of the transcript is not sequential so I didn't want to use that number, however writing (Doc. 66-2, 5-10 of 43) like we talked about before looked strange so I just put the Doc. and page numbers. I can change it if you prefer.

privileged, despite the fact that some content of the conversations may have derived from information gathered during discussions with his wife. Questions about conversations with outside parties (i.e., Mr. Clark's superiors, Pat Quinn, and Bert Thomas) are permissible. Furthermore, if the content of a specific conversation between the spouses was later revealed to a third party, that conversation is also no longer confidential and therefore no longer privileged.

> o *Use of Sick Leave*

Defendant also argues that conversations between the Clarks about the Plaintiff's use of sick leave should be permissible because she has put it at issue in the current litigation. (Doc. 66 at 5.) This issue is whether Plaintiff specifically informed TFD that she was using sick leave because her assignments did not provide a room for expressing milk. The Plaintiff's complaint alleges that Mr. Clark spoke to Captain Rick L'Heureux to inform him about the Plaintiff's assignment to locations which did not provide a lactation room. (Doc. 42 at ¶33.)

Insofar as the Plaintiff's conversations with her husband were disclosed to third parties, the Plaintiff has waived the spousal communications privilege. *Pereira*, 347 U.S. at 6-7; *see Wagner*, 75 Ariz. at 87. Since it appears that Mr. Clark may have been acting as a spokesperson for the Plaintiff, and informing Mr. L'Heureux about the inadequate accommodations as they were communicated to him by his wife, the Defendant has shown that any conversations about what the Plaintiff told Mr. Clark to relay to Mr. L'Heureux have been waived. If Mr. Clark's conversation with Mr. L'Heureux disclosed a conversation between the spouses, it has waived the privilege. In the interests of fairness, the Defendant should be able to inquire about what Plaintiff told Mr. Clark to disclose to Mr. L'Heureux by his wife.

- **Inquiry into Unknown Spousal Communications**

In its brief, Defendant further suggests that questions about both shared and unshared communications should be allowed. "There may be an issue later in the case as to whether his knowledge from [Mr. Clark's] marital communications is attributed to the City. If the Clarks did not want information about the alleged discrimination

communicated to the City at the time it occurred, the City is entitled to find out why." (Doc. 66 at 6.) Insofar as Mr. Clark revealed to third parties a desire to withhold information, the answers are not privileged. It is unpersuasive to the Court, however, that a possible issue in the future trumps a privileged communication. *See e.g., Ulibarri v. Superior Court in and for County of Coconino,* 909 P.2d 449, 457 (Ariz. Ct. App. 1995) ("The judgment of the Legislature, reflected in the codification of the privilege, expresses the long standing social policy that the injury to domestic harmony and marital privacy occasioned by the unrestricted search for relevant information is too great to endure. Thus, the balance between potential unfairness to opposing litigants and preservation of the marital privilege has been struck in favor of the privilege-whether information is sought to establish a claim or to defend against it." (internal citations omitted)). These broad allegations do not demonstrate third-party disclosure or a waiver of the privilege.

Defendant further suggests it should be permitted to ask whether the spouses engaged in a conversation on a certain topic. This does not ask for the specifics of the conversation, but it still reveals the content. To suggest that there is no inquiry into the substance of the communications when asking about the topic is misguided, for the topic implicates the content. A true non-content based inquiry about a conversation would be, for example, asking whether a phone call occurred at a certain place or time; because it proves a conversation occurred but does not implicate content in the slightest. *See e.g., Humphrey v. Fla.*, I979 So.2d 283, 285 (Fla. Dist. Ct. App. 2008). This is not the case in this instance. Here the Defendant wants to know whether there was a personal communication about many of the statements made in the SAC. But a spousal communication was not implied in the complaint, nor has any personal conversation between the spouses been shown to have been disclosed to a third party. Because the Court's presumption is that any private conversation is considered privileged until proven otherwise, the Court finds that inquiry into possible topics of conversation should be privileged as well.

o ***Captain Langejans***

The Defendant further argues it should be able to ask Mr. Clark about his marital

conversations to determine how the Plaintiff learned about Capt. Jeff Langejans' hostile and discriminatory remarks and any discussions related to a newspaper article about the suit. (Doc. 66 at 7-8.) The Defendant states that the Plaintiff has waived the spousal privilege as to conversations about these matters because of the statements in the SAC, including the following:

> 62. On or about July 19, 2013, TFD issued a new nursing room policy. Shortly after the new policy was enacted, both Plaintiff and her husband, Captain Clark, were told by several individuals that the policy had become known as the "Carrie Clause."

> 87. After Plaintiff's promotion to Fire Inspector, Capt. Jeff Langejans, a captain in the Division, told Plaintiff's co-workers that Plaintiff could not have been ranked first for the position, and that she must have cheated on the promotional process.

> 88. Capt. Langejans told Plaintiff's co-workers that her husband, who was also a captain in the Division, had provided Plaintiff with the answers to the exam.

> 89. Capt. Langejans passed his allegations up the chain of command, in an effort to have Plaintiff and her husband discredited and removed from the Division.

> 92. In or about August 2014, Capt. Langejans became aware of Plaintiff's discrimination complaint against TFD.

> 93. Capt. Langejans approached one of Plaintiff's co-workers and told him to look up articles about the lawsuit and read the comments about Plaintiff.

> 94. According to Plaintiff's co-worker, Capt. Langejans enjoyed reading negative comments posted about Plaintiff.

> 95. According to Plaintiff's co-worker, Capt. Langejans began spreading rumors around the Division that Plaintiff and her husband were having marital problems.

> 96. Capt. Langejans told one of Plaintiff's co-workers that TFD should have anticipated a complaint such as Plaintiff filed "the day they started hiring females."

> 97. Capt. Langejans became obsessed with Plaintiff and her husband, and devised a detailed plan to have Plaintiff's husband removed from the Division before Plaintiff started work as a Fire Inspector.

98. Capt. Langejans told Inspector Sisterman that he thinks "it would be very easy to kill his enemies and get away with it" regarding Plaintiff and her husband.

100. While Plaintiff was on family leave, Capt. Langejans made derogatory and discriminatory remarks about Plaintiff, pregnant women and women in general working at TFD, stating that women over 40 should no longer be allowed to work in fire suppression because they "look like crap," don't age well and can't do the job.

101. While Plaintiff was on family leave, Capt. Langejans made derogatory remarks to Plaintiff's co-workers, stating that she had cheated on the exam, that Plaintiff and her husband were going to ruin the Division, that he wanted to have Plaintiff's husband removed from the Division, and that the other inspectors should lock their computers because they "can't trust the Clarks."

105. After a December 3, 2014, supervisors' meeting, Capt. Langejans approached Inspectors Tom Sisterman, John Vincent and Pete December and told them that he had advised the other supervisors at that meeting that Plaintiff's husband should be removed from the Division, that the Clarks were going to ruin the Division, and that they were the reason for poor morale in the Division.

106. Inspector Vincent responded that Capt. Langejans was the reason for poor morale in the Division as a result of his hostility and drama towards the Clarks.

107. On December 5, 2014, Inspectors Sisterman, Vincent and December informed Captain Clark of the statements made by Captain Langejans. Captain Clark immediately notified his chain of command.

111. On January 14, 2015, Captain Clark was informed of Captain Langejans statements (referring to Captain Clark) about "killing his enemies." Captain Clark submitted a memorandum reporting the wrongful conduct through his chain of command to Fire Chief Critchley.

112. Inspectors Sisterman and Vincent took their complaints to Chief Critchley as well, and an investigation was initiated.

(Doc. 42 at 7, 10-12.)

Understandably, these occurrences would likely result in spousal conversations about the events. Yet, it is precisely these sorts of conversations that the privilege tries to protect: disclosures made within the sanctity of marriage. None of these allegations assert

the information came from Mr. Clark. The spouses may have discussed their feelings and emotions about the comments made at work, but Defendant's desire to delve into the personal conversations about these statements is unwarranted.

Defense counsel asserts that many of these statements are regurgitations from Mr. Clark's memorandum (Doc. 66-1) and therefore the spousal privilege has been waived. (Doc. 66 at 9.) But Clark's memo supports upholding the privilege. The memo states many of the facts asserted in the Amended Complaint (Doc. 24) and later in the SAC were based on Mr. Clark's conversation with Inspector Tom Sisterman and other inspectors about statements made by Langejans. (*Id.*) Clark's conversations with the inspectors are not privileged, therefore defense counsel may ask about them. But, the memo does not implicate a conversation between the spouses. In addition, any conversation the spouses may have had is not determinative of whether or not these statements were made. Plaintiff must show these facts occurred and their effect on her. The Clarks do not, however, waive the spousal communications privilege in doing so.

Therefore, Defendant may not ask about the details of conversations between spouses pertaining to these facts asserted in the SAC. Any communication between the Clarks is presumed privileged and the Defendant has not rebutted this presumption. The privilege between spouses is not overruled by the need to find out how the Plaintiff realized the comments were made, especially when the statements originate from alternative sources.

- ***Nepotism Policy***

The Defendant claims it has a right to inquire about conversations which may have occurred regarding the City's nepotism policy, because of the statements included in the Plaintiff's SAC. (Doc. 42 at §§ 124-131.) The statements allege that after filing an administrative complaint, the City's Equal Opportunity Program's Division ("EOPD") decided that Plaintiff's placement in the same division as her husband violated the EOPD's nepotism policy. (*Id.* ¶¶ 124-25.)  Mr. Clark was then transferred to a Shift Captain position, which the Plaintiff alleges was less desirable than his former position. (*Id.* ¶¶ 126-27, 129-30.) Plaintiff states that other spouses were permitted to work

together, and Mr. Clark's transfer was in retaliation for her complaint. (*Id.* ¶ 125, 128, 131.) The statements do not implicate any conversation; rather they list a series of events which occurred after the Plaintiff filed her lawsuit.  The Court, therefore, upholds the marital communications privilege as to these statements. In addition, these facts can be easily confirmed by other sources.  For example, the desirability of a position as an 8-hour Captain versus a Shift Captain can be determined without invading a personal spousal communication.

- ***Alleged Non-Confidential Communications***

The Defendant alleges that Mr. Clark should be ordered to answer questions about the following issues because they are not confidential communications. The following determinations about the alleged non-confidential communications provide guidance to the parties going forth. In general, defense counsel may ask about Mr. Clark's knowledge, and how that knowledge was obtained, but cannot pry into personal spousal conversations once the privilege is asserted.

- ***Whether Plaintiff knew about Mr. Clark's submission of his memorandum about Capt. Langejans.***

Defense counsel argues that because Mr. Clark spoke to employees about submitting his memorandum about the hostile work environment, and because the contents of the memo are contained in the Plaintiff's original and Second Amended Complaint, that it should be able to find out whether she knew Mr. Clark was going to submit the memo. Defense may ask if Plaintiff knew of the submission, but not individual conversations between the spouses pertaining to submission unless the spousal conversations about the submission were also shared with employees.

- ***Whether Mr. Clark knew of Plaintiff's March 2015 complaint to the City Manager and whether they talked about the complaint.***

The defense argues it should be able to find out "which parts of the complaint were from [Plaintiff] which parts from other inspectors and which part from [Mr. Clark]." (Doc. 66 at 8.) A spouse may testify "as to what was done by either spouse, but not as to

what was said if it was in the nature of a confidential communication." *Posner v. New York Life Ins.* Co., 106 P.2d 488, 491 (Ariz. 1940).

Defense counsel may ask about Mr. Clark's knowledge of the Plaintiff's complaint to the City Manager, as well as whether he participated in its creation. If the City Manager complaint was a joint effort, and the content of the complaint was intended to be shared with a third party, then discussions about the complaint are not privileged. If, however, Mr. Clark did not participate in the creation of the document, then the privilege is not waived.

> o *Whether Mr. Clark knew Plaintiff "was going to submit something in regards to Capt. Langejans."*

As noted earlier, Defense counsel may ask about Mr. Clark's knowledge of the Plaintiff's complaint about Capt. Langejans, but not marital conversations about the subject.

> o *When Mr. Clark was aware of discrimination against Plaintiff.*

Defense counsel may ask about Mr. Clark's knowledge of the events, and if outside sources provided any information about the discrimination against the Plaintiff. However, Mr. Clark does not have to answer questions about the private discussions of discrimination he may have had with his wife.

> o *Whether Plaintiff was disappointed with the investigation into Capt. Langejans.*

Defense counsel argues that should be allowed to discover what information the Plaintiff gleaned from Mr. Clark about Capt. Langejans and the standards that should have been followed for reprimanding him. (Doc. 66 at 8.) Mr. Clark's spousal discussion of the proper disciplinary procedures is not relevant. Whether or not the Defendant followed proper disciplinary procedures is not dependent on Mr. Clark's or the Plaintiff's opinion, but rather the proper procedures established by the TFD. Further, Mr. Clark's knowledge of the Plaintiff's disappointment in the investigation implicates a spousal communication. Defense counsel may ask what Mr. Clark saw or heard about Capt. Langejans, and his understanding of the proper disciplinary procedures. This does not

allow inquiry into the private discussions about the Plaintiff's disappointment with this process or the standards for proper discipline which they may have discussed.

o ***Non-Party Objections to Privilege, Form, and Foundation***

Either party to a spousal communication can claim the privilege. *Blau*, 340 U.S. at 334; *United States v. Montgomery*, 384 F.3d 1050, 1057-58 (9th Cir. 2004). In addition, "*[a] person* may instruct a deponent not to answer only when necessary to preserve a privilege[.]" Fed.R.Civ.P. 30(c)(2) (emphasis added). Because any person may object, Mr. Clark's counsel is permitted to object based on spousal communications. However, this right does not extend to other objections. Examination and cross-examination of witnesses during depositions may proceed as permitted at trial. Fed.R.Evid. 30(c)(1). At trial, only parties may object. Fed.R.Civ.P. 51(c). Therefore, it is not appropriate for Mr. Clark's counsel to make non-privilege based objections.

Accordingly, IT IS ORDERED, the deposition of Gordon Clark shall proceed according to the terms of this Order.

Dated this 19th day of April, 2017.

Honorable Cindy K. Jorgenson
United States District Judge

- 11 -