**JACOBSON LAW FIRM**
2730 EAST BROADWAY BLVD., SUITE 160
TUCSON, ARIZONA 85716
TELEPHONE (520) 885-2518
FACSIMILE (520) 844-1011
jeff@jhj-law.com
Jeffrey H. Jacobson, PCC #65402; SB#019502
Attorney for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| CARRIE FERRARA CLARK,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF TUCSON,<br><br>Defendant. | No. CV-14-02543-TUC-CKJ<br><br>**PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Hon. Cindy K. Jorgenson |

Plaintiff Carrie Ferrara Clark submits her Cross-Motion for Summary Judgment on her Second Amended Complaint as follows.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. SUMMARY OF ARGUMENT

Since October 27, 2012, the City of Tucson Fire Department (TFD) has subjected Plaintiff Carrie Clark to a pattern of unlawful conduct that constitutes sex discrimination and retaliation under the Fair Labor Standards Act (FLSA) and Title VII of the Civil Rights Act of 1964 (Title VII). Considering the record evidence in this case, there is no dispute of material fact that TFD lacked a policy or plan for how to comply with federal law governing nursing mothers under the Patient Protection and Affordable Care Act (PPACA). There is also no dispute of material fact that TFD could have, but refused to, provide Mrs. Clark with an assignment to a fire station that complied with the PPACA so she could express breastmilk in a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public. Further, there is no dispute of material fact

that TFD retaliated against Mrs. Clark for raising and pursing the lack of proper lactation space through her chain of command (all the way to the Fire Chief himself), and for filing an EEO complaint regarding TFD's discrimination. There is also no dispute that TFD failed to take steps to prevent the retaliation from continuing. Finally, there is no contested issue of material fact that TFD created a severe, pervasive, hostile work environment for Mrs. Clark by both its malfeasance and nonfeasance in this case. For these reasons, Mrs. Clark is entitled to summary judgment on all of her federal claims.[1]

## II.   STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the party moving for summary judgment is the party that would bear the burden of persuasion at trial, "that party must support its motion with credible evidence… that would entitle it to a directed verdict if not controverted at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). The moving party may rely on "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to demonstrate the absence of an issue of material fact that would require a trial. *Id*. at 323. If there is not sufficient evidence "favoring the nonmoving party for a jury to return a verdict for that party," then there is no issue of material fact and summary judgment should be granted in favor of the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## III.   LEGAL ARGUMENT

   A.   **TFD Violated Section 207(r) of the Fair Labor Standards Act When it Failed To Provide Legally Compliant Space for Mrs. Clark to Express her Breastmilk**

In this case, the record evidence indicates that TFD failed to provide legally mandated lactation facilities for Mrs. Clark to express breastmilk for her newborn son.

---

[1] Plaintiff moves to dismiss her state law claims in this litigation, Counts III – VI of her Second Amended Complaint, without prejudice.

2

Thus, Mrs. Clark's claim under FLSA § 207(r) succeeds as a matter of law. FLSA requires that an employer provide:

> (A) a reasonable break time for an employee to express breast milk for her nursing child for 1 year after the child's birth each time such employee has need to express the milk; and
>
> (B) a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk.

29 U.S.C. § 207(r)(1).

The application and enforceability of § 207(r) have not been widely addressed by the Courts. *Hicks v. City of Tuscaloosa*, 7:13-CV-02063-TMP, 2015 WL 6123209, at *28 (N.D. Ala. Oct. 19, 2015). However, several federal courts have held that § 207(r) creates a private cause of action for unpaid wages and overtime compensation related to an employer's failure to provide adequate break time or space for lactation. *See Id*. at 29; *Lico v. TD Bank*, 14-CV-4729 JFB AKT, 2015 WL 3467159, at *3 (E.D.N.Y. June 1, 2015) ("To be clear, damages in a private suit under § 207(r) are limited to wages lost as a result of the employer's failure to provide an adequate space for lactation"); *Mayer v. Prof. Ambul., LLC*, 211 F. Supp. 3d 408, 413 (D.R.I. 2016).

TFD admits that prior to July 19, 2013, it lacked a policy for complying with § 207(r) by providing reasonable break time and private space for lactating mothers. Exh. X. ¶ 1; PSOF 8, 45. Office of Equal Opportunity Programs (OEOP) Investigator Matthew Larsen concluded that 9 of TFD's 21 fire stations, or 43%, did not have facilities suitable for the expression of breast milk, and thus were non-compliant with § 207(r). PSOF 56. TFD does not dispute that Mrs. Clark provided notice to her immediate supervisor of her need for lactation facilities prior to returning to work from maternity leave. PSOF 7, 128 ¶ 15. Further, TFD admits that when Mrs. Clark returned to work, she was placed on a "swing" shift, meaning that she was assigned to different stations each shift according to its staffing needs. PSOF 26, 128 ¶ 14. As a result of Mrs. Clark's status as a "swing" paramedic, there was a high likelihood that Mrs. Clark would be, and she in fact was, assigned several shifts at stations that were not in compliance with § 207(r). PSOF 31, 35.

3

As a result of being assigned to stations that were not equipped with mandated lactation spaces, Mrs. Clark was forced to expend vacation and sick leave days. PSOF 28. It is hardly a stretch to infer that TFD was laissez-faire about its approach to her assignments knowing that she could simply expend a benefit of employment (vacation or sick leave) if, in her "perception," the station assignment was appropriate. PSOF 49, 54.

Since TFD failed to ensure that all of its stations contained adequate spaces for nursing mothers to express breast milk, and thus failed to comply with § 207(r), Mrs. Clark was forced to use paid time off to cover what should have been unpaid break time to produce milk for her son. Therefore, she was forced to work additional hours that could have been substituted for paid time off, essentially receiving no wages or overtime for those hours. Under the plain text of the FLSA and federal court precedent interpreting § 207(r), Mrs. Clark is entitled to recover her lost wages and overtime for those hours, and an additional equal amount in liquidated damages. 29 U.S.C. § 216(b). As no genuine issue of disputed material fact exists, Mrs. Clark's motion for summary judgment should be granted.

**B.   Ample, Unrebutted Direct Evidence Demonstrates that TFD Engaged in Prohibited Discrimination Against Mrs. Clark Due to her Status as a Breastfeeding mother**

In 1978, Congress amended Title VII with the Pregnancy Discrimination Act (PDA), which provides that discrimination "because of sex" or "on the basis of sex" includes discrimination on the basis of pregnancy, childbirth, or related medical conditions. 42 U.S.C. § 2000e(k). Lactation or expressing milk states a cognizable Title VII sex discrimination claim. *Harper v. Thiokol Chemical Corp.*, 619 F.2d 489 (5th Cir. 1980). PDA cases are analyzed using the same framework as other Title VII discrimination cases. *See Armstrong v. Flowers Hospital,* 33 F.3d 1308, 1312-13 (11th Cir. 1994). Title VII renders the following employer conduct unlawful:

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

4

> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a).

A plaintiff in a pregnancy discrimination case can prove a disparate treatment claim in two ways, by "direct evidence that a workplace policy, practice, or decision relies expressly on a protected characteristic" or indirectly, using the *McDonald Douglas* burden shifting approach. *Young v. United Parcel Service, Inc.*, 135 S. Ct. 1338 (2015). In this case, there is both direct and circumstantial evidence, neither of which are rebutted or disputed.

Direct evidence is "'evidence of the conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude…sufficient to permit the fact finder to infer that the attitude was more likely than not a motivating factor in the employer's decision.'" *Everts v. Sushi Brokers LLC,* U.S. Dist. Az. (CV015-02066-PHX-JJT) (March 27, 2017)(*quoting* Shelley v. Geren, 666 F.3d 599, 615-16(9th Cir. 2012). Direct evidence "requires an admission by the decision-maker that his or her actions were based on the prohibited animus. Absent such remarks, a plaintiff must show a nexus between a decision-maker's actions and a superior's discriminatory remarks." *Id.* (citing *Day v. LSI Corp.* 174 F.Supp.3d 1130, 1162(D. Ariz. 2016); *Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003)

Before returning to work after having her first child, Mrs. Clark called Battalion Chief (BC) Paul McDonough to secure a long-term opening that would provide her with a consistent place to pump and express her breastmilk. She called BC McDonough because she knew that TFD did not have a policy that covered employees who were nursing/breastfeeding. PSOF 7-8. The only policy that TFD had on its books as of November 6, 2009, was deemed unlawful by its HR Manager, Joann Acedo. PSOF 8. Even though Station 20 appeared to comply with federal law, and she requested to be assigned there, TFD chose not to do so. PSOF 10-11, 13.

5

Station 12, where Mrs. Clark was working, had a private room shielded from view, though it did not have a lock on it so it would not have been completely free from intrusion from coworkers and the public. Nevertheless, Plaintiff was willing to try to make that space work. PSOF 16-17, 19. A co-worker offered to help her and asked to move to another station so that Mrs. Clark could stay at Station 12, which complied with PPACA requirements. PSOF 14-15.

BC McDonough subsequently brought Mrs. Clark to TFD headquarters to meet with Deputy Chief (DC) Ed Nied and DC Rob Rodriguez. During that meeting, DCs Nied and Rodriguez accused her of being disingenuous with her request – they believed she simply wanted to be closer to her mother, who would pick up breastmilk from Ms. Clark at work. They also suggested that Plaintiff should just take more time off from work and that they could not remember any other women in the past having the same issues with breastfeeding. PSOF 21. This accusation is direct evidence of discrimination. Ms. Clark gave the deputy chiefs no reason to doubt the sincerity of her request, which was for an accommodation that was reasonable.

TFD eventually denied the requests for assignment to Station 12 and put the assignment out to bid because it violated TFD's Rules of Assignment. PSOF 18, 22.

TFD, however, does not always follow its Rules of Assignment and often deviates from them. For example, TFD has accommodated employees who have received DUI convictions or other criminal charges, and for those who are on a work improvement plan. TFD has also granted assignment changes to its personnel to assist them in times of need. PSOF 24-25. Nevertheless, TFD continued to assign Mrs. Clark to non-compliant stations. PSOF 27. TFD assignment scheduler Rick L'Heureux told Captain Gordon Clark, Plaintiff's husband, "I don't think she deserves any special treatment." PSOF 27. This is also direct evidence of a workplace decision specifically relying on Ms. Clark's status as a breastfeeding mother. TFD offers no contrary evidence. As a result of the failure of TFD to provide Mrs. Clark with a consistent assignment to a station that complied with federal law, she often had to take vacation and sick leave. PSOF 28. The lack of a consistent assignment

where she knew she could express her breastmilk privately, free from intrusion, caused Mrs. Clark a great deal of stress and anxiety, which in turn affected her ability to produce an adequate supply of breastmilk for her son while she was on shift. PSOF 9, 14, 20, 28, 67. Consequently, her son did not gain weight as expected and was assessed by his doctor as being underweight. PSOF 32.

The situation reached a crescendo when on March 20, 2013, she was assigned to another station that did not have legally-compliant lactation space. When Ms. Clark spoke with then-Assistant Chief (AC) Michael Fischback, DC Rodriguez and HR Manager Acedo, about this problem, HR Manager Acedo told Ms. Clark that her pumping seemed excessive and that "it seems to me that you're not fit for duty." PSOF 35-41; PSOF 128 ¶ 43. During this call, HR Manager Acedo suggested that Mrs. Clark simply wake up her Captain (EC) or BC when she needed to express breastmilk. PSOF 37-38.

These insensitive, ignorant, discriminatory statements are also direct evidence of a workplace policy or management decision relying specifically on Ms. Clark's protected status. AC Fischback would later agree that HR Manager Acedo's suggestion was inappropriate. PSOF 39.

Nevertheless, when Mrs. Clark reacted to the ridiculousness of HR Manager Acedo's suggestion (that she simply wake up her EC or BC in the middle of the night to pump) with colorful language (but without cussing), TFD decided to formally discipline Mrs. Clark. PSOF 58-59. TFD also accused Mrs. Clark of hanging up on them during the call, though the only evidence they have of this is that their phone line suddenly went dead. PSOF 60.

HR Manager Acedo chuckled to herself during the March 20, 2013, call because TFD had no idea how to handle Mrs. Clark's simple request for legally-compliant lactation space. Ignorant as to the law at the time, she thought that it was simply a medical issue that should not be different than anything else. PSOF 45, 72. HR Manager Acedo thought that Mrs. Clark was simply upset over not receiving "special treatment" and that TFD was refusing to exercise its vested discretion over its Rules of Assignment. PSOF 24-25, 48.

The same day, TFD asked the City of Tucson (City) to install a privacy lock on one of the bedroom doors at Station 6 because that is where TFD was assigning Mrs. Clark. PSOF 50-51. When City workers were installing the lock, someone put a big note on the door that said, "Carrie Clark." OEOP Program Manager Bob Barton took that to mean that "there's going to be an uncomfortable issue with her." PSOF 55. There is no record evidence that OEOP, TFD, or any other City entity did anything to address this obvious "uncomfortable issue" TFD had to deal with because Mrs. Clark sought to enforce her rights as a breastfeeding mother.[2] And that is exactly where TFD assigned Mrs. Clark – to Station 6, on the far southeast boundary of Tucson, on Wilmot & I-10, a station which primarily services state and federal prisons. PSOF 61. Despite inquiring about working overtime and the ability to trade shifts on her special assignment, TFD never responded. Therefore, TFD deprived Mrs. Clark of overtime and shift-trading opportunities. PSOF 63.

Five months after Mrs. Clark first raised the fact that TFD did not have adequate, legally-compliant spaces for nursing mothers, the City's Equal Opportunity Programs Division (EOPD) Investigator Matthew Larsen produced findings that 43% (or 9 of 21) of TFD's fire stations did not comply with federal law. PSOF 56. Further, TFD did not even have a process or policy in place where employees can even request assignments for unique circumstances. PSOF 56-57.

At the same meeting that TFD formally disciplined Mrs. Clark, she asked why she could not work at Station 12. AC Fischback said that Station 12 was not on TFD's list of stations that were in compliance. When Mrs. Clark pointed that out that the only other nursing mother in TFD was at Station 12, AC Fischback replied, "Well, that's what happens when you file a complaint with EEO." Mrs. Clark pointed out that she had no filed a

---

[2] That was, unfortunately, the attitude of many TFD and City employees. OEOP Program Director Barton thought this was a matter of Mrs. Clark's "perception" – not TFD's responsibility to follow federal laws prohibiting discrimination against breastfeeding mothers, providing them with private lactation spaces, and to ensure that its employees were not subjected to a hostile work environment as a result. PSOF 54.

8

complaint; AC Fischback retorted that someone had gotten them involved. PSOF 64. This is more direct evidence of discrimination (as well as abject reprisal.)

Instead of acknowledging that not having legally-compliant nursing spaces in its stations was a problem that needed to be resolved, TFD made Mrs. Clark the scapegoat, singling her out at every possible turn. BC McDonough referred to Mrs. Clark's request as her "specific needs" and that they were working to "ensure her needs were met…" PSOF 68. When TFD issued a new nursing rooms policy eight months after Mrs. Clark first raised the issue, it was widely referred to as the "Carrie Clause" or the "Carrie Rule." PSOF 70, 74. And when the Clarks brought this offensive label to the attention of management, they closed the investigation, blaming them for not 'naming names' of the offending characters (which the Clarks dispute.) PSOF 81-83. This despite the fact that on August 1, 2013 AC Brad Olson sent an email to TFD management acknowledging that calling the policy the Carrie Clause was negative. PSOF 71.

There is no dispute of material fact that TFD's ad-hoc, seat-of-its-pants approach to assigning Mrs. Clark after she returned from maternity leave was discriminatory. PSOF 68-69. Even after its nursing room policy was in place, TFD continued to harass Mrs. Clark with uncertainty and mixed messages about her assignments. PSOF 77-78, 81, 86-87. There is plentiful direct evidence that TFD's workplace policies (or lack thereof), its practices, and its decisions relied solely on Mrs. Clark's protected characteristic. *Young, supra*, 135. S.Ct. at 1345. Further, the undisputed evidence demonstrates that Mrs. Clark was subjected to numerous adverse employment actions, defined as acts that materially affect the terms, conditions, or privileges of employment." *Weeks v. Union Pac. R.R. Co.*, 137 F. Supp. 3d 1204, 1216-17 (E.D. Cal. 2015). Summary Judgment is therefore appropriate on Mrs. Clark's Title VII claims.

//
//
//
//

### C. Direct Evidence in this Case Demonstrates TFD Subjected Mrs. Clark to a Hostile Work Environment so Severe and Pervasive that, as a Matter of Law, she has Clearly Suffered Discrimination Under Title VII

No genuine issue of material fact exists to dispute that TFD subjected Mrs. Clark to a pattern of harassment based on her status as a nursing mother that was so severe and pervasive as to constitute hostile work environment discrimination. "A claim of 'hostile environment' sex discrimination is actionable under Title VII." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 73 (1986). Two elements are required: 1) conduct that is "severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive;" and 2) the victim must "subjectively perceive the environment to be abusive." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993). Significantly, a hostile work environment need not "seriously affect employees' psychological well-being," rather, conduct that "can… detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers," is sufficient to establish a hostile work environment claim. *Id.* at 22.

The record evidence in this case overwhelmingly supports the claim that Mrs. Clark suffered through a hostile work environment based on her status as a nursing mother in violation of Title VII. Mrs. Clark's decision to express breast milk for her newborn son for the first year after his birth was questioned, derided, minimized, dismissed, and ridiculed at every turn. PSOF 21, 27, 31, 36-41, 45-48, 54-55, 64, 68, 73, 74, 76, 84.

When Mrs. Clark returned to work after maternity leave for her second child, the hostile work environment discrimination worsened. In June or July 2014, Mrs. Clark promoted to a position in TFD's Fire Prevention Division (Fire Prevention). PSOF 98. Captain Jeff Langejans then began a pattern of harassing conduct against Mrs. Clark that included telling his subordinate that it would be easy to kill his enemies, spreading negative rumors about Mrs. Clark's marriage, sharing negative comments about Mrs. Clark posted to an online article about Mrs. Clark's lawsuit, disparaging Mrs. Clark as the reason for poor morale in Fire Prevention, claiming the Clarks were ruining Fire Prevention, accusing her

of cheating on her promotional test to his subordinates, and making threatening and derogatory remarks about Mrs. Clark and female firefighters generally. PSOF 98-116.

TFD admits that Fire Prevention Inspectors Tom Sisterman and John Vincent, subordinates of Captain Langejans, filed complaints which corroborated the hostile work environment in Fire Prevention created and caused by Captain Langejans' treatment of Mrs. Clark. PSOF 128 ¶ 107-109. While it investigated Captain Langejans' conduct, Captain Langejans received the equivalent of a slap on the wrist; he was never removed from his position or transferred to a different department. PSOF 118-119. When EOPD Investigator Larsen criticized TFD for letting Captain Langejans get off easy, TFD defended its actions. PSOF 121, 125. For these reasons, no genuine issue of material fact exists to dispute that TFD subjected Mrs. Clark to hostile work environment sex discrimination based on her status as a nursing mother.

The conduct that Mrs. Clark suffered both prior to and after her second maternity leave were both objectively hostile and abusive, as demonstrated by the fact that at least two other individuals who witnessed the conduct filed complaints for hostile work environment, and subjectively perceived by Mrs. Clark as hostile and abusive, as demonstrated by the fact that she lodged multiple internal and external complaints, both formal and informal. PSOF 19, 29-30, 33-34, 74-75, 120. Summary judgment is also appropriate on this claim.

**D.   Even Assuming, Arguendo, Direct Evidence Does not Support Title VII Discrimination or Hostile Work Environment, No Genuine Issue of Material Fact Exists to Dispute that she has Proven a Prima Facie Case Under the *McDonnell Douglas* Burden-Shifting Framework**

Where there is no direct evidence of discrimination, the Plaintiff bears the initial burden of establishing a prima facie case of discrimination by showing that she belongs to the protected class, she sought accommodation, that the employer did not accommodate her, and that the employer did accommodate others similar in the ability or inability to work. *Young, supra,* 135 S. Ct. at 1354. This is not an inflexible rule. *Id*. Actions by an employer from which can be inferred, absent an explanation, that the actions were more likely than not based on discriminatory criterion are illegal under Title VII. *Id*. The burden on the

11

plaintiff to state a prima facie case is "not onerous." *Id., citing Texas Dept. of Community Affairs v. Burdine,* 450 U. S. 248, 253 (1981).

There is no genuine dispute that Mrs. Clark is a member of a protected class, or that she sought accommodation in the form of a consistent assignment to a station that had a place, other than a bathroom, that was shielded from view and free from intrusion from coworkers and the public so she could express her breastmilk. There is also no genuine dispute that TFD failed to do so. PSOF 10-11, 13-22, 26-28, 35, 42, 45, 48, 64, 66, 74, 77-78, 81, 84, 86-87. The record evidence also shows that TFD admits that despite its excuses to Mrs. Clark that its Rules of Assignment did not allow for what Mrs. Clark was asking, it does not, in fact, follow its Rules of Assignment, and can make exceptions based on "management rights." PSOF 23-24. TFD has deviated from its Rules of Assignment for employees who have been convicted of driving under the influence, charged with other criminal offenses, and employees whom are on a work improvement plan. PSOF 24. TFD also prohibited Mrs. Clark from being assigned to Station despite the fact that the only other nursing mother in TFD, Arianne Phaneuf, was assigned there. PSOF 64. Therefore, Mrs. Clark has established a prima facie case. Further, there is no record evidence that TFD has or can offer a legitimate, non-discriminatory reason for its disparate treatment of Mrs. Clark. PSOF 64. For these reasons, even under the *McDonnell Douglas* burden-shifting framework, Mrs. Clark is entitled to summary judgment.

**E.     TFD Retaliated Against Mrs. Clark in Violation of Title VII Both in its Treatment of her Husband and in Her Unfavorable Station Assignments.**

The record evidence in this case reflects that Mrs. Clark was subjected to retaliation when she complained of Captain Langejans' hostile work environment discrimination outlined above. Title VII makes it unlawful for an employer to:

> discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). It is well established that to "discriminate against" in the context of this statute refers to "distinctions or differences in treatment that injure protected individuals." *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006). To establish a prima facie case for retaliation, a plaintiff must show: 1) she engaged in a protected activity; 2) her employer subjected her to an adverse employment action; and 3) a causal link exists between the protected activity and the adverse action. *Ray*, 217 F.3d at 1240; *citing Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464 (9th Cir.1994). An adverse employment action is any "adverse treatment that is reasonably likely to deter employees from engaging in protected activity." *Id.* at 1240. The Ninth Circuit has taken a "broad" and "expansive" approach to determining the specific types of treatment that fit within that definition. *Id.* at 1241.

Over the course of several years, TFD retaliated against Mrs. Clark in numerous ways: by continually assigning her to non-compliant stations (PSOF 27, 33); by formally disciplining her (PSOF 58-59); by failing to address inappropriate, discriminatory, harassing behavior in TFD (PSOF 55, 70, 73-74); by refusing to assign her to Station 12 (PSOF 15-18, 22, 64); by changing her start time while she was on light duty, forcing her to get a doctor's note to exercise, and restricting where she could exercise (PSOF 94-96); by withdrawing time from her vacation bank without her consent (PSOF 97); by failing to adequately and properly address the hostile work environment in Fire Prevention (PSOF 122); and when it used its investigation into Captain Langejans to justify transferring Mrs. Clark's husband, Captain Gordon Clark, to a lower paying, less desirable position, under a nepotism policy that TFD does not otherwise enforce (PSOF 122-127).

On this last act of retaliation, Mrs. Clark was interviewed as part of TFD's investigation into Captain Langejans' conduct on January 22, 2015. PSOF 128 ¶ 108. This constitutes protected activity within the definition of Title VII because Mrs. Clark "testified, assisted, or participated in any manner in an investigation" into allegations of hostile work environment sex discrimination. 42 U.S.C. § 2000e-3(a). TFD then turned its investigation into Captain Langejans' conduct into a finding that its nepotism policy was being violated

because Mrs. Clark and Captain Clark worked in Fire Prevention (though not in the same supervisory chain). *Id.* at ¶ 124; PSOF 122. TFD's transfer of Captain Clark to a lower-paying, more burdensome position is materially adverse and highly likely to discourage a reasonable employee from engaging in further protected activity. Thus, Captain Clark's transfer constitutes an adverse employment action under Title VII.

Temporal proximity between a protected activity and an adverse employment action, coupled with employer knowledge of the protected activity, raises a strong inference of unlawful retaliation. *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987). Here, TFD's transfer of Captain Clark's was the result of Mrs. Clark's protected activity, as he was transferred as a result of the very proceeding in which she testified. PSOF 128 ¶ 124. This strong inference of retaliatory motive, based on temporal proximity and employer knowledge, coupled with the egregious nature of the adverse employment action demonstrates that TFD has violated Title VII's anti-retaliation provision. As no genuine issue of disputed material fact exists on TFD's retaliation, summary judgment is appropriate.

### F. TFD Violated Section 215 of the Fair Labor Standards Act When it Transferred Mrs. Clark to an Undesirable Location in Retaliation for Reporting That TFD Lacked Legally-Compliant Space to Express Her Breast Milk

The undisputed record evidence shows that Mrs. Clark complained to OEOP that she was not being properly accommodated for her need to express breast milk under FLSA § 207(r).  As a result of her complaint, Mrs. Clark was transferred to Station 6, an undesirable work location, and deprived of the opportunity to earn overtime pay. PSOF 61, 63. FLSA § 215 states, in relevant part:

> It shall be unlawful for any person--to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

29 U.S.C. § 215(a)(3).

An employee who has complained about violations of FLSA to her employer is protected from retaliation under § 215. *Lambert v. Ackerley*, 180 F.3d 997, 1008 (9th Cir. 1999). To establish a prima facie case for retaliation under FLSA, a plaintiff must demonstrate: (1) he or she engaged in activity protected by the FLSA; (2) he or she suffered an adverse action by the employer subsequent to or contemporaneous with such employee activity; and (3) a causal connection existed between the employee's activity and the employer's adverse action. *Contreras v. Corinthian Vigor Ins. Brokerage, Inc.*, 103 F. Supp. 2d 1180, 1184 (N.D. Cal. 2000). The burden then shifts to the defendant to offer a legitimate reason for the adverse employment action. *Id*. If the defendant is able to proffer a legitimate reason, the burden shifts back to the plaintiff to prove that the defendant's proffered legitimate reason is false and therefore mere pretext. *Id*. The term 'adverse employment action' is interpreted broadly. *Ray v. Henderson*, 217 F.3d 1234, 1241 (9th Cir. 2000) (in the retaliation context, lateral transfers of the same pay and status, exclusion from meetings and seminars, moving to a less desirable workspace, and disadvantageous transfers all fall within the definition of adverse employment action.)

Based upon the undisputed facts of this case, it is clear that TFD retaliated against Mrs. Clark for her complaints that she was not being accommodated as mandated by FLSA. Mrs. Clark met with OEOP Specialist Marty Macias on January 7, 2013, alleging that she was not being provided with an acceptable location to express breast milk. PSOF 29-30, 34, 128 ¶ 36. This constitutes a protected activity within the definition of § 215(a)(3).

TFD then assigned Mrs. Clark to work at Station 6, a station located at the far southeast boundary of Tucson that primarily responds to calls from the federal and state prisons. PSOF 61, 128 ¶ 53, 64. Mrs. Clark's assignment to Station 6 also resulted in her being deprived of the opportunity to earn overtime hours and make trades. PSOF 63. Thus, TFD subjected Mrs. Clark to an adverse employment action when she was transferred to Station 6, as it was a less convenient and less desirable assignment, and she was also deprived of the potential to earn overtime.

When Mrs. Clark asked AC Fischback why she could not be assigned to Station 12, a more convenient assignment location that, in Mrs. Clark's experience, possessed the facilities she needed, AC Fischback responded , "well, that's what happens when you file a complaint with EEO." PSOF 64, 128 ¶ 58. This statement is direct evidence that Mrs. Clark's OEOP complaint was the cause of her transfer to Station 6, and renders any non-discriminatory explanation for her transfer pretextual. As a result, the evidence in this case clearly and without dispute demonstrates that TFD retaliated against Mrs. Clark in violation of FLSA § 215(a)(3). Her claim, therefore, prevails as a matter of law. Thus, this Court should grant Mrs. Clark's motion for summary judgment on her FLSA retaliation claim.

## IV. CONCLUSION

No genuine issue of material fact exists to dispute that since October 27, 2012, the TFD has discriminated against Mrs. Clark and retaliated against her under provisions of Title VII and FLSA. TFD lacked a policy or plan for how to provide a place in its fire stations, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public so that its employees could express their breastmilk. The chaos that followed in Mrs. Clark's life because of TFD's piecemeal, inflexible, discrimnatory approach to her assignments resulted in severe emotional distress. When Mrs. Clark raised the issue with her TFD chain of command and the City, and filed a charge of discrimination with the Arizona Civil Rights Division, TFD retaliated against her. There is also no dispute that TFD failed to take steps to prevent the retaliation from continuing. For these reasons, Mrs. Clark respectfully requests summary judgment on all of her federal claims and for this Court to set a further hearing on damages.

DATED this 11th day of May, 2017.

**JACOBSON LAW FIRM**

　*s/Jeffrey H. Jacobson*
Jeffrey H. Jacobson
*Attorney for Plaintiff*

Filed via the CM/ECF system and copy electronically provided this 11th day of May, 2017, to:

Michelle Saavedra
Principal Assistant City Attorney
Office of the City Attorney, Civil Division
255 W. Alameda, 7th Floor
Tucson, Arizona 85701
*Attorney for Defendant*

Michael W.L. McCrory
Principal Assistant City Attorney
Office of the City Attorney, Civil Division
255 West Alameda, 7th Floor
Tucson, AZ 85701
*Attorney for Defendant*