Michelle R. Saavedra
Michael W.L. McCrory
Principal Assistant City Attorneys for
MICHAEL G. RANKIN
City Attorney
P.O. Box 27210
Tucson, AZ 85726-7210
Michelle.Saavedra@tucsonaz.gov
State Bar No. 25728
Pima County Computer No. 66163
Michael.McCrory@tucsonaz.gov
State Bar Computer No. 3899
Pima County Computer No. 37268
Telephone: (520) 791-4221
Fax: (520) 623-9803
*Attorneys for Defendant City of Tucson*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| CARRIE FERRARA CLARK,<br><br>    Plaintiff,<br><br>vs.<br><br>CITY OF TUCSON,<br><br>    Defendant. | 4:14-cv-02543<br><br>**DEFENDANT'S ANSWER TO THIRD AMENDED COMPLAINT**<br><br>(Hon. Cindy Jorgenson) |

For its Answer to Plaintiff's Third Amended Complaint ("TAC"), Defendant City of Tucson, by and through counsel undersigned, hereby admits, denies and alleges as follows: (each numbered answer corresponds with Plaintiff's paragraphs):

### PARTIES, JURISDICTION AND VENUE

1. Upon information and belief, admits Plaintiff is a resident of Pima County, Arizona.

2. Admits that the City of Tucson is an incorporated municipality situated in Pima County.

3. Admits and alleges Defendant City of Tucson complied with the provisions set forth in the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act, 42 U.S.C. §§ 2000e *et seq*. (Title VII), and the Fair Labor Standards act (FLSA), 29 U.S.C. § 203(e)(1).

1

4.      Admits.

5.      Admits.

6.      Admits.

7.      Denies and alleges Defendant is not liable to Plaintiff for any cause of action alleged in her TAC and Defendant did not cause Plaintiff to suffer any injuries or damages.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8.      Admits that on or about July 31, 2013, Plaintiff filed a written charge of sex discrimination with the Arizona Attorney General's Office, Civil Rights Division, ("ACRD"), pursuant to the Arizona Civil Rights Act, § 41-1481(A).   Defendant also alleges that on or about April 21, 2014, based upon its investigation, the Office of the Attorney General, Civil Rights Division dismissed Plaintiff's case concluding the evidence obtained did not establish any violation of statute(s) on the part of the City of Tucson.  A Notice of Right to Sue letter was issued to Plaintiff on April 24, 2014.   Defendant affirmatively alleges that Plaintiff's right to sue is limited to the allegations in the ACRD complaint and applicable statutes of limitations.

9.      Defendant admits that a formal complaint was filed with the City's Equal Opportunity Programs Division (EOPD) on or about March 27, 2015, alleging wrongful conduct by Capt. Langejans.   Defendant affirmatively alleges that EOPD had not completed the processing of that complaint at the time the First Amended Complaint was submitted to the Court and Plaintiff therefore failed to exhaust her City remedies prior to pursuing legal action.

10.      Defendant admits those charges contained within the ACRD complaint were timely filed pursuant to the Arizona Civil Rights Act.

## GENERAL ALLEGATIONS

11.      Admits.

12.      Admits at the time Plaintiff filed her original Complaint she was a Paramedic with the Tucson Fire Department ("TFD") and alleges Plaintiff applied for and was selected for the position of Fire Prevention Inspector for TFD, which was a lateral transfer

from her previous rank of Paramedic.  That transfer was effective August 10, 2014 through May 1, 2016, which is when Plaintiff was reassigned to Operations as a Paramedic. Plaintiff requested to be demoted to a Firefighter position, and since June 26, 2016 she has been a Firefighter.

13.    Upon information and belief, admits Plaintiff gave birth to her first son on July 19, 2012, and she returned to work on October 27, 2012.

14.    Admits when Plaintiff returned to work she returned to her assignment as a Swing Paramedic on "C" Shift, which means she continued to be assigned to work at different stations depending on TFD's needs.  Defendant also alleges that Plaintiff requested that she be assigned to stations on the eastside of town, preferably Station 12, and TFD assigned her to the requested stations whenever possible.

15.    Admits that Plaintiff informed BC McDonough that she preferred to be assigned to stations with private rooms and those on the east side.

16.    Denies.

17.    Admits there were discussions about temporarily assigning Plaintiff to Station 20.

18.    Admits.

19.    Upon information and belief, admits that on or about October 27, 2012, Paramedic Jeff Todd told Plaintiff that he wanted to move to another station and would like to help her.  Defendant affirmatively alleges that under TFD's Rules of Assignment members are not permitted to swap or exchange assignments or positions.  Defendant further alleges that Jeff Todd was moved from Station 12 for reasons unrelated to Plaintiff and not because he requested to be moved.

20.    Admits Paramedic Todd sent an email to BC Stevens asking for a transfer to Station 20, but Defendant denies the remaining material allegations contained in paragraph 20.

21.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the material allegations contained in paragraph 21 of Plaintiff's TAC and, therefore, denies the same.

22.    Admits.

23.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the material allegations contained in paragraph 23 of Plaintiff's TAC and, therefore, denies the same.

24.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the material allegations contained in paragraph 24 of Plaintiff's TAC and, therefore, denies the same.

25.    Admits Paramedic Todd did not get transferred to Station 20 for legitimate business reasons and denies that there were any similarly situated employees who were previously granted similar transfers.

26.    Denies that Paramedic Todd's request was granted and alleges Paramedic Todd was moved from Station 12 for legitimate business reasons unrelated to Plaintiff, and not because he requested to leave or opted to move to swing.   Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining material allegations contained in paragraph 26 of Plaintiff's TAC and, therefore, denies the same.

27.    Admits that on or about November 9, 2012, Plaintiff submitted a request to be temporarily assigned to TFD Station 12.   Defendant also alleges that the reason for Plaintiff's request was that Station 12 was closer to her mother, which made it easier for her mother to pick up expressed milk to feed her son during her work shifts.   Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 27 of Plaintiff's TAC and, therefore, denies the same.

4

28.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the material allegations contained in paragraph 28 of Plaintiff's TAC and, therefore, denies the same.

29.     Admits that in early November 2012, DC Nied and DC Rodriguez met with Plaintiff.

30.     Denies.

31.     Admits Plaintiff remained at Station 12 until after the holiday season through the efforts of DC Nied and DC Rodriguez.

32.     Admits Plaintiff remained assigned to Station 12 through January 1, 2013, due to the efforts of DC Nied and DC Rodriguez.

33.     Denies.

34.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the material allegations contained in paragraph 34 of Plaintiff's TAC and, therefore, denies the same.

35.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the material allegations contained in paragraph 35 of Plaintiff's TAC and, therefore, denies the same.

36.     Admits on January 7, 2013, Martina Macias, Senior Equal Opportunity Specialist at the City of Tucson's Office of Equal Opportunity Programs ("OEOP") conducted an intake interview of Plaintiff.  Defendant alleges that at that time, Plaintiff described her version of what occurred with her request to be assigned to Station 12. Defendant also alleges Plaintiff was not subjected to any discrimination.

37.     Defendant denies that Ms. Macias told Plaintiff she had a valid claim. Defendant alleges Ms. Macias told Plaintiff she could file a complaint with OEOP and also told her she could fax the complaint in if she was unable to drop it off at their office. Plaintiff chose not to file a complaint with OEOP.

38.     Denies.

39.     Admits on March 20, 2013, Plaintiff made repeated telephone calls to DC Rodriguez and AC Fischback.   Defendant denies the remaining material allegations contained in paragraph 39.

40.     Admits AC Fischback received a call from Plaintiff sometime in the early evening of March 20, 2013, placed Plaintiff on hold and returned with DC Rodriguez and HR Manager Acedo.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining material allegations contained in paragraph 40 of Plaintiff's TAC and, therefore, denies the same.

41.     Admits Plaintiff was scheduled to work at Station 9 and that DC Rodriguez told Plaintiff something to the effect that it was the only assignment open.   Defendant denies the remaining material allegations contained in paragraph 41 of Plaintiff's TAC.

42.     Admits Plaintiff and HR Manager Acedo discussed the availability of private rooms for Plaintiff to express milk at Station 9.  Defendant denies the remaining material allegations contained in paragraph 42 of Plaintiff's TAC.

43.     Admits Plaintiff explained that she pumped every 2-3 hours, including throughout the night, and that she felt awakening her supervisors to leave their rooms was unreasonable, that HR Manager Acedo was concerned about the extent to which she was expressing milk and that Acedo was concerned about the impact on her work performance. Defendant denies the remaining material allegations contained in paragraph 43 of Plaintiff's TAC.

44.     Admits Plaintiff made the statement "you are out of your friggin' mind" on two separate telephone calls and admits DC Rodriguez and AC Fischback agreed that waking up her superiors to express milk was not ideal.  Defendant denies the remaining material allegations contained in paragraph 44 of Plaintiff's TAC.

45.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the material allegations contained in paragraph 45 of Plaintiff's TAC and, therefore, denies the same.

46.     Admits.

6

47.     Denies.

48.     Upon information and belief, admits Plaintiff contacted C Shift Union Griever Sloan Tamietti to accompany her to the meeting.  Defendant alleges that under City of Tucson Administrative Directives and the International Association of Fire Fighters Local 479 and City of Tucson Labor Agreement there was no requirement for Sloan Tamietti to be present for the meeting.

49.     Admits DC Rodriguez told Union Griever Tamietti that he did not need to be present for the meeting.  Defendant alleges Union Griever Tamietti was allowed to be present even though this was not a requirement due to the level of discipline being contemplated.

50.     Admits Union Griever Tamietti was allowed to be present for the meeting with Plaintiff.

51.     Admits Plaintiff was provided documentation of verbal counseling for using the words "you're out of your friggin' mind" two times and hanging up on her superiors two times during the March 20, 2013, phone calls.

52.     Denies.

53.     Admits.

54.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the material allegations contained in paragraph 54 of Plaintiff's TAC and, therefore, denies the same.

55.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the material allegations contained in paragraph 55 of Plaintiff's TAC and, therefore, denies the same.

56.     Denies.

57.     Defendant alleges AC Fischback responded that Station 12 was not on the list provided by the City of Tucson's OEOP department as a station with a locked door on the private room.

58.     Admits AC Fischback made a reference to the filing of a complaint with the City's OEOP.

59.     Admits AC Fischback made a reference to the filing of a complaint with the City's OEOP.

60.     Denies and alleges Plaintiff was not reassigned to a firefighter position and TFD does not provide individual employees with "formal notice" of reassignments. Defendant further alleges that nothing in Plaintiff's assignment violated TFD's Manual of Operations and/or applicable department policies and procedures.

61.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the material allegations contained in paragraph 61 of Plaintiff's TAC and, therefore, denies the same.

62.     Admits on or about July 19, 2013, TFD issued a new nursing room policy. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining material allegations contained in paragraph 62 of Plaintiff's TAC and, therefore, denies the same.

63.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the material allegations contained in paragraph 63 of Plaintiff's TAC and, therefore, denies the same.

64.     Admits that on or about July 19, 2013, JoAnn Acosta (Acedo) had a conversation with Plaintiff regarding her temporary assignment to Station 6 due to her need to express milk.  Mrs. Acosta referenced the fact that Plaintiff's son had turned one year and based on that her special/temporary assignment at Station 6 would expire unless she submitted a memo requesting an extension due to an ongoing need to express milk. Defendant also alleges that Plaintiff submitted a memo requesting an extension on July 27, 2013.  Defendant further alleges that Mrs. Acosta sent a memorandum to Plaintiff on August 30, 2013, recapping the conversation they had on July 19th and informing Plaintiff that the department granted her an extension to remain at Station 6 for 3 months, or until October 18, 2013, at which time her needs would be reevaluated.

8

65.     Denies and alleges DC Rodriguez and AC Fischback told Plaintiff on or about March 20, 2013 that she would be temporarily assigned to Station 6 due to her need to express milk.  Defendant also alleges that on July 27, 2013, Plaintiff submitted a memo requesting a continued assignment to Station 6 due to her need to continue expressing milk for her son.  Defendant further alleges on November 3, 2013, Plaintiff sent an email through her chain of command stating she had a need to be at Station 6 "until [she] finish[ed] nursing [her] second child."  In response to Plaintiff's email, she was contacted on November 4, 2013, for clarification about what she meant. Plaintiff stated she still had a need to express milk for her first child. Plaintiff was granted an extension and told that the department would check in with her in a few months (January 2014), and Plaintiff was asked to bring it to the department's attention if she no longer had a need to express milk.

66.     Upon information and belief, admits that on July 31, 2013, Plaintiff filed a written charge of discrimination with the Arizona Attorney General's Office, Civil Rights Division pursuant to the Arizona Civil Rights Act, § 41-1481(A).

67.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the material allegations contained in paragraph 67 of Plaintiff's TAC and, therefore, denies the same.

68.     Admits.

69.     Denies.

70.     Admits that on or about May 22, 2014, Plaintiff filed a notice of claim alleging she had experienced sex discrimination and retaliation since returning to work in late October 2012.

71.     Upon information and belief, admits Plaintiff was assigned to light duty on June 16, 2014, per her request.

72.     Admit HR Manager Acosta (Acedo) was checking in with Plaintiff periodically to see if she still had the need to express milk while at work. Also, refer to response to paragraph 64 above.

9

73.     Denies that Captain McDonough took Plaintiff out to drill by herself and admits Plaintiff submitted a memo on or about June 19, 2014, regarding a drill that took place on May 22, 2014.    Defendant also alleges Plaintiff received and educational counseling addressing her insubordination, inappropriate conduct, and carelessness during the drill.    Defendant further alleges that Captain McDonough and Firefighter Tyler McKendrick also submitted memorandums regarding this same drill.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining material allegations contained in paragraph 73 of Plaintiff's TAC and, therefore, denies the same.

74.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the material allegations contained in paragraph 74 of Plaintiff's TAC and, therefore, denies the same.

75.     Admits that firefighters on light duty were required to provide a doctor's note regarding their ability to engage in exercise and firefighters were expected to exercise where they were assigned.  Upon information and belief, admit Plaintiff was told that she must start work at 7:00 a.m.

76.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the material allegations contained in paragraph 76 of Plaintiff's TAC and, therefore, denies the same.

77.     Denies and alleges it is standard policy that anyone assigned to light duty is required to provide a doctor's note indicating the extent to which exercise is medically appropriate.

78.     Admits that TFD's telestaff records show that the change was made by payroll, which would have been done based on information about Plaintiff's time at work. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining material allegations contained in paragraph 78 of Plaintiff's TAC and, therefore, denies the same.

79.     Denies.

80.     Denies.

81.     Denies.

82.     Denies.

83.     Denies.

84.     Admits and alleges on or about June 4, 2014, DC Rodriguez and DC Baker became aware that Capt. Clark worked two trade shifts for Plaintiff.  Plaintiff was informed that this type of work trade was not acceptable and not an approved practice. Plaintiff was referred to the TFD Manual of Operations and told she did not possess the "equal qualifications" to work in a Captain's position.

85.     Admits.  Also, refer to response to paragraph 84 above.

86.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the material allegations contained in paragraph 86 of Plaintiff's TAC and, therefore, denies the same.

87.     Admits that on June 4, 2014, DC Rodriguez informed Plaintiff that pursuant to TFD MOPS and the Local 479 labor contract, trades must be in class with equal qualification and she did not possess the equal qualifications to work in a Captain position. Defendant denies the remaining allegations contained in paragraph 87 of Plaintiff's TAC.

88.     Admits.

89.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the material allegations contained in paragraph 89 of Plaintiff's TAC and, therefore, denies the same.

90.     Admits Plaintiff was selected for the position of Fire Prevention Inspector for TFD, which was a lateral transfer from her previous rank of Paramedic.

91.     Denies.

92.     Denies

93.     Denies.

94.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the material allegations contained in paragraph 94 of Plaintiff's TAC and, therefore, denies the same.

95.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the material allegations contained in paragraph 95 of Plaintiff's TAC and, therefore, denies the same.

96.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the material allegations contained in paragraph 96 of Plaintiff's TAC and, therefore, denies the same.

97.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the material allegations contained in paragraph 97 of Plaintiff's TAC and, therefore, denies the same.

98.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the material allegations contained in paragraph 98 of Plaintiff's TAC and, therefore, denies the same.

99.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the material allegations contained in paragraph 99 of Plaintiff's TAC and, therefore, denies the same.

100.    Denies.

101.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the material allegations contained in paragraph 101 of Plaintiff's TAC and, therefore, denies the same.

102.    Denies.

103.    Upon information and belief, admits Plaintiff was on leave from September through November 2014, after the birth of her second child.

104.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the material allegations contained in paragraph 104 of Plaintiff's TAC and, therefore, denies the same.

12

105.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the material allegations contained in paragraph 105 of Plaintiff's TAC and, therefore, denies the same.

106.    Upon information and belief, admits when Plaintiff returned from leave on or about November 24, 2014, she began her position as a Fire Inspector in the Fire Prevention Division.

107.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the material allegations contained in paragraph 107 of Plaintiff's TAC and, therefore, denies the same.

108.    Denies that Plaintiff was subjected to any actions of behaviors rising to the level of intimidation and/or hostile work environment and alleges TFD addressed Plaintiff's concerns regarding Capt. Langejans in a timely and appropriate manner. Defendant denies all other material allegations contained in paragraph 108 of Plaintiff's TAC.

109.    Admits there was a Strategic Planning Meeting on or about December 4, 2014, and admits that after said meeting Capt. Langejans, Inspectors Tom Sisterman and John Vincent engaged in a conversation.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining material allegations contained in paragraph 109 of Plaintiff's TAC and, therefore, denies the same.

110.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the material allegations contained in paragraph 110 of Plaintiff's TAC and, therefore, denies the same.

111.    Upon information and belief, admits that on December 5, 2014, Inspectors Sisterman, Vincent, and December told Captain Gordon Clark, Plaintiff's husband, that Capt. Langejans had made statements about Plaintiff and Gordon Clark.  Further admits that Gordon Clark notified his chain of command about what the inspectors had communicated to him.

112.   Alleges Plaintiff was interviewed on January 22, 2015, during TFD's internal investigation into the allegations against Capt. Langejans.  Upon information and belief, allege before that date Plaintiff had not communicated any concerns relating to Capt. Langejans to DC Mike Carsten or any other supervisory personnel.  Defendant also alleges that Plaintiff submitted an email on February 11, 2015, requesting that she be included in a meeting AC Laura Baker had scheduled with the TFD employees who had submitted memos regarding Capt. Langejans.

113.   Admits that on January 14, 2015, Inspector John Vincent submitted a memo titled, "Request for transfer within Fire Prevention Division," and admits on January 15, 2015, Inspector Tom Sisterman submitted a memo titled, "Hostile Work Environment in the Fire Prevention Division."  Defendant alleges the contents of those memos speak for themselves and further alleges these memos, as well as the memo submitted by Gordon Clark lead to TFD's internal investigation as discussed in paragraph 112, above.

114.   Denies and alleges TFD conducted an internal investigation into the allegations contained in the memos mentioned in paragraph 113, above, and further alleges TFD's investigation was thorough and Capt. Langejans' chain of command addressed the situation appropriately.

115.   Admits on January 15, 2015, DC Mike Carsten received a memo authored by Gordon Clark dated January 14, 2015, which was titled "Report of Wrongful Conduct." Defendant alleges the content of said memo speaks for itself and this memo did make it up the chain of command to Chief Critchley.   On January 16, 2015, Chief Critchley authorized an internal investigation into the allegations contained in Gordon Clark's memo and the memos submitted by Inspector Sisterman and Inspector Vincent as discussed in paragraphs 113 and 114, above.

116.   Admits that Inspectors Sisterman and Vincent's memos made it up the chain of command to Chief Critchley and that Chief Critchley authorized and internal investigation into these memos and Gordon Clark's memo as discussed in paragraphs 113 through 115, above.

117. Denies.

118. Denies.

119. Admits that on February 12, 2015, AC Laura Baker and DC Carsten met with Plaintiff after first meeting separately with each of the following individuals, in this order: Vincent, Longo, Sisterman, Gordon Clark, and Langejans. Each person was individually informed that the internal investigation was complete, to stop talking about others which creates an uncomfortable environment, all will remain in the division, though some uncomfortableness and tensions there is not a threat in the workplace. All were also informed that each would participate in mandatory training titled "Respectful Workplace" and all were offered to participate in a voluntary mediation coordinated through the City's Equal Opportunity Programs Division ("EOPD"). They were also offered assistance through Employee Assistance Program ("EAP").

120. Denies and alleges after the completion of the internal investigation in February 2015 AC Laura Baker met with Plaintiff and informed about the investigation as more fully set forth in paragraph 119, above. Defendant further alleges that AC Laura Baker was not aware of any alleged concerns Plaintiff had about Capt. Langejans until after Plaintiff filed a wrongful conduct complaint with the City's EOPD on or about March 25, 2015. Plaintiff never filed a memorandum or any complaint relating to Capt. Langejans with AC Laura Baker or anyone in the Fire Prevention Division or TFD.

121. Denies and alleges the same as response to paragraph 119, above, which discusses what AC Laura Baker told Plaintiff and others in the Fire Prevention Division after completing her investigation.

122. Denies.

123. Alleges the internal investigation into the allegations against Capt. Langejans resulted in him being issued a written reprimand and the findings of any violations of City Administrative Directives and/or TFD policies are noted on said written reprimand and it speaks for itself.

124.   Admits that Capt. Langejans was issued a written reprimand after TFD's internal investigation and alleges this disciplinary action was appropriate under the circumstances and consistent with TFD's discipline matrix.

125.   Admits Plaintiff filed a complaint with the City's EOPD on or about March 25, 2015, and denies all remaining allegations contained in paragraph 125 of Plaintiff's TAC.

126.   Defendant is without knowledge or information sufficient to form a belief as to the truth of the material allegations contained in paragraph 126 of Plaintiff's TAC and, therefore, denies the same.

127.   Defendant is without knowledge or information sufficient to form a belief as to the truth of the material allegations contained in paragraph 127 of Plaintiff's TAC and, therefore, denies the same.

128.   Upon information and belief, admits on or about July 29, 2015, EOPD Investigator Matthew Larsen submitted an Investigative Summary to Martha Durkin, the City Manager at the time, addressing his portion of the investigation into Plaintiff's EOPD complaint filed on March 25, 2015.  Defendant alleges EOPD Sr. Equal Opportunity Specialist, Martina Macias was tasked with investigating Plaintiff's allegations of discrimination and/or harassment also contained in the EOPD complaint she filed on March 25, 2015, and she submitted her findings as to these allegations in a separate Memorandum contained within the EOPD investigation file.  Defendant also alleges that on July 29, 2015, Assistant City Manager, Julianne Hughes, concurring with Martina Macias findings and directed TFD to address EOPD's assertions about TFD's internal investigation and the nepotism issue.  On August 18, 2015, AC Laura Baker submitted a response as directed by the City Manager's Office.

129.   Admits on June 18, 2105, Martina Macias, Sr. Equal Opportunity Specialist with the City's EOPD did a separate analysis of the interviews conducted during Matthew Larsen's investigation and she made a finding that there was no information which supported a prima facie case of retaliation, discrimination, or harassment.   Defendant

alleges Investigator Matthew Larsen's findings as to his portions of the EOPD investigation are contained in his Investigative Summary, and the content of said summary speaks for itself.

130.   Admits that Investigator Matthew Larsen made a finding that because Plaintiff and her husband, Gordon Clark, were working in a particularly small sized division it appeared there was a violation of the City's Administrative Directive regarding nepotism.  Defendant denies the remaining material allegations contained in paragraph 130 of Plaintiff's TAC and alleges Plaintiff has suffered no adverse employment action.

131.   Denies.

132.   Upon information and belief, admits that Plaintiff's husband Gordon Clark was notified that he would be reassigned to Operations effective August 22, 2015, and alleges this assignment was partly because of TFD's review of its nepotism policy, but this move was already being contemplated as part of TFD's succession planning.  Defendant further alleges Gordon Clark was on the promotional list for Battalion Chief ("BC") prior to the EOPD investigation and there had been discussions between Gordon Clark and AC Laura Baker regarding him moving back to Operations before being promoted to BC.

133.   Denies and alleges that on or about August 22, 2015, Gordon Clark was transferred from his assignment as a Captain in Fire Prevention to a temporary assignment at EN#3.  Defendant also alleges that upon information and belief Gordon Clark may have worked an alternate 4/10 schedule while in Fire Prevention.   On his first shift in Operations, Gordon Clark was assigned to EN#3 and continued to be scheduled at EN#3 from August 23, 2015 through November 13, 2015, he then bid to LD#1. Further alleges LD#1 is a specialty assignment and Gordon Clark received a 5% increase in pay from November 17, 2015 through January 7, 2016, thereafter he was promoted to Battalion Chief.   Defendant further alleges that upon being notified that he was going to be reassigned to Operations, Gordon Clark had the opportunity to bid to any opening to change his assignment.

134.   Denies and alleges the nepotism policy was undergoing revisions after the EOPD investigation and there were several personnel moves as a result of the EOPD investigation and the direction that was given from the City Manager's Office to address any potential issues of nepotism in the TFD.

135.   Admits that when comparing the pay scale of a 40 hour a week Captain to a 56 hour a week Captain, the 40 hour a week Captain makes more, but alleges that the actual amount earned and whether the swing shift is less desirable depends upon various factors.  Defendant also alleges that Gordon Clark was temporarily assigned to EN#3 and then bid to LD#1 as more full set forth in paragraph 128, above.

136.   Denies.

137.   Denies and alleges Plaintiff has never been retaliated against.

138.   Denies and alleges the nepotism policy was undergoing revisions after the EOPD investigation and there were several personnel moves as a result of the EOPD investigation and the direction that was given from the City Manager's Office to address any potential issues of nepotism in the TFD or see 134 above.

139.   Defendant is without knowledge or information sufficient to form a belief as to the truth of the material allegations contained in paragraph 139 of Plaintiff's TAC and, therefore, denies the same.

140.   Admits.

141.   Defendant is without knowledge or information sufficient to form a belief as to the truth of the material allegations contained in paragraph 141 of Plaintiff's TAC and, therefore, denies the same.

142.   Admits.

143.   Admits.

144.   Admits that an Educational Counseling was issued to Plaintiff on March 24, 2016, for inappropriate conduct and violation of directive or policy and the contents of the Educational Counseling documentation speaks for itself.  Defendant denies the remaining allegations contained in paragraph 144 of Plaintiff's TAC.

18

145.   Admits on April 7, 2016, AC Baker and DC Carsten interviewed Plaintiff and seven other TFD employees regarding Plaintiff's wrongful conduct complaint number 16-03-001.

146.   Admits on April 13, 2016, after reviewing Plaintiff's wrongful conduct complaint and conducting interviews, AC Baker submitted a Response to Wrongful Conduct Complaint #WC 16-03-001 to Chief Critchley.  Further alleges AC Baker found no evidence establishing mismanagement or misconduct and concluded the complaint was unfounded.

147.   Admits on April 16, 2016, Chief Critchley sent a memorandum to EOPD regarding Plaintiff's wrongful conduct complaint number 16-03-001 and included in the memorandum is a statement that "The department was not able to substantiate the claim of mismanagement and misconduct."  Also, alleges the content of the memorandum speaks for itself.

148.   Admits on April 27, 2016, Chief Critchley provided Plaintiff with a memorandum regarding her reassignment back to Operations.  Alleges the memorandum provides Plaintiff with the reasons for the transfer or reassignment and the content speaks for itself.

149.   Admits. Also, see paragraph 148 above.

150.   Admits that on May 13, 2016, TFD sent a memorandum informing all fire personnel of their updated Seniority within Rank and formally announcing that the procedure already used for calculating Seniority within Rank, which was agreed upon by a representative of Local 479 and Fire Administration, would now be official TFD standard effective May 1, 2016.  Defendant denies the remaining material allegations contained in paragraph 150 of Plaintiff's TAC.

151.   Denies that it was a new policy.  Also, see paragraph 150 above.

152.   Denies.

153.   Denies.

154.   Denies.

1    155.   Denies.

2    156.   Admits that on April 27, 2016, when Plaintiff was informed of her

3  reassignment back into Operations she was also told that AC Garcia would be informing

4  her of the training she would be required to attend at the Public Safety Training Academy

5  to begin on May 2, 2016.  Alleges this training was to provide her with support and ensure

6  her success back in the field.

7    157.   Alleges that Plaintiff's private physician, Michael Purkis, signed a Work

8  Status Verification on May 6, 2016, placing Plaintiff on modified duty for a ventral hernia

9  until Plaintiff received surgery.  Defendant denies the remaining material allegations in

10  paragraph 157 of Plaintiff's TAC.

11    158.   Admits.

12    159.   Denies and alleges on May 11, 2016, Plaintiff was assigned to light duty

13  under DC of Communications, Chris Conger.  Due to the location of Plaintiff's work at

14  Fire Central, DC Conger was unable to supervise Plaintiff.   Plaintiff was therefore

15  assigned to AC Laura Baker, DC Chris Conger's direct supervisor. Further alleges that

16  Plaintiff did not turn in her light duty paperwork until the morning of May 11, 2016.

17    160.   Denies.  Also, see paragraph 159 above.

18    161.   Admits.  Also, see paragraph 159 above.

19    162.   Denies.

20    163.   Admits.

21    164.   Denies.

22    165.   Admits that Plaintiff filed a Wrongful Conduct Complaint, which was

23  submitted on June 2, 2016.  The content of the complaint speaks for itself.

24    166.   Admits that on June 13, 2016, CFO/Assistant City Manager, Joyce K.

25  Garland, issued a memorandum after reviewing Plaintiff's complaint and corresponding

26  documentation.  Alleges the content of the memorandum speaks for itself.

27

28

167.   Denies and alleges that Plaintiff's initial assignment to light duty was in communications.  Plaintiff was then assigned to assist in the medical administration division and then was reassigned back to the communications division.

168.   Admits and alleges Plaintiff requested to demote to a Firefighter position.

169.   Denies.

170.   Admits.

171.   Admits and further alleges that personnel part of the "$150 club" must work one shift as a paramedic in a calendar year.  Defendant further alleges that the $150.00 is multiplied by 12 months and then divided into 26 equal payments of $69.23.

172.   Admits that DC Conger emailed Plaintiff's $150 club form near the close of business on the Friday before the last day of the pay period.

173.   Denies.

174.   Denies.

175.   Admits.

176.   Denies.

177.   Denies and alleges that Gordon Clark did not pass probation as a Battalion Chief and was therefore reverted back to his prior classification of Captain, effective December 25, 2016.

178.   Denies.

179.   Admit.

180.   Denies.

**COUNT ONE**

**(Sex Discrimination in Violation of the Fair Labor**

**Standards Act, 29 U.S.C. § 207(r))**

181.   Defendant hereby incorporates by reference the assertions and allegations contained in paragraphs 1-180 above as though fully set forth herein.

182.   Paragraph 182 is a legal conclusion and no response is necessary from Defendant.

1    183.    Denies.

2    184.    Denies.

3    185.    Denies.

4    186.    Denies that Defendant violated any constitutional, statutory, common law, or

5    other right of the Plaintiff and, therefore, denies that Plaintiff was damaged in any way by

6    Defendant.

7    **COUNT TWO**

8    **(Retaliation in Violation of the Fair Labor**

9    **Standards Act, 29 U.S.C. § 215)**

10   187.    Defendant hereby incorporates by reference the assertions and allegations

11   contained in paragraphs 1-186 above as though fully set forth herein.

12   188.    Paragraph 188 is a legal conclusion and no response is necessary from

13   Defendant.

14   189.    Denies.

15   190.    Denies.

16   191.    Denies.

17   192.    Denies that Defendant violated any constitutional, statutory, common law, or

18   other right of the Plaintiff and, therefore, denies that Plaintiff was damaged in any way by

19   Defendant.

20   **COUNT THREE**

21   **(Sex Discrimination in Violation of Title VII of the**

22   **Civil Rights Act of 1964, as Amended)**

23   193.    Defendant hereby incorporates by reference the assertions and allegations

24   contained in paragraphs 1-192 above as though fully set forth herein.

25   194.    Admits that the City of Tucson is an employer within the meaning of the

26   Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act, 42 U.S.C. §§

27   2000e et seq. (Title VII).

28   195.    Denies.

1    196.   Denies.

2    197.   Denies that Defendant violated any constitutional, statutory, common law, or

3 other right of the Plaintiff and, therefore, denies that Plaintiff was damaged in any way by

4 Defendant.

5                                    **COUNT FOUR**

6                        **(Retaliation in Violation of Title VII of the**

7                        **Civil Rights Act of 1964, as Amended)**

8    198.   Defendant hereby incorporates by reference the assertions and allegations

9 contained in paragraphs 1-197 above as though fully set forth herein.

10    199.   Paragraph 199 is a legal conclusion and no response is necessary from

11 Defendant.

12    200.   Denies.

13    201.   Denies that Defendant violated any constitutional, statutory, common law, or

14 other right of the Plaintiff, and alleges that the content of the City's EOPD investigation

15 speaks for itself.

16    202.   Denies.

17    203.   Denies.

18    204.   Denies that Defendant violated any constitutional, statutory, common law, or

19 other right of the Plaintiff and, therefore, denies that Plaintiff was damaged in any way by

20 Defendant.

21                                    **COUNT FIVE**

22                        **(Retaliation Discrimination in Violation of Title VII of the**

23                        **Civil Rights Act of 1964, as Amended)**

24    205.   Defendant hereby incorporates by reference the assertions and allegations

25 contained in paragraphs 1-204 above as though fully set forth herein.

26    206.   Paragraph 206 is a legal conclusion and no response is necessary from

27 Defendant.

28    207.   Denies.

208.    Denies.

209.    Denies that Defendant violated any constitutional, statutory, common law, or other right of the Plaintiff and, therefore, denies that Plaintiff was damaged in any way by Defendant.

### GENERAL DENIAL

210.    Defendant denies any allegation not specifically admitted in this Answer.

### AFFIRMATIVE DEFENSES

211.    Alleges that Plaintiff's Third Amended Complaint fails to state a claim upon which relief can be granted.

212.    Alleges Plaintiff was not subjected to any adverse employment action. Alleges that all employment actions taken with regard to Plaintiff were because of legitimate business reasons.

213.    Alleges Defendant exercises reasonable care in preventing and/or correcting any alleged sex discrimination, and Plaintiff failed to take advantage of the corrective or preventative opportunities provided to her as a City employee.   Thus, Defendant is protected under the *Ellerth-Faragher* defense for Plaintiff's state and federal claims. *Burlington Industries v. Ellerth,* 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton,* 524 U.S. 775 (1998).

214.    Alleges Plaintiff Carrie Clark did not mitigate or may not have mitigated her damages which may have been incurred as she alleges in her Amended Complaint.

215.    Alleges that Defendant is without knowledge or information sufficient to form a belief as to all the affirmative defenses that may become available as discovery progresses. Therefore, Defendant asserts all the affirmative defenses available pursuant to Federal Rules of Civil Procedure, Rules 8 and 12, A.R.S. § 12-820, *et seq.*, A.R.S. § 12-821, *et seq.*, A.R.S. § 41-1463, *et seq.* and any other defenses raised by discovery, as if such defenses were set forth specifically herein.

216.    Plaintiff has failed to comply with A.R.S. §12-821.01.

217.   Plaintiff failed to exhaust administrative remedies through either the EEOC or ACRD.

WHEREFORE, having fully answered Plaintiff's Third Amended Complaint, Defendant requests that the Court:

A.   Dismiss Plaintiff's Third Amended Complaint for failure to state a claim for which relief may be granted;

B.   Determine that Plaintiff take nothing by same;

C.   Award Defendant its costs of litigation, including a reasonable attorney's fee;

D.   Grant such other and further relief as the Court deems just and proper.

DATED June 2, 2017.

MICHAEL G. RANKIN
City Attorney

By:   s/Michelle R. Saavedra
Michelle R. Saavedra
Michael W. L. McCrory
Principal Assistant City Attorneys

I hereby certify that on June 2, 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Jeffrey H. Jacobson
JACOBSON LAW FIRM
2730 East Broadway Blvd., Suite 160
Tucson, AZ 85716
        *Attorney for Plaintiff*

By E. Ramirez/lc