# EXHIBIT 20

1  Michelle R. Saavedra
   Michael W.L. McCrory
2  Principal Assistant City Attorneys for
   MICHAEL G. RANKIN
   City Attorney
3  P.O. Box 27210
   Tucson, AZ 85726-7210
4  Michelle.Saavedra@tucsonaz.gov
   State Bar No. 25728
5  Pima County Computer No. 66163
   Michael.McCrory@tucsonaz.gov
   State Bar Computer No. 3899
6  Pima County Computer No. 37268
   Telephone: (520) 791-4221
7  Fax: (520) 623-9803
   Attorneys for Defendant City of Tucson
8

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| CARRIE FERRARA CLARK, | No. 4:14-CV-02543-TUC-CKJ |
|---|---|
| Plaintiff, | **DECLARATION OF** |
| vs. | **RICHARD L'HEUREUX** |
| CITY OF TUCSON, | (Hon. Cindy Jorgenson) |
| Defendant. | |

Pursuant to 28 U.S.C. §1746, I, Richard L'Heureux, declare and state as follows:

1. I make this Declaration based on my personal knowledge.

2. I have been employed with the Tucson Fire Department since 1995.

3. Since 2015, I have been employed as a Suppression Captain at Station 4, B Shift. I currently supervise an engine company.

4. I was previously assigned as an EMS/EC Captain for Battalion 1, C Shift from approximately January, 2011 to March, 2015. My duties included staffing for the department and Battalion management.

5. I was also responsible for scheduling shifts when Carrie Clark returned to work from maternity leave in October 2012 and supervised her Swing shift assignments through March 20, 2013, when she was assigned full time to Station 6.

1

2

3

4

5

6

7

8

6.     In making assignments, I relied on the Rules of Assignment, classification, seniority and, where practical, individual preferences.  The staffers making assignments tried to go in order of specialty, battalion and seniority.  Most Swing shift personnel have preferences for where they want to go, such as to the east or west side of Tucson based on where they live, and the staffers tried to accommodate these preferences.  Making those accommodations was not effected by race, nationality or gender.  I did not personally make each assignment for Plaintiff.  Other TFD staff members were also responsible for assigning Plaintiff.  (*See* Exhibit 23, Telestaff Record).

9

10

11

12

13

7.     Carrie Clark gave me a list of stations where she could not work when she returned from maternity leave and was breast feeding.  I did not know that she had any problems with regard to the need to express breast milk from October 27, 2012 through March 13, 2013 nor of any conflict between the stations where she was assigned and her breast feeding needs.

14

15

16

17

18

19

20

21

22

8.     I reviewed her scheduling following her return to work on October 27, 2012 and found that there were not any occasions prior to March 20, 2013, when she did not go to work because of a station assignment. There were no occasions when another employee was bumped to place Carrie Clark at a station that was not on the list of excluded stations. There was one time I had to bump a paramedic with more seniority for a position at Station 20, but that was because Carrie Clark had a specialty certification that applied to that station. I told the paramedic who was bumped the correct reason for this action. There was no instance when someone else was re-assigned because Carrie Clark made a special needs request and I never told anyone that that had happened.

23

24

25

26

9.     I have reviewed the attached memorandum dated March 22, 2013, from Martina Macias, attached as Attachment 1, which reports on an interview I had with the City's equal opportunity program, OEOP.  All of the statements in that report that are attributed to me are true and accurate to the best of my recollection.

27

////

28

////

2

1    10.   I have reviewed the memorandum I wrote to Deputy Chief Rodriguez on
2  May 21, 2013, and that attached scheduling data, attached as Attachment 2.   The
3  statements I made in that memorandum are true and accurate to the best of my
4  recollection.

5    I state under penalty of perjury that the foregoing is true and correct.

6    Executed on August 18, 2017.

Richard L'Heureux

3

# ATTACHMENT 1

INTERVIEW

Date:   March 22, 2013

To:      Intake File

From:  Martina Macias, Sr. Equal Opportunity Specialist

Re:      Carrie Clark - Tucson Fire Department

On March 22, 2013, Program Manager Bob Barton met with Captain Rick L'heureux (L'heureux), Human Resources Manager JoAnn Acedo (Acedo), and Union Representative Chris Conger at the Office of Equal Opportunity Programs. Captain L'heureux stated the following:

His is responsible for assuring that the duty roster on C Shift A is a complete roster. This means assuring that all vacant spots are filled with Swing and extra duty personnel. Sometimes only half of a 24-hour shift needs to be filled.

Regarding Swing Paramedic Carrie Clark's (Clark) breast-feeding requirements, L'heureux has received assignment requests from her, regarding Stations where she told him she could not work. She also sometimes has other types of requests; most Swing shift personnel have preferences about where they want to be; for example, whether they prefer the East or West side of town. L'heureux tries to accommodate Swing personnel requests whenever possible. Sometimes, based on the roster, he can not grant some requests. L'heureux relies on the Rules of Assignment when deciding how to make assignments. Some of the things considered in staffing include a person's seniority. However, if there is a specialty assignment; for example, a TRT (tactical response team) or HazMat (Hazardous Materials), the person with that certification gets that spot regardless of seniority or Battalion placement. The more senior person, with the required certifications, gets the spot if they are in the district or Battalion that needs the spot filled. Staffers try to go in order of, "Specialty," "Battalion, (or district)" and "Seniority," when deciding assignments. For example, in the morning, when they have "Swingers," that they need to assign, they assign them first by district for Battalions 1, 2, 3, or 4. If the Battalion has Swingers, and there is a spot open somewhere in that Battalion, the swinger will get the spot unless things like Specialty, TRT, or HazMat come into play.

L'heureux asked Clark where she could not work, and she gave him a list of Stations where she could not work. That is the list L'heureux has been going by when making assignments for her. None of the Stations on the list are specialty Stations, so this aspect has not been a problem when putting her where she needs to be. On one occasion, L'heureux put Clark at a specialty Station, # 20. To L'heureux's knowledge, there has been no conflict regarding where she has been working, with regard to her breast-feeding needs.

If there are ever two Stations that need a paramedic, and one of the paramedics has more seniority than Clark, Clark will be assigned to the Station that meets her needs. This specific scenario has not occurred. If both Stations meet her needs, the staffer will go by seniority to make the assignment. L'heureux reiterated that he has only had the list of Stations that Clark gave him, to go by.

For the first time, this Wednesday, there were Stations that needed a paramedic, but did not meet Clark's requirements. L'heureux referred the matter to his Chief. It turned out, according to L'heureux' Chief, that the Station Clark was assigned to was one that met the requirements

1

14-02543 COT000321

for what Clark needs. It was half of a p.m. shift at Station 9. Clark ended up not going to work that night.

When L'heureux learned that the OEOP was having a fact-finding meeting with him, he checked the assignment records dating back to when Clark returned from maternity leave. He discovered that there have been no other instances where Clark called in sick or did not go to work because of one of her assignments.

On occasion, Clark has called in sick without talking to L'heureux; she has jumped the chain of command and spoken directly to her Chief instead of the staffing captain. This has been happening quite a bit.

There has not been an occasion when L'heureux has had to 'bump' someone to place Clark in their assigned location, at Clark's request. There was one time when L'heureux overlooked a specialty aspect, and he had to 'bump' a paramedic for Station 20 because Clark had the specialty certification. The bumped paramedic telephoned L'heureux and asked why he had been bumped out of Station 20, because he was senior to Clark. L'heureux responded that Clark had the specialty certification. That was the end of their conversation. L'heureux has not mentioned or discussed with any personnel, that they were being bumped because Clark had a special needs request. There has been no instance where this type of reassignment has occurred, therefore, there would not have been a time when he would have made such statements.

Last Wednesday Clark was off during the a.m. shift and was scheduled for the p.m. shift. She telephoned L'heureux, crying, and said she could not work at her assigned Station. L'heureux offered to bump someone, but Clark declined his offer and told him not to do it because the person was going to hate her for it. That was the first time that L'heureux would have had to bump someone to meet Clark's needs.

L'heureux stated that it would have been helpful, when Clark first started making her reassignment requests, if there had been some official notification giving L'heureux direction regarding Clark's needs and a list of the Stations that met those needs.

L'heureux clarified that he tries to be as transparent as possible in his job. He wants there to be justification for every switch or move he makes. He needs a reason for placing people where he does. In other words, he wants to be able to explain and justify the assignments he makes when someone questions what he has done. He likes to be able to do this by referencing specific policies or the Rules of Assignment. His goal is to be as fair as possible regardless of who it is. He tells Swingers to call him if they have a special request. He will grant their request if it does not affect someone who has the right to be where they have already been assigned. He has also let people know that they can ask someone else if they are willing to switch assignments with them.

Acedo stated that she has no knowledge of Clark making a special request regarding her breast-feeding needs. Employees have submitted special request in the past. Usually, a request is made by the employee and it is taken up the chain of command. In this case, there was never a formal or informal request made by Clark, and Acedo was unaware of Clark's situation until she received a call about it from OEOP.

L'heureux added that Carrie Clark has been assigned to Station 6 for the remainder of her current tour.

14-02543 COT000322

# ATTACHMENT 2



# MEMORANDUM

DATE:    5/21/13

TO:    Rob Rodriguez, through channels          FROM:    Rick L'Heureux
       Deputy Chief                                      Captain
       Operations 1&4                                    EC 1

SUBJECT:        Paramedic Carrie Clark Staffing

On May 21st I was asked to write a memo regarding the staffing of Paramedic Carrie Clark.

As previously stated in an interview with OEOP the staffing of PM Carrie Clark was done by the request of Carrie herself. Carrie supplied me with a list of stations that she was not able to work at because of specific facilities or personnel issues. I staffed Carrie successfully on most days.

Carrie and I would talk or text on a regular basis regarding the assignments given to her. If I overlooked something or another station was a better option she would call or text me requesting the change. The change would take place if appropriate. I cannot recall a time where she was assigned to a station against her will or one without proper facilities until March 20th 2013 where there was no options to place Carrie at an approved station. At this time I notified my chain of command for direction on where to place Carrie and followed their orders. Soon after this day she was placed at Station 6 which had the appropriate facilities for her.

On or around March 20th I was called into the OEOP office with HR manager JoAnn Acedo and a union representative Capt. Christopher Conger. There they asked questions regarding the staffing of Carrie Clark. I had informed them that staffing Carrie was being done very successfully and I really had no problems staffing her up until the March 20th incident. Then I told them my actions regarding informing my chain of command and following their direction.

They asked me about bumping other employees from their positions to place Carrie. I had told them that it was not done except for one incident where Carrie had the proper certifications where the other paramedic did not. This was the only time that I had bumped another person to place Carrie but it had nothing to do with facilities or personnel. The OEOP individual was surprised that there were no real problems and stated that the complaint seemed unfounded.

14-02543 COT000410

| REG | | aREGULAR PAY (.) | Hours | List | Created | Last Touched |
|---|---|---|---|---|---|---|
| | | | 96 | | | |
| 2012-11-20 | C | /.../Paramedic 12/Paramedic #2 | 24 | <finalized> | 2012-11-21 08:30:08 | <system> |
| 2012-11-22 | C | /.../Paramedic 12/Paramedic #2 | 24 | <finalized> | 2012-11-23 08:30:08 | <system> |
| 2012-11-24 | C | /.../Paramedic 12/Paramedic #2 | 12 | <finalized> | 2012-11-25 08:30:09 | <system> |
| 2012-11-26 | C | /.../Paramedic 12/Paramedic #2 | 12 | <finalized> | 2012-11-27 08:30:15 | <system> |
| 2012-11-28 | C | /.../Paramedic 12/Paramedic #2 | 24 | <finalized> | 2012-11-29 08:30:09 | <system> |
| FMSLU | | sFamily Med Sick Leave (SF... | 8.5 | | | |
| 2012-10-21 | C | | 8.5 | | 2012-09-26 16:25:49 | Esslinger,R |
| PLAM | | sPersonal Leave am (SPLAM) | 24 | | | |
| 2013-01-10 | C | | 12 | | 2013-01-08 18:07:40 | Clark,C |
| 2013-03-22 | C | Fiqueroa,R(SED) | 12 | | 2013-03-21 12:28:56 | Clark,C |
| PLPM | | sPersonal Leave pm (SPLPM) | 12 | | | |
| 2013-02-18 | C | | 12 | | 2013-02-16 19:39:05 | Jones,R |
| SL24 | | sSick Leave 24 (SS24) | 87.5 | | | |
| 2012-10-21 | C | | 15.5 | | 2012-10-17 08:30:14 | Esslinger,R |
| 2012-10-23 | C | | 24 | | 2012-08-20 19:26:28 | Esslinger,R |
| 2012-10-25 | C | | 24 | | 2012-08-20 16:26:56 | Esslinger,R |
| 2012-12-28 | C | Staples,M(SED) | 24 | | 2012-12-27 20:33:20 | Bathe,W |
| SLPM | | sSick Leave pm (SSPM) | 12 | | | |
| 2013-03-20 | C | Pesquelra,L(SED) | 12 | | 2013-03-20 10:16:04 | L'Heureux,R |
| REG | | sSwing (SSW) | 1268 | | | |
| 2012-10-27 | C | /.../Paramedic 12/Paramedic #1 | 24 | | 2012-10-23 07:56:58 | McDonough,P |
| 2012-10-29 | C | /.../Engine 21 PAU/Paramedic | 24 | | 2012-10-23 08:12:54 | McDonough,P |
| 2012-11-05 | C | /.../Paramedic 12/Paramedic #2 | 12 | | 2012-11-03 15:44:01 | <system> |
| 2012-11-09 | C | /.../Paramedic 12/Paramedic #2 | 24 | | 2012-11-05 19:53:35 | McDonough,P |
| 2012-11-11 | C | /.../Paramedic 12/Paramedic #2 | 24 | | 2012-11-05 19:55:41 | McDonough,P |
| 2012-11-13 | C | /.../Paramedic 12/Paramedic #2 | 24 | | 2012-11-05 19:58:17 | McDonough,P |
| 2012-12-05 | C | /.../Engine 12 PAU/Paramedic | 24 | | 2012-11-20 23:04:00 | McDonough,P |
| 2012-12-07 | C | /.../Paramedic 12/Paramedic #1 | 12 | | 2012-12-07 06:18:48 | L'Heureux,R |
| 2012-12-09 | C | /.../Paramedic 12/Paramedic #2 | 24 | | 2012-11-20 23:38:51 | McDonough,P |
| 2012-12-13 | C | /.../Paramedic 07/Paramedic #1 | 24 | | 2012-12-11 18:04:29 | Bathe,W |
| 2012-12-20 | C | /.../Paramedic 12/Paramedic #1 | 24 | | 2012-12-11 10:56:13 | McDonough,P |
| 2012-12-22 | C | /.../Paramedic 12/Paramedic #1 | 24 | | 2012-12-11 10:59:26 | McDonough,P |
| 2012-12-24 | C | /.../Paramedic 12/Paramedic #1 | 24 | | 2012-12-13 14:11:40 | Carlton,J |
| 2012-12-26 | C | /.../Paramedic 12/Paramedic #1 | 24 | | 2012-12-13 14:22:30 | Carlton,J |
| 2013-01-04 | C | /.../Engine 12 PAU/Paramedic | 24 | | 2012-12-28 17:49:35 | L'Heureux,R |
| 2013-01-06 | C | /.../Engine 12 PAU/Paramedic | 24 | | 2013-01-05 19:21:08 | Wuerfel,V |
| 2013-01-08 | C | /.../Paramedic 04/Paramedic #1 | 24 | | 2013-01-08 04:13:57 | Wuerfel,V |
| 2013-01-12 | C | /.../Paramedic 20/Paramedic #2 | 24 | | 2013-01-10 18:33:18 | L'Heureux,R |
| 2013-01-19 | C | /.../Paramedic 12/Paramedic #2 | 24 | | 2013-01-12 11:35:23 | McDonough,P |
| 2013-01-21 | C | /.../Paramedic 12/Paramedic #2 | 24 | | 2013-01-21 06:57:36 | McDonough,P |
| 2013-01-23 | C | /.../Engine 03/Firefighter #2 | 12 | | 2013-01-23 06:16:05 | L'Heureux,R |
| 2013-01-27 | C | /.../Engine 12 PAU/Paramedic | 12 | | 2013-01-26 20:22:21 | Bathe,W |
| 2013-01-27 | C | /.../Engine 12 PAU/Paramedic | 12 | | 2013-01-27 06:46:30 | Wuerfel,V |
| 2013-02-03 | C | /.../Engine 12 PAU/Paramedic | 24 | | 2013-02-03 04:54:37 | Wuerfel,V |
| 2013-02-05 | C | /.../Engine 12 PAU/Paramedic | 12 | | 2013-02-05 06:07:44 | Wuerfel,V |
| 2013-02-05 | C | /.../Engine 05 PAU/Paramedic | 12 | | 2013-02-05 06:33:45 | Wuerfel,V |
| 2013-02-07 | C | /.../Engine 05 PAU/Paramedic | 12 | | 2013-02-07 04:33:53 | Wuerfel,V |
| 2013-02-09 | C | /.../Engine 12 PAU/Paramedic | 24 | | 2013-02-08 05:07:05 | McDonough,P |
| 2013-02-11 | C | /.../Paramedic 20/Paramedic #2 | 24 | | 2013-02-09 20:32:01 | L'Heureux,R |
| 2013-02-18 | C | /.../Paramedic 01 HM/Paramed... | 8 | | 2013-02-18 18:25:56 | <system> |
| 2013-02-20 | C | /.../Paramedic 01 HM/Paramed... | 24 | | 2013-02-18 18:56:07 | L'Heureux,R |
| 2013-02-22 | C | /.../Paramedic 01 HM/Paramed... | 24 | | 2013-02-20 17:43:18 | L'Heureux,R |
| 2013-02-24 | C | /.../Paramedic 01 HM/Paramed... | 12 | | 2013-02-22 18:14:06 | Bathe,W |
| 2013-02-24 | C | /.../Paramedic 03/Paramedic #1 | 12 | | 2013-02-24 06:25:05 | L'Heureux,R |
| 2013-02-26 | C | /.../Engine 12 PAU/Firefighter #1 | 12 | | 2013-02-26 06:28:05 | L'Heureux,R |
| 2013-03-05 | C | /.../Paramedic 20/Paramedic #2 | 24 | | 2013-02-26 18:29:58 | L'Heureux,R |
| 2013-03-07 | C | /.../Paramedic 12/Paramedic #2 | 12 | | 2013-03-07 06:56:48 | L'Heureux,R |
| 2013-03-07 | C | /.../Engine 05 PAU/Paramedic | 12 | | 2013-03-07 06:57:51 | L'Heureux,R |
| 2013-03-09 | C | /.../Paramedic 20/Paramedic #2 | 24 | | 2013-03-07 19:01:47 | L'Heureux,R |
| 2013-03-11 | C | /.../Rescue 01/Paramedic | 12 | | 2013-03-11 19:30:25 | L'Heureux,R |
| 2013-03-13 | C | /.../Paramedic 12/Paramedic #2 | 24 | | 2013-03-11 19:50:39 | L'Heureux,R |

14-02543 COT000411

| | | | | Created | Last Touched |
|---|---|---|---|---|---|
| 2013-03-22 | C | /.../Engine 06 PAU/Firefighter #2 | 12 | 2013-03-20 18:29:10 | Munoz,V |
| 2013-03-24 | C | /.../Engine 06 PAU/Paramedic | 24 | 2013-03-23 19:06:39 | L'Heureux,R |
| 2013-03-26 | C | /.../Engine 06 PAU/Paramedic | 24 | 2013-03-24 18:35:16 | L'Heureux,R |
| 2013-03-28 | C | /.../Engine 06 PAU/Paramedic | 24 | 2013-03-26 18:17:30 | L'Heureux,R |
| 2013-04-04 | C | /.../Engine 06 PAU/Paramedic | 24 | 2013-03-28 18:49:01 | L'Heureux,R |
| 2013-04-06 | C | /.../Engine 06 PAU/Paramedic | 24 | 2013-04-04 18:33:52 | L'Heureux,R |
| 2013-04-08 | C | /.../Engine 06 PAU/Paramedic | 24 | 2013-04-06 19:15:27 | L'Heureux,R |
| 2013-04-10 | C | /.../Engine 06 PAU/Paramedic | 12 | 2013-04-08 18:16:03 | <system> |
| 2013-04-12 | C | /.../Engine 06 PAU/Paramedic | 24 | 2013-04-10 18:22:48 | L'Heureux,R |
| 2013-04-19 | C | /.../Engine 06 PAU/Paramedic | 24 | 2013-04-12 09:22:21 | Nofs,T |
| 2013-04-21 | C | /.../Engine 06 PAU/Paramedic | 24 | 2013-04-12 09:24:20 | Nofs,T |
| 2013-04-23 | C | /.../Engine 06 PAU/Paramedic | 12 | 2013-04-12 09:25:14 | Nofs,T |
| 2013-04-23 | C | /.../Engine 06 PAU/Paramedic | 12 | 2013-04-12 09:25:43 | Nofs,T |
| 2013-04-25 | C | /.../Engine 06 PAU/Paramedic | 12 | 2013-04-25 06:11:33 | <system> |
| 2013-04-27 | C | /.../Engine 06 PAU/Paramedic | 24 | 2013-04-12 09:28:00 | Nofs,T |
| 2013-05-04 | C | /.../Engine 06 PAU/Paramedic | 24 | 2013-04-27 06:53:38 | Nofs,T |
| 2013-05-06 | C | /.../Engine 06 PAU/Paramedic | 24 | 2013-04-27 06:56:32 | Nofs,T |
| 2013-05-08 | C | /.../Engine 06 PAU/Paramedic | 12 | 2013-05-06 17:59:17 | L'Heureux,R |
| 2013-05-10 | C | /.../Engine 06 PAU/Paramedic | 24 | 2013-04-27 07:01:14 | Nofs,T |
| 2013-05-12 | C | /.../Engine 06 PAU/Paramedic | 12 | 2013-05-10 14:53:51 | <system> |
| 2013-05-19 | C | /.../Engine 06 PAU/Paramedic | 24 | 2013-05-10 14:56:41 | Nofs,T |
| 2013-05-21 | C | /.../Engine 06 PAU/Paramedic | 24 | 2013-05-10 15:17:14 | Nofs,T |
| 2013-05-23 | C | /.../Engine 06 PAU/Paramedic | 12 | 2013-05-10 15:19:02 | Nofs,T |
| 2013-05-23 | C | /.../Engine 06 PAU/Paramedic | 12 | 2013-05-10 15:19:36 | Nofs,T |
| VL24 | | sVacation 24 (SV24) | 24 | | |
| 2012-11-07 | C | | 24 | 2012-08-20 19:34:44 | Clark,C |
| VLAM | | sVacation am (SVAM) | 160 | | |
| 2012-11-05 | C | Lucero,M(SED) | 12 | 2012-08-20 19:34:23 | Munoz,V |
| 2012-11-24 | C | Clayton,C(.) | 12 | 2011-10-15 10:57:59 | Clark,C |
| 2012-12-07 | C | | 12 | 2012-09-14 13:46:58 | Munoz,V |
| 2012-12-11 | C | | 12 | 2012-09-14 13:43:57 | Clark,C |
| 2013-01-25 | C | | 12 | 2013-01-23 09:54:46 | Clark,C |
| 2013-02-07 | C | | 12 | 2013-02-04 12:35:45 | Munoz,V |
| 2013-02-18 | C | | 4 | 2013-02-19 09:37:04 | Jones,R |
| 2013-02-26 | C | | 12 | 2013-02-09 11:18:24 | Munoz,V |
| 2013-03-11 | C | | 12 | 2013-03-07 16:48:48 | Munoz,V |
| 2013-03-20 | C | | 12 | 2013-03-19 06:55:30 | Clark,C |
| 2013-04-10 | C | Bezel,J(SED) | 12 | 2013-04-03 07:45:54 | Clark,C |
| 2013-04-25 | C | Wintrode,M(SSW) | 12 | 2013-03-14 06:40:59 | Munoz,V |
| 2013-05-08 | C | | 12 | 2013-04-08 09:56:02 | Munoz,V |
| 2013-05-12 | C | Bezel,J(SED) | 12 | 2012-10-23 20:33:59 | Munoz,V |
| VLPM | | sVacation pm (SVPM) | 48 | | |
| 2012-11-26 | C | Clark,G(SSW) | 12 | 2012-11-24 18:55:00 | Clark,C |
| 2012-12-11 | C | | 12 | 2012-12-10 18:32:21 | Clark,C |
| 2013-01-10 | C | | 12 | 2013-01-09 18:57:49 | Clark,C |
| 2013-01-23 | C | | 12 | 2012-11-08 13:16:36 | Clark,C |

14-02543 COT000412



TeleStaff Ros



Wednesday March 20, 2013

| | | | TFD | | | | |
|---|---|---|---|---|---|---|---|
| 001 | C | | | 03/21/2013 | 08:00 | 08:00 | 24 |
| HQ1 | | | | | | | |
| BN001 | | | | | | | |
| BC | | McDonough, Paul S. (CEP/HZ/PAU) | 31279 | SV24 | 08:00 | 08:00 | 24 |
| | | Anderson, Chris A. (CEP/HZ/PAU/R... | 34122 | +SBC.. | 08:00 | 08:00 | 24 |
| EC001 | | | | | | | |
| CAPT | | L'Heureux, Richard A. (150/CEP/RC/... | 36645 ✓ | | 08:00 | 08:00 | 24 |
| 001 | | | | | | | |
| EN001 | | | | | | | |
| CAPT | | Bair, Fred W. (CEP/HZ/PAU/Pr/RRT/... | 25579 ✓ | | 08:00 | 08:00 | 24 |
| ENG | | Zimmer, James A. (HZ) | 29696 | SV24 | 08:00 | 08:00 | 24 |
| | | Collins, Jason S. (AI/HZ/RC/RRT/TRT) | 49322 | SSW | 08:00 | 08:00 | 24 |
| FF | | Carrell III, William D. | 21908 | +SED | 08:00 | 20:00 | 12 |
| | | Thompson, Todd A. (HZ) | 41450 ✓ | | 20:00 | 08:00 | 12 |
| FF | | Lutes, Adam J. (HZ/RRT/TRT) | 47102 ✓ | | 08:00 | 08:00 | 24 |
| EN002 | | | | | | | |
| CAPT | | Lopez, Edward D. (150/CEP/HZ) | 29677 ✓ | | 08:00 | 08:00 | 24 |
| ENG | | Bidegain, Todd A. (HZ) | 29665 ✓ | | 08:00 | 08:00 | 24 |
| FF | | La Coss, Jennifer R. (HZ) | 38832 ✓ | | 08:00 | 08:00 | 24 |
| FF | | Lushbaugh, Robert J. (HZ) | 48200 ✓ | | 08:00 | 08:00 | 24 |
| HZ001 | | | | | | | |
| ENG | | Spurr, Christopher M. (HZ/RC) | 44096 ✓ | | 08:00 | 08:00 | 24 |
| LD001 | | | | | | | |
| CAPT | | Pena, Christopher T. (150/CEP/HZ/R... | 26721 ✓ | | 08:00 | 08:00 | 24 |
| ENG | | Ballenger, David N. (HZ/RC/RRT/TRT) | 44314 ✓ | | 08:00 | 08:00 | 24 |
| ENG | | Tarnietti, Dustin S. (HZ/RC/RRT/TRT) | 46395 | SSAM | 08:00 | 20:00 | 12 |
| | | Thompson, Todd A. (HZ) | 41450 ✓ | SACT | 08:00 | 20:00 | 12 |
| | | Tarnietti, Dustin S. (HZ/RC/RRT/TRT) | 46395 ✓ | | 20:00 | 08:00 | 12 |
| FF | | Connor, Christopher J. (HZ/RC/TRT) | 46403 ✓ | | 08:00 | 08:00 | 24 |
| PM001 | | | | | | | |
| PM | | Payne, Jason D. (CEP/HZ/RC/RRT/T... | 47092 ✓ | | 08:00 | 08:00 | 24 |
| PM | | Bradshaw, Brett W. (CEP/HZ) | 46405 ✓ | | 08:00 | 08:00 | 24 |
| 003 | | | | | | | |
| EN003 | | | | | | | |
| CAPT | | Johnson, Richard N. (150/CEP/RC) | 26569 ✓ | | 08:00 | 08:00 | 24 |
| ENG | | Passarelli, James A. | 36649 ✓ | | 08:00 | 08:00 | 24 |
| FF | | Byars, Ray B. (AI) | 47541 ✓ | | 08:00 | 08:00 | 24 |
| FF | | Donahue, Thomas T. (AI/HZ) | 49348 ✓ | | 08:00 | 08:00 | 24 |
| PM003 | | | | | | | |
| PM | | Orozco, C C. (CEP/PAU) | 28350 ✓ | | 08:00 | 08:00 | 24 |
| PM | | Tobler, Bryan M. (CEP/PAU) | 34140 ✓ | | 08:00 | 08:00 | 24 |
| 004 | | | | | | | |
| EN004 | | | | | | | |
| CAPT | | Green, Martin D. | 31787 ✓ | | 08:00 | 08:00 | 24 |
| ENG | | Upton, Kenneth C. | 37578 ✓ | | 08:00 | 08:00 | 24 |
| PM | | Bryant, Christopher K. (CEP/RC) | 36636 ✓ | | 08:00 | 08:00 | 24 |
| FF | | Rico, Andrew S. (AI/RC) | 49331 ✓ | | 08:00 | 08:00 | 24 |
| PM004 | | | | | | | |
| PM | | Cardinal, Christopher J. (CEP/PAU) | 44316 ✓ | | 08:00 | 08:00 | 24 |
| PM | | LaFave, Chris (CEP/PAU) | 44328 ✓ | | 08:00 | 08:00 | 24 |
| 008 | | | | | | | |
| EN008 | | | | | | | |
| CAPT | | Dashiell, Ray A. (150/CEP) | 37576 | STT2.. | 08:00 | 08:00 | 24 |
| | | Felix, Richard W. (150/CEP) | 22045 | SWT24 | 08:00 | 08:00 | 24 |
| ENG | | Laux, Scott C. (RC) | 33505 | STT2.. | 08:00 | 08:00 | 24 |
| | | Jakfors, Mark J. | 47552 | SWT24 | 08:00 | 08:00 | 24 |
| FF | | Eyrich Jr., Billy D. (AI/RC) | 49771 ✓ | | 08:00 | 08:00 | 24 |
| FF | | Burruel, Carlos M. (HZ/RRT/TRT) | 48666 ✓ | | 08:00 | 08:00 | 24 |
| PM008 | | | | | | | |
| PM | | Boothe, Aaron Z. (CEP/HZ) | 47558 | SV24 | 08:00 | 08:00 | 24 |
| | | Stonecipher, Drew A. (CEP/HZ/RRT/... | 47564 | SWT... | 08:00 | 20:00 | 12 |
| | | Neva, Bryce E. (150/AI/CEP) | 47105 | SWT... | 20:00 | 08:00 | 12 |
| PM | | Penrod, Shannon L. (AI/CEP/HZ/TRT) | 49780 | SV24 | 08:00 | 08:00 | 24 |
| | | Raymond, Jason K. (150/AI) | 51004 | SV24 | 08:00 | 08:00 | 24 |
| | | Brown, Noah D. (150/CEP) | 49580 | SS24 | 08:00 | 08:00 | 24 |
| | | Larkin, Troy A. (CEP/PAU) | 37581 | +SED | 08:00 | 08:00 | 24 |
| RE008 | | | | | | | |
| PM | | Simons, William M. (AI/CEP) | 49746 | SSW | 08:00 | 08:00 | 24 |
| FF | | Martinez, Michael S. (AI/RC) | 50983 ✓ | | 08:00 | 08:00 | 24 |
| 015 | | | | | | | |
| EN015 | | | | | | | |
| CAPT | | Oberdank, Kassandra L. (150/CEP/P... | 38834 ✓ | | 08:00 | 08:00 | 24 |
| ENG | | Hensley Jr, Allen W. (RC) | 23279 ✓ | | 08:00 | 08:00 | 24 |
| FF | | Kati Jr, John L. | 31276 ✓ | | 08:00 | 08:00 | 24 |
| FF | | Rosio, Michael W. | 20879 ✓ | | 08:00 | 08:00 | 24 |
| PM015 | | | | | | | |
| PM | | Egan, Timothy R. (CEP/HZ/PAU/RR... | 34189 ✓ | | 08:00 | 08:00 | 24 |

**14-02543 COT000413** 05/24/2013 01:23

 

| | | | | | | |
|---|---|---|---|---|---|---|
| PM | Schaul, Linda M. (CEP/PAU/RC) | 38359 | | 08:00 | 08:00 | 24 |
| **020** | | | | | | |
| **EN020** | | | | | | |
| CAPT | Jackson, Wayne H. (HZ/RRT/TRT) | 20960 | | 08:00 | 08:00 | 24 |
| ENG | McDonald, Matthew J. (HZ/RC/RRT/... | 24230 | | 08:00 | 08:00 | 24 |
| PM | Pashos, Andrew T. (CEP/HZ/PAU/R... | 40182 | AMLNP | 08:00 | 08:00 | 24 |
| FF | Cranford, Monta C. (HZ/RRT/TRT) | 48187 | | 08:00 | 08:00 | 24 |
| FF | Dezess, Daniel H. (Al/HZ/RC) | 49577 | | 08:00 | 08:00 | 24 |
| **PM020** | | | | | | |
| PM | Carreon, Michael R. (CEP/HZ/PAU/R... | 39092 | | 08:00 | 08:00 | 24 |
| PM | Maller, Richard J. (CEP/HZ/PAU) | 44329 | | 08:00 | 08:00 | 24 |
| **AP020** | | | | | | |
| ENG | Regeser, Steven G. | 23351 | | 08:00 | 08:00 | 24 |
| {Off} | | | | | | |
| {Off} | | | | | | |
| {,PM} | -,- | | | 08:00 | 20:00 | 12 |
| | Clark, Carrie A. (150/Al/CEP/HZ/RC) | 48197 | SVAM: | 08:00 | 20:00 | 12 |
| | Nilson, Joseph T. (150/CEP) | 49753 | STTA.. | 08:00 | 20:00 | 12 |
| | Nilson, Joseph T. (150/CEP) | 49753 | STTP.. | 20:00 | 08:00 | 12 |
| **002** | **C** | | 03/21/2013 | **08:00** | **08:00** | **24** |
| **HQ2** | | | | | | |
| **BN002** | | | | | | |
| BC | Quinn, Patrick F. (HZ) | 26354 | | 08:00 | 08:00 | 24 |
| **EC002** | | | | | | |
| CAPT | Thomas, Bert J. (CEP) | 23275 | | 08:00 | 08:00 | 24 |
| **005** | | | | | | |
| **EN005** | | | | | | |
| CAPT | Watson, David D. (150/CEP/HZ/RRT... | 36654 | | 08:00 | 08:00 | 24 |
| ENG | Harper, Wade R. | 26558 | SV24 | 08:00 | 08:00 | 24 |
| | Harper, Slater W. (Al) | 48723 | SACT | 08:00 | 08:00 | 24 |
| PM | Tackett, Jason C. (CEP/PAU) | 42926 | | 08:00 | 08:00 | 24 |
| FF | Griebel, Michael R. | 47112 | | 08:00 | 08:00 | 24 |
| **LD005** | | | | | | |
| CAPT | Acosta, David J. (150/CEP/HZ/PAU) | 36833 | | 08:00 | 08:00 | 24 |
| ENG | Felix, Ernest C. | 41443 | | 08:00 | 08:00 | 24 |
| FF | Bosworth, Ross E. | 52243 | SSW | 08:00 | 08:00 | 24 |
| FF | Rodriguez, H. Damon (PrFF) | 53466 | | 08:00 | 08:00 | 24 |
| **PM005** | | | | | | |
| PM | Sasiadek, Todd A. (CEP/PAU) | 42925 | | 08:00 | 08:00 | 24 |
| PM | Hart, Brian W. (Al/CEP/RC) | 49327 | | 08:00 | 08:00 | 24 |
| **007** | | | | | | |
| **EN007** | | | | | | |
| CAPT | Vasquez, Roberto C. (150/CEP/Light... | 47121 | | 08:00 | 08:00 | 24 |
| ENG | Wintrode, Michael J. (Al/HZ) | 48712 | SSW | 08:00 | 08:00 | 24 |
| | Sprenger II, James J. | 36652 | SS24 | 08:00 | 08:00 | 24 |
| FF | Oswald, Ryan B. (Al) | 49752 | | 08:00 | 08:00 | 24 |
| FF | France, Adam G. (PrFF) | 53453 | | 08:00 | 08:00 | 24 |
| **LD007** | | | | | | |
| CAPT | North, Jonathan J. (HZ/RRT/TRT) | 41046 | | 08:00 | 08:00 | 24 |
| ENG | Briggs, Evan R. (RC) | 47540 | | 08:00 | 08:00 | 24 |
| FF | Culbertson, Brent M. (Al/RC) | 51014 | | 08:00 | 08:00 | 24 |
| FF | Thompson, Roger S. (PrFF) | 53472 | | 08:00 | 08:00 | 24 |
| **PM007** | | | | | | |
| PM | Mann, Richard L. (Al/CEP/RC) | 48689 | | 08:00 | 08:00 | 24 |
| PM | DeWald, Ryan M. (Al/CEP/RC) | 49784 | | 08:00 | 08:00 | 24 |
| **PM047** | | | | | | |
| PM | Nielson, William S. (Al/CEP/RC) | 48694 | | 08:00 | 08:00 | 24 |
| PM | Smith, Robert M. (CEP/RC) | 48705 | | 08:00 | 08:00 | 24 |
| **016** | | | | | | |
| **EN016** | | | | | | |
| CAPT | Coyle, Michael D. (CEP) | 23263 | | 08:00 | 08:00 | 24 |
| ENG | Profita, Frank S. | 29683 | | 08:00 | 08:00 | 24 |
| FF | Witt II, Benjamin R. | 38843 | | 08:00 | 08:00 | 24 |
| FF | Redford, Matthew A. | 48697 | | 08:00 | 08:00 | 24 |
| **LD016** | | | | | | |
| CAPT | Parks, Max B. | 22058 | | 08:00 | 08:00 | 24 |
| ENG | Ross, James B. | 29667 | | 08:00 | 08:00 | 24 |
| FF | Wakefield, Brian G. | 47567 | | 08:00 | 08:00 | 24 |
| FF | Donahue, Christopher C. | 50433 | | 08:00 | 08:00 | 24 |
| **PM016** | | | | | | |
| PM | Rae, James R. (CEP/PAU) | 44333 | ^SCX | 08:00 | 08:00 | 24 |
| | Rae, James R. (CEP/PAU) | 44333 | | 08:00 | 08:00 | 24 |
| PM | Harris, Daniel S. (CEP/PAU) | 46394 | | 08:00 | 08:00 | 24 |
| **021** | | | | | | |
| **EN021** | | | | | | |
| CAPT | Braun, David J. | 26549 | | 08:00 | 08:00 | 24 |
| ENG | Shultz, Douglas W. | 26553 | | 08:00 | 08:00 | 24 |
| PM | Copley, Darius A. (CEP/PAU) | 26571 | | 08:00 | 08:00 | 24 |

View: [Payroll - Ops]

14-02543 COT000414 05/24/2013 01:23

 

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 003 | FF | Greenleaf, David W. (Al) | 43276 | | 08:00 | 08:00 | 24 |
| 009 | A | | | 03/22/2013 | 08:00 | 08:00 | 24 |
| PM009 | | | | | | | |
| HQ3 | PM C | Scott, Daniel W. (CEP/RC/TRT) | 47111 +AOT | | 08:00 08:00 | 09:00 08:00 | 1 24 |
| | | | | 03/22/2013 | | | |
| BN003 | BC | Valenzuela, John E. (RC) | 37929 | | 08:00 | 08:00 | 24 |
| EC003 | CAPT | Williams, Benjamin B. (150/CEP/RC) | 40198 | | 08:00 | 08:00 | 24 |
| 009 | | | | | | | |
| EN009 | CAPT | Comer, Cody S. (150/CEP/RC/TRT) | 41439 | | 08:00 | 08:00 | 24 |
| | ENG | Elam, Nicholas J. (RC) | 46399 SV24 | | 08:00 | 08:00 | 24 |
| | | Donahoo, Kelly J. (Al/HZ) | 49320 SSW | | 08:00 | 08:00 | 24 |
| | FF | Felix, Robert D. (Al) | 50994 | | 08:00 | 08:00 | 24 |
| | FF | Felix, Robert D. (Al) | 50994 ^SCX | | 08:00 | 08:00 | 24 |
| | | Johnson, Casey L. (PrFF) | 50341 | | 08:00 | 08:00 | 24 |
| LD009 | CAPT | Canfield, Michael J. (HZ/LightDuty) | 41435 | | 08:00 | 08:00 | 24 |
| | ENG | Wheat, John D. | 47569 | | 08:00 | 08:00 | 24 |
| | FF | Jackson, Dwight E. (RC) | 52246 | | 08:00 | 08:00 | 24 |
| | FF | Lopez, Steven A. (PrFF) | 53455 | | 08:00 | 08:00 | 24 |
| PM009 | PM | Celani, Maurizio (CEP/RC) | 48190 | | 08:00 | 08:00 | 24 |
| | PM | Gates, Christopher C. (Al/CEP/RC) | 47571 SV24 | | 08:00 | 08:00 | 24 |
| | | Hanson, Joshua B. (CEP/HZ/RC) | 49782 +SED | | 08:00 | 08:00 | 24 |
| PM049 | PM | Todd, Jeffrey T. (CEP) | 48211 | | 08:00 | 08:00 | 24 |
| | PM | Mendoza, Andrew A. (150/CEP) | 52235 | | 08:00 | 20:00 | 12 |
| | | Mendoza, Andrew A. (150/CEP) | 52235 SVPM | | 20:00 | 08:00 | 12 |
| | | Clark, Carrie A. (150/Al/CEP/HZ/RC) | 48197 SSPM | | 20:00 | 08:00 | 12 |
| | | Pesqueira, Liliana (CEP/HZ/PAU) | 42922 +SED | | 20:00 | 08:00 | 12 |
| 011 | | | | | | | |
| EN011 | CAPT | Tamietti, Roger S. (150/CEP) | 23270 SLBSD | | 08:00 | 08:00 | 24 |
| | | Wallace, Mark W. (150/CEP/HZ/RC/ | 26716 +SED | | 08:00 | 08:00 | 24 |
| | ENG | Tylutki, William M. | 40193 | | 08:00 | 08:00 | 24 |
| | FF | Steffens, Lyle H. (Al) | 49341 | | 08:00 | 08:00 | 24 |
| | FF | Morales, Gene E. (PrFF) | 53458 | | 08:00 | 08:00 | 24 |
| AT011 | FF | Allen, Brett M. (RC) | 48194 SFMSL | | 08:00 | 08:00 | 24 |
| | | Threlkeld, Andrew W. | 52244 SSW | | 08:00 | 08:00 | 24 |
| | FF | Don, Christopher L. (Al/RC) | 41158 | | 08:00 | 08:00 | 24 |
| 012 | | | | | | | |
| EN012 | CAPT | Tracy, Tricia J. (HZ) | 31797 ^SCX | | 08:00 | 08:00 | 24 |
| | | Tracy, Tricia J. (HZ) | 31797 ^SCX | | 08:00 | 08:00 | 24 |
| | | Tracy, Tricia J. (HZ) | 31797 | | 08:00 | 08:00 | 24 |
| | ENG | Unwin, Kevin J. | 33629 | | 08:00 | 08:00 | 24 |
| | PM | Ivan, Adam B. (CEP) | 48683 ^SCX | | 08:00 | 08:00 | 24 |
| | | Ivan, Adam B. (CEP) | 48683 | | 08:00 | 08:00 | 24 |
| | FF | Merrill, Kathy M. | 35293 SS24 | | 08:00 | 08:00 | 24 |
| | | Makovic, John D. (Al/RC) | 50984 SSW | | 08:00 | 08:00 | 24 |
| PM012 | PM | Kisiel, Gregory P. (150/CEP/PAU) | 42910 | | 08:00 | 08:00 | 24 |
| | PM | Billings, Scott A. (CEP/PAU) | 41433 | | 08:00 | 08:00 | 24 |
| 013 | | | | | | | |
| EN013 | CAPT | Wahl, Daniel P. (RC) | 38840 | | 08:00 | 08:00 | 24 |
| | ENG | Makus, Marvin C. (HZ/TRT) | 26720 SS24 | | 08:00 | 08:00 | 24 |
| | | Figueroa, Richard P. (TRT) | 31786 +SED | | 08:00 | 08:00 | 24 |
| | | Jefferson, Scott T. (HZ) | 42909 +AOT | | 08:00 | 08:49 | 0.83 |
| | PM | Johnson, Max M. (CEP) | 48682 | | 08:00 | 08:00 | 24 |
| | FF | Thompson, Collin J. (PrFF) | 53471 | | 08:00 | 08:00 | 24 |
| PM013 | PM | Mayhew, Jeffrey S. (CEP/PAU) | 40175 | | 08:00 | 08:00 | 24 |
| | PM | Thompson, Brian B. (Al/CEP/HZ) | 49338 | | 08:00 | 08:00 | 24 |
| 017 | | | | | | | |
| EN017 | CAPT | Summers, Randall D. (HZ) | 29692 ^SCX | | 08:00 | 08:00 | 24 |
| | | Summers, Randall D. (HZ) | 29692 SV24 | | 08:00 | 08:00 | 24 |
| | | Maibauer, Mark A. (150/CEP/RC) | 42914 SSW | | 08:00 | 08:00 | 24 |
| | ENG | Naber, Steven H. | 31278 | | 08:00 | 08:00 | 24 |
| | PM | Stefanovich, David E. (CEP/HZ/PAU) | 29691 | | 08:00 | 08:00 | 24 |
| | FF | Nagore, John G. | 28422 | | 08:00 | 08:00 | 24 |

(Off)
(Off)
(PM)    Morales, William A. (150/AI/CEP/RC)    48727  SS24    08:00    08:00    24
004        C                                        03/21/2013    08:00    08:00    24
    HQ4
        BN004
            BC    Nofs, Timothy J.    26560    08:00    08:00    24
        EC004
            CAPT    Grimes, James W. (150/CEP)    26544    08:00    08:00    24
006
    EN006
        CAPT    McDonough III, Ted J. (CEP/HZ)    29680  ^SCX    08:00    08:00    24
                McDonough III, Ted J. (CEP/HZ)    29680    08:00    08:00    24
        ENG    Catlin, Ronald L.    26542    08:00    08:00    24
        FF    McKendrick, Tyler A. (AI)    44988  ^SCX    08:00    08:00    24
                McKendrick, Tyler A. (AI)    44986    08:00    08:00    24
        FF    Jenkins, Cody A. (CEP)    48198  SS24    08:00    08:00    24
                Grimes, Andrew J. (AI/RC)    50987  SSW    08:00    08:00    24
    010
        EN010
            CAPT    Matthew, Thomas F. (150/CEP)    35292  SS24    08:00    08:00    24
                    Ruetz, Steven S.    40190  +SED    08:00    08:00    24
            ENG    Walker, Joshua S.    41462  SV24    08:00    08:00    24
                    Caballero, Ronald S. (TRT)    36637  SSW    08:00    08:00    24
            FF    Lomax, Bradley S. (RC)    48686    08:00    08:00    24
            FF    Ruiz, Christopher A. (AI)    48701    08:00    08:00    24
        LD010
            CAPT    Rojas, Ruben S. (150/CEP)    40187    08:00    08:00    24
            ENG    Potter, Shannon H. (TRT)    42923    08:00    08:00    24
            FF    Ruiz, Andrew P.    48700  SV24    08:00    08:00    24
                    Tabaj, Jeremiah J. (AI/RC)    49340  SSW    08:00    08:00    24
            FF    Clegg, Christopher D. (PrFF)    53450  SS24    08:00    08:00    24
                    Sanchez, Frank M. (AI/RC)    50973  SSW    08:00    08:00    24
        PM010
            PM    Key, Robert L. (150/AI/CEP)    49762    08:00    08:00    24
            PM    Nissen, James B. (150/AI/CEP/RC)    50977    08:00    08:00    24
    014
        EN014
            CAPT    Stevens, Edward W. (150'CEP/PAU)    38839  SV24    08:00    08:00    24
                    Conger, Christopher D. (150/CEP/HZ    46393  +SED    08:00    08:00    24
            ENG    Hale, James B.    31277    08:00    08:00    24
            PM    Elam, Brian T. (CEP/PAU)    41442    08:00    08:00    24
            FF    Elam, Darin R.    48676    08:00    08:00    24
        PM014
            PM    Chafin, Jeremy D. (CEP/PAU/RC)    47097  AMLNP    08:00    08:00    24
                    Zbojniewicz, Marci L. (150/CEP/HZ)    48215  SSW    08:00    08:00    24
            PM    Tamietti, R. Sloan (CEP)    47108    08:00    08:00    24
    018
        EN018
            CAPT    Trujillo, Andy (150/CEP/RC)    13914    08:00    08:00    24
            ENG    Engelenburg, Walt O. (TRT)    37922    08:00    08:00    24
            PM    Hernandez, Ariel (CEP/PAU/RC)    38829    08:00    08:00    24
            FF    Clark, Thomas L.    37575    08:00    08:00    24
    019
        EN019
            CAPT    Clark, Gordon M. (150/CEP/HZ/PAU/    46392  STTA    08:00    20:00    12
                    Bourie, Keith M. (150/CEP/HZ/PAU/    46401  SWT    08:00    20:00    12
                    Clark, Gordon M. (150/CEP/HZ/PAU/    46392    20:00    08:00    12
            ENG    Amos, Audy W. (HZ/RRT/TRT)    37572    08:00    08:00    24
            PM    Webb Jr, Donald G. (CEP/HZ/PAU/T    41464    08:00    08:00    24
            FF    Lakosky, Daren C. (HZ/RRT/TRT)    32233    08:00    08:00    24
        PM019
            PM    Grimes, Jonathan A. (CEP/HZ/PAU/    40168    08:00    08:00    24
            PM    Hutton, Richard P. (CEP/HZ/PAU)    37580    08:00    08:00    24
    022
        EN022
            CAPT    Kelaher, James C. (150/CEP/HZ/RR    32804    08:00    08:00    24
            ENG    Zsitvay, Tamas J. (HZ/RRT/TRT)    26049    08:00    08:00    24
            FF    Trujillo, Matthew G. (AI/TRT)    46376    08:00    08:00    24
            FF    Bell, Wesley R. (AI/TRT)    50996  SV24    08:00    08:00    24
                    Perez, Nicholas T. (AI/RC)    50975  SSW    08:00    08:00    24
        LD022
            CAPT    Stevens, Brian K. (150/CEP/HZ/RRT/    35297    08:00    08:00    24
            ENG    Moore, Andrew J. (AI/RC)    49585    08:00    08:00    24
            FF    Walsh, Robert K. (TRT)    23282    08:00    08:00    24
            FF    Munn, Chad C. (RC)    49344    08:00    08:00    24
        PM022
            PM    Hernandez, Arned (CEP/PAU/RRT/T    37579    08:00    08:00    24

 
PM      Black, Jonathan P. (CEP/HZ/PAU/TR...      36635 ⌄      08:00   08:00   24

# EXHIBIT 21

IN THE UNITED STATES DISTRICT COURT

DISTRCT OF ARIZONA

CARRIE FERRARA CLARK,            )
                                 )
        Plaintiff,               )
                                 )
        vs.                      ) No.
                                 ) 4:14-CV-02543-TUC
CITY OF TUCSON,                  ) -CKJ
                                 )
        Defendant.               )
_____)

VIDEOTAPED DEPOSITION OF CARRIE FERRARA CLARK
VOLUME II

Tucson, Arizona
October 27, 2016
9:07 a.m.

CHERI L. ALLEVA, RPR, CR #50467 (AZ)
EATON, GREEN & WILLIAMS, INC.
549 N. Sixth Avenue
Tucson, Arizona 85705
(520)623-0593 800-759-9022

1      Q.   Did anybody ever say to you you should not

2  have gone to EOPD?

3      A.   No one said those exact words.

4      Q.   Anything like that?  Did anybody indicate you

5  should never have brought EOPD into this issue?

6      A.   I believe Chief Fischback's statement was in

7  regards to me.

8      Q.   Other than that one statement, is there

9  anything else other than that one statement?

10         MR. JACOBSON:  Objection.  Look, Mike, you got

11  to let her answer the question.  I'm going to ask you

12  one more time to please not interrupt, because --

13         MR. McCRORY:  I thought she was finished.

14         MR. JACOBSON:  Thank you.

15         Go ahead, finish your -- May I have the court

16  reporter please read back the last question, and, Ms.

17  Clark, let me know if you need to finish your answer.

18         (The court reporter read back the preceding

19  question.)

20         MR. JACOBSON:  So would you go ahead and

21  finish your answer to the previous question.

22         THE WITNESS:  So...

23         MR. McCRORY:  Let me ask you another question.

24  BY MR. McCRORY:

25      Q.   You've mentioned the one comment by Chief

1   Fischback, this is what happens when you go to EOPD.

2       A.   Correct.

3       Q.   Other than that one comment, is there any

4   other similar comment or any comment that showed that

5   anybody else at Fire thought you should not have gone

6   to EOPD?  Not whether you should have had an issue,

7   whether you should deal with it, but whether you should

8   have brought EOPD in to deal with it.

9       A.   Not that I recall, but like I said, I'd have

10  to look at notes I wrote, because I tried to make notes

11  if someone said something.  But off the top of my head

12  I can't recall.

13      Q.   You say in your charge of discrimination that

14  you opposed a practice made unlawful and you said that

15  that's because you brought up the federal law.  What

16  did you do, what specific acts did you do to oppose any

17  Tucson Fire Department policy regarding expressing

18  milk?

19      A.   So I'm not exactly sure what you're asking

20  because there was no policy on expressing milk.

21      Q.   Was there anything other than the treat --

22  your individual treatment involved in your complaint

23  for discrimination?

24      A.   I'm sorry.  What are you asking?

25      Q.   Were you opposing any practice that went

```
 1   you in terms of who personally talked to you.
 2        A.   Who personally came to me and said I'm upset
 3   that I have to move?
 4        Q.   Uh-huh.
 5        A.   No one came to me personally and said that.
 6        Q.   Did anyone come to you and say that somebody
 7   else had been upset at being moved?
 8        A.   Yes.
 9        Q.   Okay.  Who was that?
10        A.   One of the guys at station 20 had told me that
11   Joseph Nilson (phonetic), I can't remember who it
12   was -- I think I told you this the last time, I'd have
13   to look at the roster.  When I showed up at station 20,
14   they'd said that he was upset that he had to move that
15   day.
16        Q.   Who was the guy that said that?
17        A.   I told you I have to look at the roster.  It
18   was, like, one of three, I can't remember which of the
19   people had said it.
20        Q.   What exactly did he tell you?
21        A.   So when I got to the station, it was, you
22   know, they kind of joked and they were, like, oh,
23   Joseph's mad he had to leave.  And, you know, I'm,
24   like, it wasn't my choice, you know, I didn't choose
25   kind of for this to happen.  And so -- and then I think
```

1   as far as being able to stay.

2       Q.   Who was that you talked to at the union who

3   said that?

4       A.   I think it was Roger Tamietti, but I can't

5   be...  T-a-m-i-e-t-t-i.

6       Q.   Anyone else who was -- you have personal

7   knowledge was upset that had -- they had to be moved

8   because of your situation?

9       A.   Not that I can think of right now.

10      Q.   Anybody who you personally know complained

11  that you were getting special treatment?

12      A.   I personally don't know -- no one told me they

13  complained about me.

14      Q.   You said that after the policy came out,

15  everybody had a way of bashing you, and I believe you

16  also testified that you were not comfortable with

17  anybody at the fire department after that, is that

18  correct?

19      A.   For a period of time.

20      Q.   How long?

21      A.   I can't tell you exactly.  I had days where I

22  didn't want to be around anybody, then I had times

23  where, you know, somebody was comfortable to talk to

24  and I could talk to them.  I mean, I was pretty

25  comfortable with the people I was working with at six,

1    but we definitely -- you know, I definitely had days

2    where I didn't want to be around anybody.

3        Q.   Before going to station six can you tell me

4    incidents where somebody bashed you?

5        A.   So no one really did anything to my face, it

6    was all stuff that people would tell me people had said

7    about me.

8        Q.   Okay.  Again, before going to station six who

9    told you anybody else had been bashing you?

10       A.   I don't remember of the time frame of certain

11   comments, when they were made, if it was before or

12   after I went to six.  I'd have to look at, like I said,

13   notes to give you an exact time frame.

14       Q.   Tell me what people you remember and what

15   comments they made.

16       A.   Well, I know the comment that Captain

17   L'Heureux made to Gordon Clark about doesn't think I

18   deserve special treatment, but I can't tell you if that

19   was before or after I went -- it had to have been

20   before, but I don't know exactly when that comment was

21   made.

22       Q.   With respect to that comment, you weren't

23   present, correct?

24       A.   I was not.

25       Q.   How did you hear about that comment?

1   down the line when I was pregnant, there was some --

2   things became uncomfortable with my captain.  Prior to

3   that, there was just certain days we'd go to training,

4   we'd go somewhere, somebody would ignore me or, you

5   know, something that made me feel uncomfortable and it

6   just kind of basically made me, like, just retreat back

7   and not want to be around anybody.  I mean, it just

8   kind of brought all this stuff to light that this was

9   people -- you know, some people's opinions, and it made

10  me very uncomfortable.

11       Q.   But there's nobody at station six who made any

12  comment directly to you that bashed you, correct?

13       A.   Not my crew there, no.

14       Q.   And nobody that you know of at station six who

15  made comments behind your back about you?

16       A.   Not that I know of.

17       Q.   Do you have any reason to believe that anybody

18  at station six was upset about you bringing up the

19  federal law?

20       A.   I don't know.  If they did, you know, they

21  weren't probably going to say it to me, but...

22       Q.   You talked about people being moved, the

23  policy coming out, comments that were made that you

24  felt were bashing you, hearing those rumors.  Anything

25  else that you felt created a hostile work environment

```
1        Q.   Anything that you heard of?

2        A.   I heard from Tom Sisterman that Captain

3   Langejans had made those kind of comments.

4        Q.   Anything else?

5        A.   I know I've heard comments like that

6   throughout the years, I can't give you a specific

7   person, though, right off the top of my head.

8        Q.   Can you think of any comments in the time

9   period this complaint is dealing with, after you came

10  back from maternity leave for your first child?

11       A.   Not off the top of my head.

12       Q.   Can you think of -- or are you aware, do you

13  know of anyone who's said to you that pregnant women

14  should not be firefighters or medics?

15       A.   Not in those words.

16       Q.   In any other words?

17       A.   I know there was a discussion at station six

18  with Captain McDonough and I believe he was talking to

19  Chief Noffs (phonetic) about his concerns about or

20  thoughts or feelings, whatever it was, about pregnant

21  women being out in suppression.

22       Q.   And what did you understand his concerns were?

23       A.   That he didn't feel comfortable with it.

24       Q.   And did you have any understanding as to why

25  he didn't feel comfortable?
```

1      A.   We didn't get into too much detail about it.

2   I basically told him, you know, if you're really

3   concerned about it, let me know, you know, but as far

4   as my doctor and me are concerned, we're fine with it.

5      Q.   Did he ever say anything directly to you?

6      A.   When I came in to shift one night, he said, I

7   just want to let you know that you weren't here earlier

8   and we were talking about pregnant women on the fire

9   department.   And I was, like, okay, what, what about,

10  you know.   He's, like, well, you know, just concerned,

11  and then he had mentioned another girl on the job who

12  had been pregnant years back, they talked about, I

13  think, her as well.   And, like I said, I didn't engage

14  in, like, a full conversation about it, because I

15  didn't know what he was getting at.

16     Q.   And to this day you still don't know what his

17  concerns were?

18     A.   All he really said was, you know, I'm just,

19  I'm concerned.   I said, I respect that, you know, I

20  said, but my doctor and me are not and -- but, I'm not

21  going to, you know...

22     Q.   You say you mentioned it, your doctor said it

23  was okay.   Was this a concern about health of you and

24  the potential child?

25     A.   Well, it's -- I don't really know, because as

1    BY MR. McCRORY:

2        Q.   And you say, but for my condition I would not

3    have been subjected to different terms and conditions

4    of employment.

5             What different terms and conditions of

6    employment were you subjected to because of your

7    condition?

8        A.   So essentially I was eventually assigned, you

9    know, at one point to station six.  Didn't bid there,

10   anything like that.  I'd asked specifically about

11   trades and overtime, I was never given an answer on

12   that.  I asked specifically, okay, what stations can I

13   work at that are complying with the law; we can't give

14   you that right now.  I was never given that.

15            So had I been a regular person, a male, a

16   female without a baby coming back to work like I was

17   before, I could work anywhere, I could work whenever,

18   however, you know, I could put in for overtime, I could

19   put in for trade, I didn't have to have all these

20   different hoops to jump through about trying to figure

21   out where to put me, you know, what's compliant, what's

22   not, are we going to fix some things, we're not, we're

23   just going to keep her here.  Because we specifically

24   asked Chief Fischback in that conversation, I think my

25   union rep did, when do you think all these stations

1   to wait for traffic, I'm trying to get around smoke and

2   cars driving the opposite direction.  So what took me a

3   few extra seconds to get over there I don't think was

4   anything substantial.

5       Q.   When you got there was Chief -- Captain

6   McDonough, Ted McDonough, already using the hose to

7   extinguish flames on the opposite side of the road?

8       A.   No.

9       Q.   Did you do that at any time?

10      A.   At one point.

11      Q.   Do you recall the incident that was referred

12   to in your memo in Exhibit -- yeah, your memo in

13   Exhibit 12, the drill?

14      A.   I do.

15      Q.   Did you feel that was discriminatory against

16   you because you were a woman?

17      A.   I believe it -- I felt it was because I was a

18   pregnant woman.

19      Q.   Why did you feel that?

20      A.   Because it was an unrealistic drill that only

21   I was doing and it came shortly after the talk of being

22   concerned that I was pregnant.

23      Q.   What was the discussion of being concerned you

24   were pregnant?

25      A.   That was what I had told you about when I had

1    come into work that day, I believe in the evening

2    shift, and Captain McDonough had said, just want to let

3    you know we were talking about you and pregnant women

4    and all that today.  So it was shortly after that

5    conversation that he'd had with the chief about, I

6    don't know, me being pregnant, probably amongst other

7    things.

8        Q.   Did you understand that -- well, first of all,

9    had Ted McDonough any other times stopped on just an

10   impromptu drill of the crew?

11       A.   No.

12       Q.   He'd never done that before --

13       A.   Not with me.

14       Q.   -- this was the first time?

15            Do you know if he did it with anybody else?

16       A.   I don't know.

17       Q.   Do you have any reason to believe this was his

18   concern about pregnant women in general or women in

19   general as opposed to you specifically?

20       A.   I don't know.  You'd have to ask him.

21       Q.   Do you have any trouble fitting in your

22   turnout at this stage?

23       A.   No.

24       Q.   Did you at any time before you went on light

25   duty?

1    you about who you thought might be biased against women

2    with respect to a couple people, several people.  You

3    said at that time that you didn't think Jim Critchley

4    or Paul McDonough were biased against women.  Is that

5    still your testimony?

6        A.   I, I mean, I don't know these people's

7    personal opinions, but...

8        Q.   You don't have any reason to believe that they

9    are biased against women, do you?

10       A.   But I don't have any reason to believe they

11   aren't, either.  So I don't know.

12       Q.   You thought that Chief Nied was insensitive in

13   the meeting he had with you, but you didn't know how he

14   treated other women, correct?

15       A.   Correct.

16       Q.   And you didn't think Chief Rodriguez and Joann

17   Acosta treated you fairly, but you didn't know how they

18   treated other women, correct?

19       A.   Correct.

20       Q.   So with all of those you don't know if they're

21   biased against women or they had specific personal

22   issues with you, correct?

23       A.   Correct.

24       Q.   What about Mike Fischback, do you think he is

25   biased against women or do you have any facts that

1    A.  By mostly what I've just said.  And, I mean,

2  I'm sure I have other stuff documented in here, but...

3  I don't know, I don't know what I've told you, what I

4  haven't told you.  But probably mostly what I told you,

5  there's probably some other things, but I don't know

6  right now.

7    Q.  Has Chief Carsten done anything to retaliate

8  against you?

9    A.  I don't know if I'd -- I don't know if I can

10  call it retaliation or not.  I mean, he was very aware

11  of a lot of the stuff going on down there and didn't do

12  anything about it.  And I don't know if in fire

13  prevention, excuse me, and I don't know if he -- I

14  don't know his reasons for doing it, so I don't know if

15  I can say that's why or not.

16    Q.  What about Joe Gulotta, did he ever retaliate

17  against you?

18    A.  I don't have a lot of interaction with Chief

19  Gulotta, but I can tell you that he went in one day and

20  told my supervisor to withdraw time from my tele -- my

21  vacation because he said I left early, which I disagree

22  with.

23    Q.  Did you do anything to contest that?

24    A.  I asked my supervisor about it.

25    Q.  Who was your supervisor?

1      A.   It was Ken Brouillette at the time.

2      Q.   And what did he say?

3      A.   So I noticed the next day, again no one told
4  me, that they'd taken this time away and I noticed the
5  next day when I logged into telestaff that I had
6  vacation time from 5:00 to 5:30 the day before.  And so
7  I e-mailed Ken and said, who took backtime away from
8  me; he said, oh, Chief Gulotta told me either he did it
9  or he told Ken to do it because he said that he thought
10  you left early.

11      Q.   And what happened from there?

12      A.   Oh, I told Ken, I said, I didn't leave early.
13  You and him, you know, you both were in my office at 5
14  o'clock talking to me, like I didn't leave early.  And
15  he was like, I know, I don't...  And that was kind of
16  the end of it.

17      Q.   You didn't pursue it further?

18      A.   I believe I talked to the union about it, but
19  at this point it was -- there was so much going on, it
20  just kind of, just kept adding to my list of stuff I
21  was trying to deal with, battles I was trying to fight
22  with the department.

23      Q.   Do you have any reason to think that Joe
24  Gulotta did that because of any retaliatory motive?

25      A.   I personally think so.

1       Q.    Why?

2       A.    Because I have really never had interaction

3   with Chief Gulotta my entire career, and then when I

4   went on light duty, all of a sudden every day he was

5   down in my office where I was working around 5 o'clock

6   every day either making pointless conversation or

7   loading up boxes, it seemed like busy work kind of

8   right outside what we were doing to the point of, like,

9   why is Gulotta down here all the time.  Then, come to

10  find out from one of the other inspectors who had since

11  retired, Gulotta called down there and said, is Carrie

12  still there, is Carrie still there today.  He was

13  checking on me through other people.  It's not his job

14  to watch me, I was not under his -- you know, I wasn't,

15  like, working for him at the time, so to take that

16  special interest in me with all the stuff going on to

17  me seemed like retaliation for what I was doing.

18      Q.    When you say the time on light duty you've

19  been talking about for a while now, that's the period

20  during your second pregnancy?

21      A.    Correct.

22      Q.    When you were at fire prevention?

23      A.    Correct.

24      Q.    Anything -- any other reason why you think

25  Chief Gulotta was retaliating against you?

1    A.   I believe that Chief Gulotta supervises Joann.

2    And, I mean, there's been some other things recently I

3    won't get into, but he supervises Joann and I had made,

4    you know, multiple concerns over Joann's treatment

5    towards me, with the union, especially, and he

6    basically, you know, defended her every time and a lot

7    of it without ever hearing my side of it or looking at

8    both sides.  And I think that was another way of kind

9    of going against me.

10   Q.   When you say he didn't look at both sides, how

11   do you know that?

12   A.   It just seemed like his responses when the

13   union would bring up stuff to him about Joann, he had,

14   like, a very quick response so that there wouldn't have

15   really probably been a way to know both sides.

16   Basically he just stood behind her and there was no

17   other question about -- you know, not looking at, well,

18   if that's how, you know, she's actually treating people

19   or anything like that.

20   Q.   But you don't know what he knew of both sides,

21   do you?

22   A.   No.

23   Q.   But you can make an assumption that he didn't

24   know both sides because he didn't agree with you,

25   correct?

```
 1        Q.    Is that the time you mean that you were on his

 2   team?

 3        A.    No.

 4        Q.    Okay.  You were on light duty from June

 5   through I think November?

 6        A.    August.

 7        Q.    August.  And then you were off on family leave

 8   until November?

 9        A.    Correct.

10        Q.    Of '14?

11        A.    Yes.

12        Q.    And then you returned to fire prevention as an

13   inspector, not as somebody on light duty?

14        A.    Correct.

15        Q.    Okay.  You said Ken put you on a team in

16   April.  What April?

17        A.    Of 2015.

18        Q.    2015.  Prior to that, had you had any problems

19   with Ken Brouillette?

20        A.    Not that I recall, but I'd have to look

21   through and see if I made notes of anything.  But not

22   that I recall right now.

23        Q.    You said that he told you about understanding

24   your -- or he said that he did understand your

25   situation.  What did you mean by that, what situation?
```

1      A.   Well, the situation of my lawsuit.

2      Q.   And what do you mean when you say he

3 understood that?

4      A.   Because he had told me that he had also filed

5 a lawsuit against a fire department that he had worked

6 for previously.

7      Q.   Do you know if that was the Tucson Fire

8 Department?

9      A.   It was not.   I don't know if it was California

10 or Washington, where he was from.

11      Q.   And what did he say about that that reflected

12 on your situation?

13      A.   Just that he understood where I was coming

14 from.   And he told me that he talked with his wife a

15 few times about some of the stuff that had gone on with

16 me and he had told, he'd shared with, I guess, her, his

17 wife, some of the stuff that happened on light duty and

18 that he just couldn't believe the stuff that was

19 happening.

20      Q.   What stuff couldn't he believe happened?

21      A.   As far as, like, Chief Gulotta being down

22 there checking on me, the number of meetings he had to

23 go to that had to do with just me, the different rules,

24 like, he had told me that were -- he was having to

25 abide by just for me.

```
 1        Q.    So most of this stuff is stuff that occurred
 2   after what's referred to in the complaint.
 3        A.    No, the stuff I'm talking about -- let me
 4   think.
 5        Q.    Your complaint goes up through problems with
 6   Jeff Langejans.
 7        A.    Okay.  Then, yes.
 8        Q.    When you first went to light duty, your
 9   supervisor was Ken Brouillette at that time?
10        A.    Correct.
11        Q.    And in November when you went back as an
12   inspector, who was your supervisor?
13        A.    Phil Morgan.
14        Q.    How long was he your supervisor?
15        A.    Five months.  Five to six months.
16        Q.    So maybe March of 2015, roughly?
17        A.    It was more like, yeah, April, Mayish.
18        Q.    And who was your supervisor after that?
19        A.    Ken Brouillette.
20        Q.    And he remained your supervisor through the
21   time period of the lawsuit?
22        A.    Correct.
23        Q.    Did you have any problems under Phil Morgan?
24        A.    Not with job performance.
25        Q.    Did you have any complaints during that time
```

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

CARRIE FERRARA CLARK,                )
                                     )
            Plaintiff,               )
                                     )
      vs.                            )        No. 4:14-CV-02543-TUC-CKJ
                                     )
CITY OF TUCSON,                      )        CERTIFICATION OF NON-SIGNATURE
                                     )
            Defendant.               )
                                     )
_____)

Be it known that the foregoing videotaped deposition of **Carrie Ferrara Clark, Volume II,** was taken before a certified court reporter in and for the State of Arizona, on the **27th day of October, 2016;** that the witness elected to read and sign the deposition before filing with counsel responsible for retaining the original until time of trial; that the witness was requested by mail on the **17th day of November, 2016,** to, within thirty days, read and sign said deposition.

SINCE said letter has not been returned and the witness/counsel has not contacted our office for an extension of time, being charged with the responsibility of filing the original transcript, we herewith file said deposition transcript.

DATED at Tucson, Arizona, this 28th day of December, 2016.


Kathleen Henry
Eaton, Green & Williams, Inc.

# EXHIBIT 22

KeyC te Ye ow F ag  Negat ve Treatment

Unconst tut ona or PreemptedNegat ve Treatment Recons dered by F or da ex re . Atty. Gen. v. U.S. Dept. of Hea th and Human Serv ces,  th

C r.(F a.), Aug. 2, 20

KeyC te Ye ow F ag  Negat ve TreatmentProposed Leg s at on

United States Code Annotated
  Title 29. Labor
    Chapter 8. Fair Labor Standards (Refs & Annos)

29 U.S.C.A. § 207

§ 207. Maximum hours

Effective: March 23, 2010
Currentness

**(a) Employees engaged in interstate commerce; additional applicability to employees pursuant to subsequent amendatory provisions**

**(1)** Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

**(2)** No employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, and who in such workweek is brought within the purview of this subsection by the amendments made to this chapter by the Fair Labor Standards Amendments of 1966--

**(A)** for a workweek longer than forty-four hours during the first year from the effective date of the Fair Labor Standards Amendments of 1966,

**(B)** for a workweek longer than forty-two hours during the second year from such date, or

**(C)** for a workweek longer than forty hours after the expiration of the second year from such date,

unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

**(b) Employment pursuant to collective bargaining agreement; employment by independently owned and controlled local enterprise engaged in distribution of petroleum products**

No employer shall be deemed to have violated subsection (a) of this section by employing any employee for a workweek in excess of that specified in such subsection without paying the compensation for overtime employment prescribed therein if such employee is so employed--

**(1)** in pursuance of an agreement, made as a result of collective bargaining by representatives of employees certified as bona fide by the National Labor Relations Board, which provides that no employee shall be employed more than one thousand and forty hours during any period of twenty-six consecutive weeks; or

**(2)** in pursuance of an agreement, made as a result of collective bargaining by representatives of employees certified as bona fide by the National Labor Relations Board, which provides that during a specified period of fifty-two consecutive weeks the employee shall be employed not more than two thousand two hundred and forty hours and shall be guaranteed not less than one thousand eight hundred and forty-hours (or not less than forty-six weeks at the normal number of hours worked per week, but not less than thirty hours per week) and not more than two thousand and eighty hours of employment for which he shall receive compensation for all hours guaranteed or worked at rates not less than those applicable under the agreement to the work performed and for all hours in excess of the guaranty which are also in excess of the maximum workweek applicable to such employee under subsection (a) of this section or two thousand and eighty in such period at rates not less than one and one-half times the regular rate at which he is employed; or

**(3)** by an independently owned and controlled local enterprise (including an enterprise with more than one bulk storage establishment) engaged in the wholesale or bulk distribution of petroleum products if--

**(A)** the annual gross volume of sales of such enterprise is less than $1,000,000 exclusive of excise taxes,

**(B)** more than 75 per centum of such enterprise's annual dollar volume of sales is made within the State in which such enterprise is located, and

**(C)** not more than 25 per centum of the annual dollar volume of sales of such enterprise is to customers who are engaged in the bulk distribution of such products for resale,

and such employee receives compensation for employment in excess of forty hours in any workweek at a rate not less than one and one-half times the minimum wage rate applicable to him under section 206 of this title,

and if such employee receives compensation for employment in excess of twelve hours in any workday, or for employment in excess of fifty-six hours in any workweek, as the case may be, at a rate not less than one and one-half times the regular rate at which he is employed.

**(c), (d)** Repealed. Pub.L. 93-259, § 19(e), Apr. 8, 1974, 88 Stat. 66

**(e) "Regular rate" defined**

As used in this section the "regular rate" at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee, but shall not be deemed to include--

(1) sums paid as gifts; payments in the nature of gifts made at Christmas time or on other special occasions, as a reward for service, the amounts of which are not measured by or dependent on hours worked, production, or efficiency;

(2) payments made for occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause; reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; and other similar payments to an employee which are not made as compensation for his hours of employment;

(3) Sums   paid in recognition of services performed during a given period if either, (a) both the fact that payment is to be made and the amount of the payment are determined at the sole discretion of the employer at or near the end of the period and not pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly; or (b) the payments are made pursuant to a bona fide profit-sharing plan or trust or bona fide thrift or savings plan, meeting the requirements of the Administrator set forth in appropriate regulations which he shall issue, having due regard among other relevant factors, to the extent to which the amounts paid to the employee are determined without regard to hours of work, production, or efficiency; or (c) the payments are talent fees (as such talent fees are defined and delimited by regulations of the Administrator) paid to performers, including announcers, on radio and television programs;

(4) contributions irrevocably made by an employer to a trustee or third person pursuant to a bona fide plan for providing old-age, retirement, life, accident, or health insurance or similar benefits for employees;

(5) extra compensation provided by a premium rate paid for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of eight in a day or in excess of the maximum workweek applicable to such employee under subsection (a) of this section or in excess of the employee's normal working hours or regular working hours, as the case may be;

(6) extra compensation provided by a premium rate paid for work by the employee on Saturdays, Sundays, holidays, or regular days of rest, or on the sixth or seventh day of the workweek, where such premium rate is not less than one and one-half times the rate established in good faith for like work performed in nonovertime hours on other days;

(7) extra compensation provided by a premium rate paid to the employee, in pursuance of an applicable employment contract or collective-bargaining agreement, for work outside of the hours established in good faith by the contract or agreement as the basic, normal, or regular workday (not exceeding eight hours) or workweek (not exceeding the maximum workweek applicable to such employee under subsection (a) of this section, [2] where such premium rate is not less than one and one-half times the rate established in good faith by the contract or agreement for like work performed during such workday or workweek; or

(8) any value or income derived from employer-provided grants or rights provided pursuant to a stock option, stock appreciation right, or bona fide employee stock purchase program which is not otherwise excludable under any of paragraphs (1) through (7) if--

**(A)** grants are made pursuant to a program, the terms and conditions of which are communicated to participating employees either at the beginning of the employee's participation in the program or at the time of the grant;

**(B)** in the case of stock options and stock appreciation rights, the grant or right cannot be exercisable for a period of at least 6 months after the time of grant (except that grants or rights may become exercisable because of an employee's death, disability, retirement, or a change in corporate ownership, or other circumstances permitted by regulation), and the exercise price is at least 85 percent of the fair market value of the stock at the time of grant;

**(C)** exercise of any grant or right is voluntary; and

**(D)** any determinations regarding the award of, and the amount of, employer-provided grants or rights that are based on performance are--

**(i)** made based upon meeting previously established performance criteria (which may include hours of work, efficiency, or productivity) of any business unit consisting of at least 10 employees or of a facility, except that, any determinations may be based on length of service or minimum schedule of hours or days of work; or

**(ii)** made based upon the past performance (which may include any criteria) of one or more employees in a given period so long as the determination is in the sole discretion of the employer and not pursuant to any prior contract.

**(f) Employment necessitating irregular hours of work**

No employer shall be deemed to have violated subsection (a) of this section by employing any employee for a workweek in excess of the maximum workweek applicable to such employee under subsection (a) of this section if such employee is employed pursuant to a bona fide individual contract, or pursuant to an agreement made as a result of collective bargaining by representatives of employees, if the duties of such employee necessitate irregular hours of work, and the contract or agreement (1) specifies a regular rate of pay of not less than the minimum hourly rate provided in subsection (a) or (b) of section 206 of this title (whichever may be applicable) and compensation at not less than one and one-half times such rate for all hours worked in excess of such maximum workweek, and (2) provides a weekly guaranty of pay for not more than sixty hours based on the rates so specified.

**(g) Employment at piece rates**

No employer shall be deemed to have violated subsection (a) of this section by employing any employee for a workweek in excess of the maximum workweek applicable to such employee under such subsection if, pursuant to an agreement or understanding arrived at between the employer and the employee before performance of the work, the amount paid to the employee for the number of hours worked by him in such workweek in excess of the maximum workweek applicable to such employee under such subsection--

**(1)** in the case of an employee employed at piece rates, is computed at piece rates not less than one and one-half times the bona fide piece rates applicable to the same work when performed during nonovertime hours; or

(2) in the case of an employee performing two or more kinds of work for which different hourly or piece rates have been established, is computed at rates not less than one and one-half times such bona fide rates applicable to the same work when performed during nonovertime hours; or

(3) is computed at a rate not less than one and one-half times the rate established by such agreement or understanding as the basic rate to be used in computing overtime compensation thereunder: *Provided*, That the rate so established shall be authorized by regulation by the Administrator as being substantially equivalent to the average hourly earnings of the employee, exclusive of overtime premiums, in the particular work over a representative period of time;

and if (i) the employee's average hourly earnings for the workweek exclusive of payments described in paragraphs (1) through (7) of subsection (e) of this section are not less than the minimum hourly rate required by applicable law, and (ii) extra overtime compensation is properly computed and paid on other forms of additional pay required to be included in computing the regular rate.

**(h) Extra compensation creditable toward overtime compensation**

**(1)** Except as provided in paragraph (2), sums excluded from the regular rate pursuant to subsection (e) shall not be creditable toward wages required under section 6 or overtime compensation required under this section.

**(2)** Extra compensation paid as described in paragraphs (5), (6), and (7) of subsection (e) of this section shall be creditable toward overtime compensation payable pursuant to this section.

**(i) Employment by retail or service establishment**

No employer shall be deemed to have violated subsection (a) of this section by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services. In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

**(j) Employment in hospital or establishment engaged in care of sick, aged or mentally ill**

No employer engaged in the operation of a hospital or an establishment which is an institution primarily engaged in the care of the sick, the aged, or the mentally ill or defective who reside on the premises shall be deemed to have violated subsection (a) of this section if, pursuant to an agreement or understanding arrived at between the employer and the employee before performance of the work, a work period of fourteen consecutive days is accepted in lieu of the workweek of seven consecutive days for purposes of overtime computation and if, for his employment in excess of eight hours in any workday and in excess of eighty hours in such fourteen-day period, the employee receives compensation at a rate not less than one and one-half times the regular rate at which he is employed.

**(k) Employment by public agency engaged in fire protection or law enforcement activities**

No public agency shall be deemed to have violated subsection (a) of this section with respect to the employment of any employee in fire protection activities or any employee in law enforcement activities (including security personnel in correctional institutions) if--

(1) in a work period of 28 consecutive days the employee receives for tours of duty which in the aggregate exceed the lesser of (A) 216 hours, or (B) the average number of hours (as determined by the Secretary pursuant to section 6(c)(3) of the Fair Labor Standards Amendments of 1974) in tours of duty of employees engaged in such activities in work periods of 28 consecutive days in calendar year 1975; or

(2) in the case of such an employee to whom a work period of at least 7 but less than 28 days applies, in his work period the employee receives for tours of duty which in the aggregate exceed a number of hours which bears the same ratio to the number of consecutive days in his work period as 216 hours (or if lower, the number of hours referred to in clause (B) of paragraph (1)) bears to 28 days,

compensation at a rate not less than one and one-half times the regular rate at which he is employed.

**(l) Employment in domestic service in one or more households**

No employer shall employ any employee in domestic service in one or more households for a workweek longer than forty hours unless such employee receives compensation for such employment in accordance with subsection (a) of this section.

**(m) Employment in tobacco industry**

For a period or periods of not more than fourteen workweeks in the aggregate in any calendar year, any employer may employ any employee for a workweek in excess of that specified in subsection (a) of this section without paying the compensation for overtime employment prescribed in such subsection, if such employee--

(1) is employed by such employer--

(A) to provide services (including stripping and grading) necessary and incidental to the sale at auction of green leaf tobacco of type 11, 12, 13, 14, 21, 22, 23, 24, 31, 35, 36, or 37 (as such types are defined by the Secretary of Agriculture), or in auction sale, buying, handling, stemming, redrying, packing, and storing of such tobacco,

(B) in auction sale, buying, handling, sorting, grading, packing, or storing green leaf tobacco of type 32 (as such type is defined by the Secretary of Agriculture), or

(C) in auction sale, buying, handling, stripping, sorting, grading, sizing, packing, or stemming prior to packing, of perishable cigar leaf tobacco of type 41, 42, 43, 44, 45, 46, 51, 52, 53, 54, 55, 61, or 62 (as such types are defined by the Secretary of Agriculture); and

(2) receives for--

**(A)** such employment by such employer which is in excess of ten hours in any workday, and

**(B)** such employment by such employer which is in excess of forty-eight hours in any workweek,

compensation at a rate not less than one and one-half times the regular rate at which he is employed.

An employer who receives an exemption under this subsection shall not be eligible for any other exemption under this section.

**(n) Employment by street, suburban or interurban electric railway, or local trolley or motorbus carrier**

In the case of an employee of an employer engaged in the business of operating a street, suburban or interurban electric railway, or local trolley or motorbus carrier (regardless of whether or not such railway or carrier is public or private or operated for profit or not for profit), in determining the hours of employment of such an employee to which the rate prescribed by subsection (a) of this section applies there shall be excluded the hours such employee was employed in charter activities by such employer if (1) the employee's employment in such activities was pursuant to an agreement or understanding with his employer arrived at before engaging in such employment, and (2) if employment in such activities is not part of such employee's regular employment.

**(o) Compensatory time**

**(1)** Employees of a public agency which is a State, a political subdivision of a State, or an interstate governmental agency may receive, in accordance with this subsection and in lieu of overtime compensation, compensatory time off at a rate not less than one and one-half hours for each hour of employment for which overtime compensation is required by this section.

**(2)** A public agency may provide compensatory time under paragraph (1) only--

  **(A)** pursuant to--

    **(i)** applicable provisions of a collective bargaining agreement, memorandum of understanding, or any other agreement between the public agency and representatives of such employees; or

    **(ii)** in the case of employees not covered by subclause (i), an agreement or understanding arrived at between the employer and employee before the performance of the work; and

  **(B)** if the employee has not accrued compensatory time in excess of the limit applicable to the employee prescribed by paragraph (3).

In the case of employees described in clause (A)(ii) hired prior to April 15, 1986, the regular practice in effect on April 15, 1986, with respect to compensatory time off for such employees in lieu of the receipt of overtime compensation, shall constitute an agreement or understanding under such clause (A)(ii). Except as provided in the previous sentence, the

provision of compensatory time off to such employees for hours worked after April 14, 1986, shall be in accordance with this subsection.

**(3)(A)** If the work of an employee for which compensatory time may be provided included work in a public safety activity, an emergency response activity, or a seasonal activity, the employee engaged in such work may accrue not more than 480 hours of compensatory time for hours worked after April 15, 1986. If such work was any other work, the employee engaged in such work may accrue not more than 240 hours of compensatory time for hours worked after April 15, 1986. Any such employee who, after April 15, 1986, has accrued 480 or 240 hours, as the case may be, of compensatory time off shall, for additional overtime hours of work, be paid overtime compensation.

**(B)** If compensation is paid to an employee for accrued compensatory time off, such compensation shall be paid at the regular rate earned by the employee at the time the employee receives such payment.

**(4)** An employee who has accrued compensatory time off authorized to be provided under paragraph (1) shall, upon termination of employment, be paid for the unused compensatory time at a rate of compensation not less than--

  **(A)** the average regular rate received by such employee during the last 3 years of the employee's employment, or

  **(B)** the final regular rate received by such employee,

whichever is higher [3]

**(5)** An employee of a public agency which is a State, political subdivision of a State, or an interstate governmental agency--

  **(A)** who has accrued compensatory time off authorized to be provided under paragraph (1), and

  **(B)** who has requested the use of such compensatory time,

shall be permitted by the employee's employer to use such time within a reasonable period after making the request if the use of the compensatory time does not unduly disrupt the operations of the public agency.

**(6)** The hours an employee of a public agency performs court reporting transcript preparation duties shall not be considered as hours worked for the purposes of subsection (a) of this section if--

  **(A)** such employee is paid at a per-page rate which is not less than--

    **(i)** the maximum rate established by State law or local ordinance for the jurisdiction of such public agency,

    **(ii)** the maximum rate otherwise established by a judicial or administrative officer and in effect on July 1, 1995, or

**(iii)** the rate freely negotiated between the employee and the party requesting the transcript, other than the judge who presided over the proceedings being transcribed, and

**(B)** the hours spent performing such duties are outside of the hours such employee performs other work (including hours for which the agency requires the employee's attendance) pursuant to the employment relationship with such public agency.

For purposes of this section, the amount paid such employee in accordance with subparagraph (A) for the performance of court reporting transcript preparation duties, shall not be considered in the calculation of the regular rate at which such employee is employed.

**(7)** For purposes of this subsection--

**(A)** the term "overtime compensation" means the compensation required by subsection (a), and

**(B)** the terms "compensatory time" and "compensatory time off" mean hours during which an employee is not working, which are not counted as hours worked during the applicable workweek or other work period for purposes of overtime compensation, and for which the employee is compensated at the employee's regular rate.

**(p) Special detail work for fire protection and law enforcement employees; occasional or sporadic employment; substitution**

**(1)** If an individual who is employed by a State, political subdivision of a State, or an interstate governmental agency in fire protection or law enforcement activities (including activities of security personnel in correctional institutions) and who, solely at such individual's option, agrees to be employed on a special detail by a separate or independent employer in fire protection, law enforcement, or related activities, the hours such individual was employed by such separate and independent employer shall be excluded by the public agency employing such individual in the calculation of the hours for which the employee is entitled to overtime compensation under this section if the public agency--

**(A)** requires that its employees engaged in fire protection, law enforcement, or security activities be hired by a separate and independent employer to perform the special detail,

**(B)** facilitates the employment of such employees by a separate and independent employer, or

**(C)** otherwise affects the condition of employment of such employees by a separate and independent employer.

**(2)** If an employee of a public agency which is a State, political subdivision of a State, or an interstate governmental agency undertakes, on an occasional or sporadic basis and solely at the employee's option, part-time employment for the public agency which is in a different capacity from any capacity in which the employee is regularly employed with the public agency, the hours such employee was employed in performing the different employment shall be excluded

by the public agency in the calculation of the hours for which the employee is entitled to overtime compensation under this section.

**(3)** If an individual who is employed in any capacity by a public agency which is a State, political subdivision of a State, or an interstate governmental agency, agrees, with the approval of the public agency and solely at the option of such individual, to substitute during scheduled work hours for another individual who is employed by such agency in the same capacity, the hours such employee worked as a substitute shall be excluded by the public agency in the calculation of the hours for which the employee is entitled to overtime compensation under this section.

**(q) Maximum hour exemption for employees receiving remedial education**

Any employer may employ any employee for a period or periods of not more than 10 hours in the aggregate in any workweek in excess of the maximum workweek specified in subsection (a) of this section without paying the compensation for overtime employment prescribed in such subsection, if during such period or periods the employee is receiving remedial education that is--

**(1)** provided to employees who lack a high school diploma or educational attainment at the eighth grade level;

**(2)** designed to provide reading and other basic skills at an eighth grade level or below; and

**(3)** does not include job specific training.

**(r)(1)** An employer shall provide--

**(A)** a reasonable break time for an employee to express breast milk for her nursing child for 1 year after the child's birth each time such employee has need to express the milk; and

**(B)** a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk.

**(2)** An employer shall not be required to compensate an employee receiving reasonable break time under paragraph (1) for any work time spent for such purpose.

**(3)** An employer that employs less than 50 employees shall not be subject to the requirements of this subsection, if such requirements would impose an undue hardship by causing the employer significant difficulty or expense when considered in relation to the size, financial resources, nature, or structure of the employer's business.

**(4)** Nothing in this subsection shall preempt a State law that provides greater protections to employees than the protections provided for under this subsection.

**CREDIT(S)**

(June 25, 1938, c. 676, § 7, 52 Stat. 1063; Oct. 29, 1941, c. 461, 55 Stat. 756; July 20, 1949, c. 352, § 1, 63 Stat. 446; Oct. 26, 1949, c. 736, § 7, 63 Stat. 912; May 5, 1961, Pub.L. 87-30, § 6, 75 Stat. 69; Sept. 23, 1966, Pub.L. 89-601, Title II, §§ 204(c), (d), 212(b), Title IV, §§ 401 to 403, 80 Stat. 835, 837, 841, 842; Apr. 8, 1974, Pub.L. 93-259, §§ 6(c)(1), 7(b)(2), 9(a), 12(b), 19, 21(a), 88 Stat. 60, 62, 64, 66, 68; Nov. 13, 1985, Pub.L. 99-150, §§ 2(a), 3(a) to (c)(1), 99 Stat. 787, 789; Nov. 17, 1989, Pub.L. 101-157, § 7, 103 Stat. 944; Sept. 6, 1995, Pub.L. 104-26, § 2, 109 Stat. 264; May 18, 2000, Pub.L. 106-202, § 2(a), (b), 114 Stat. 308; Mar. 23, 2010, Pub.L. 111-148, Title IV, § 4207, 124 Stat. 577.)

Notes of Decisions (2413)

Footnotes

1    So in original. Probably should not be capitalized.
2    So in original. Probably should have closed parentheses.
3    So in original. Probably should be followed by a period.

29 U.S.C.A. § 207, 29 USCA § 207

Current through P.L. 115-24. Also includes P.L. 115-26. Title 26 current through 115-29.

End of Document                                                © 20 7 Thomson Reuters. No c a m to or g na  U.S. Government Works.

SHARE

# Wage and Hour Division (WHD)

## (Revised December 2010) (PDF)

## Fact Sheet #73: Break Time for Nursing Mothers under the FLSA

This fact sheet provides general information on the break time requirement for nursing mothers in the Patient Protection and Affordable Care Act ("PPACA"), which took effect when the PPACA was signed into law on March 23, 2010 (P.L. 111-148). This law amended Section 7 of the Fair Labor Standards Act (FLSA).

### General Requirements

Employers are required to provide "reasonable break time for an employee to express breast milk for her nursing child for 1 year after the child's birth each time such employee has need to express the milk." Employers are also required to provide "a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk."

The FLSA requirement of break time for nursing mothers to express breast milk does not preempt State laws that provide greater protections to employees (for example, providing compensated break time, providing break time for exempt employees, or providing break time beyond 1 year after the child's birth).

### Time and Location of Breaks

Employers are required to provide a reasonable amount of break time to express milk as frequently as needed by the nursing mother. The frequency of breaks needed to express milk as well as the duration of each break will likely vary.

**14-02543 COT000350**
1/8/2013

A bathroom, even if private, is not a permissible location under the Act.  The location provided must be functional as a space for expressing breast milk.  If the space is not dedicated to the nursing mother's use, it must be available when needed in order to meet the statutory requirement.  A space temporarily created or converted into a space for expressing milk or made available when needed by the nursing mother is sufficient provided that the space is shielded from view, and free from any intrusion from co-workers and the public.

## Coverage and Compensation

Only employees who are not exempt from section 7, which includes the FLSA's overtime pay requirements, are entitled to breaks to express milk. While employers are not required under the FLSA to provide breaks to nursing mothers who are exempt from the requirements of Section 7, they may be obligated to provide such breaks under State laws.

Employers with fewer than 50 employees are not subject to the FLSA break time requirement if compliance with the provision would impose an undue hardship.  Whether compliance would be an undue hardship is determined by looking at the difficulty or expense of compliance for a specific employer in comparison to the size, financial resources, nature, and structure of the employer's business.  All employees who work for the covered employer, regardless of work site, are counted when determining whether this exemption may apply.

Employers are not required under the FLSA to compensate nursing mothers for breaks taken for the purpose of expressing milk.  However, where employers already provide compensated breaks, an employee who uses that break time to express milk must be compensated in the same way that other employees are compensated for break time.  In addition, the FLSA's general requirement that the employee must be completely relieved from duty or else the time must be compensated as work time applies.    *See* WHD Fact Sheet #22, Hours Worked under the FLSA .

## Where to Obtain Additional Information

**14-02543 COT000351**
1/8/2013

**For additional information, visit our Wage and Hour Division Website: http://www.wagehour.dol.gov and/or call our toll-free information and helpline, available 8 a.m. to 5 p.m. in your time zone, 1-866-4USWAGE (1-866-487-9243).**

This publication is for general information and is not to be considered in the same light as official statements of position contained in the regulations.

**14-02543 COT000352**
1/8/2013

# EXHIBIT 23

| | Date | Shift | Unit assigned | Last date/time it was touched | Last Touched By |
|---|---|---|---|---|---|
| sSwing (SSW) | 10/27/2012 | C | /.../Paramedic 12/Paramedic #1 | 10/23/12  7:56 | McDonough,P |
| sSwing (SSW) | 10/29/2012 | C | /.../Engine 21 PAU/Paramedic | 10/23/12  8:12 | McDonough,P |
| sSwing (SSW) | 11/05/2012 | C | /.../Paramedic 12/Paramedic #2 | 11/03/12  15:44 | <system> |
| sSwing (SSW) | 11/09/2012 | C | /.../Paramedic 12/Paramedic #2 | 11/05/12  19:53 | McDonough,P |
| sSwing (SSW) | 11/11/2012 | C | /.../Paramedic 12/Paramedic #2 | 11/05/12  19:55 | McDonough,P |
| sSwing (SSW) | 11/13/2012 | C | /.../Paramedic 12/Paramedic #2 | 11/05/12  19:58 | McDonough,P |
| aREGULAR PAY (.) | 11/20/2012 | C | /.../Paramedic 12/Paramedic #2 | 11/21/12  8:30 | <system> |
| aREGULAR PAY (.) | 11/22/2012 | C | /.../Paramedic 12/Paramedic #2 | 11/23/12  8:30 | <system> |
| aREGULAR PAY (.) | 11/24/2012 | C | /.../Paramedic 12/Paramedic #2 | 11/25/12  8:30 | <system> |
| aREGULAR PAY (.) | 11/26/2012 | C | /.../Paramedic 12/Paramedic #2 | 11/27/12  8:30 | <system> |
| aREGULAR PAY (.) | 11/28/2012 | C | /.../Paramedic 12/Paramedic #2 | 11/29/12  8:30 | <system> |
| sSwing (SSW) | 12/05/2012 | C | /.../Engine 12 PAU/Paramedic | 11/20/12  23:04 | McDonough,P |
| sSwing (SSW) | 12/07/2012 | C | /.../Paramedic 12/Paramedic #1 | 12/07/12  6:18 | L'Heureux,R |
| sSwing (SSW) | 12/09/2012 | C | /.../Paramedic 12/Paramedic #2 | 11/20/12  23:38 | McDonough,P |
| sSwing (SSW) | 12/13/2012 | C | /.../Paramedic 07/Paramedic #1 | 12/11/12  18:04 | Bathe,W |
| sSwing (SSW) | 12/20/2012 | C | /.../Paramedic 12/Paramedic #1 | 12/11/12  10:56 | McDonough,P |
| sSwing (SSW) | 12/22/2012 | C | /.../Paramedic 12/Paramedic #1 | 12/11/12  10:59 | McDonough,P |
| sSwing (SSW) | 12/24/2012 | C | /.../Paramedic 12/Paramedic #1 | 12/13/12  14:11 | Carlton,J |
| sSwing (SSW) | 12/26/2012 | C | /.../Paramedic 12/Paramedic #1 | 12/13/12  14:22 | Carlton,J |
| sSwing (SSW) | 01/04/2013 | C | /.../Engine 12 PAU/Paramedic | 12/28/12  17:49 | L'Heureux,R |
| sSwing (SSW) | 01/06/2013 | C | /.../Engine 12 PAU/Paramedic | 01/05/13  19:21 | Wuerfel,V |
| sSwing (SSW) | 01/08/2013 | C | /.../Paramedic 04/Paramedic #1 | 01/08/13  4:13 | Wuerfel,V |
| sSwing (SSW) | 01/12/2013 | C | /.../Paramedic 20/Paramedic #2 | 01/10/13  18:33 | L'Heureux,R |
| sSwing (SSW) | 01/19/2013 | C | /.../Paramedic 12/Paramedic #2 | 01/12/13  11:35 | McDonough,P |
| sSwing (SSW) | 01/21/2013 | C | /.../Paramedic 12/Paramedic #2 | 01/21/13  6:57 | McDonough,P |
| sSwing (SSW) | 01/23/2013 | C | /.../Engine 03/Firefighter #2 | 01/23/13  6:16 | L'Heureux,R |
| sActing (SACT) | 01/25/2013 | C | /.../Engine 19 PAU/Firefighter #-3 | 01/25/13  6:38 | Wuerfel,V |
| sSwing (SSW) | 01/27/2013 | C | /.../Engine 12 PAU/Paramedic | 01/26/13  20:22 | Bathe,W |
| sSwing (SSW) | 01/27/2013 | C | /.../Engine 12 PAU/Paramedic | 01/27/13  6:46 | Wuerfel,V |
| sSwing (SSW) | 02/03/2013 | C | /.../Engine 12 PAU/Paramedic | 02/03/13  4:54 | Wuerfel,V |
| sSwing (SSW) | 02/05/2013 | C | /.../Engine 12 PAU/Paramedic | 02/05/13  6:07 | Wuerfel,V |
| sSwing (SSW) | 02/05/2013 | C | /.../Engine 05/Paramedic #-1 | 02/05/13  6:33 | Wuerfel,V |
| sSwing (SSW) | 02/07/2013 | C | /.../Engine 05/Paramedic #-1 | 02/07/13  4:33 | Wuerfel,V |
| sSwing (SSW) | 02/09/2013 | C | /.../Engine 12 PAU/Paramedic | 02/08/13  5:07 | McDonough,P |
| sSwing (SSW) | 02/11/2013 | C | /.../Paramedic 20/Paramedic #2 | 02/09/13  20:32 | L'Heureux,R |
| sSwing (SSW) | 02/18/2013 | C | /.../Paramedic 01 HM/Paramedic #1 | 02/18/13  18:25 | <system> |
| sSwing (SSW) | 02/20/2013 | C | /.../Paramedic 01 HM/Paramedic #2 | 02/18/13  18:56 | L'Heureux,R |
| sSwing (SSW) | 02/22/2013 | C | /.../Paramedic 01 HM/Paramedic #2 | 02/20/13  17:43 | L'Heureux,R |
| sSwing (SSW) | 02/24/2013 | C | /.../Paramedic 03/Paramedic #1 | 02/24/13  6:25 | L'Heureux,R |
| sSwing (SSW) | 02/24/2013 | C | /.../Paramedic 01 HM/Paramedic #2 | 02/22/13  18:14 | Bathe,W |
| sSwing (SSW) | 02/26/2013 | C | /.../Engine 12 PAU/Firefighter #1 | 02/26/13  6:28 | L'Heureux,R |

COT002355

| | | | | | | |
|---|---|---|---|---|---|---|
| sSwing (SSW) | 03/05/2013 | C | /.../Paramedic 20/Paramedic #2 | | 02/26/13  18:29 | L'Heureux,R |
| sSwing (SSW) | 03/07/2013 | C | /.../Paramedic 12/Paramedic #2 | | 03/07/13  6:56 | L'Heureux,R |
| sSwing (SSW) | 03/07/2013 | C | /.../Engine 05/Paramedic #-1 | | 03/07/13  6:57 | L'Heureux,R |
| sSwing (SSW) | 03/09/2013 | C | /.../Paramedic 20/Paramedic #2 | | 03/07/13  19:01 | L'Heureux,R |
| sSwing (SSW) | 03/11/2013 | C | /.../Rescue 01/Paramedic | | 03/11/13  19:30 | L'Heureux,R |
| sSwing (SSW) | 03/13/2013 | C | /.../Paramedic 12/Paramedic #2 | | 03/11/13  19:50 | L'Heureux,R |
| sSwing (SSW) | 03/22/2013 | C | /.../Engine 06 PAU/Firefighter #-2 | | 03/20/13  18:29 | Munoz,V |
| sSwing (SSW) | 03/24/2013 | C | /.../Engine 06 PAU/Paramedic | | 03/23/13  19:06 | L'Heureux,R |
| sCanx Leave (SCX) | 03/26/2013 | C | | | 03/13/13  9:20 | Bathe,W |
| sSwing (SSW) | 03/26/2013 | C | /.../Engine 06 PAU/Paramedic | | 03/24/13  18:35 | L'Heureux,R |
| sSwing (SSW) | 03/28/2013 | C | /.../Engine 06 PAU/Paramedic | | 03/26/13  18:17 | L'Heureux,R |
| sSwing (SSW) | 04/04/2013 | C | /.../Engine 06 PAU/Paramedic | | 03/28/13  18:49 | L'Heureux,R |
| sSwing (SSW) | 04/06/2013 | C | /.../Engine 06 PAU/Paramedic | | 04/04/13  18:33 | L'Heureux,R |
| sCanx Leave (SCX) | 04/08/2013 | C | | | 03/14/13  6:38 | Munoz,V |
| sSwing (SSW) | 04/08/2013 | C | /.../Engine 06 PAU/Paramedic | | 04/06/13  19:15 | L'Heureux,R |
| sSwing (SSW) | 04/10/2013 | C | /.../Engine 06 PAU/Paramedic | | 04/08/13  18:16 | <system> |
| sVacation AM (SVAM) | 04/10/2013 | C | Bezel,J(SEDOT) | | 04/03/13  7:45 | Clark,C |
| sSwing (SSW) | 04/12/2013 | C | /.../Engine 06 PAU/Paramedic | | 04/10/13  18:22 | L'Heureux,R |
| sSwing (SSW) | 04/19/2013 | C | /.../Engine 06 PAU/Paramedic | | 04/12/13  9:22 | Nofs,T |
| sSwing (SSW) | 04/21/2013 | C | /.../Engine 06 PAU/Paramedic | | 04/12/13  9:24 | Nofs,T |
| sSwing (SSW) | 04/23/2013 | C | /.../Engine 06 PAU/Paramedic | | 04/12/13  9:25 | Nofs,T |
| sSwing (SSW) | 04/23/2013 | C | /.../Engine 06 PAU/Paramedic | | 04/12/13  9:25 | Nofs,T |
| sSwing (SSW) | 04/25/2013 | C | /.../Engine 06 PAU/Paramedic | | 04/25/13  6:11 | <system> |
| sVacation AM (SVAM) | 04/25/2013 | C | Wintrode,M(SSW) | | 03/14/13  6:40 | Munoz,V |
| sSwing (SSW) | 04/27/2013 | C | /.../Engine 06 PAU/Paramedic | | 04/12/13  9:28 | Nofs,T |
| sSwing (SSW) | 05/04/2013 | C | /.../Engine 06 PAU/Paramedic | | 04/27/13  6:53 | Nofs,T |
| sSwing (SSW) | 05/06/2013 | C | /.../Engine 06 PAU/Paramedic | | 04/27/13  6:56 | Nofs,T |
| sSwing (SSW) | 05/08/2013 | C | /.../Engine 06 PAU/Paramedic | | 05/06/13  17:59 | L'Heureux,R |
| sVacation AM (SVAM) | 05/08/2013 | C | | | 04/08/13  9:58 | Munoz,V |
| sSwing (SSW) | 05/10/2013 | C | /.../Engine 06 PAU/Paramedic | | 04/27/13  7:01 | Nofs,T |
| sSwing (SSW) | 05/12/2013 | C | /.../Engine 06 PAU/Paramedic | | 05/10/13  14:53 | <system> |
| sVacation AM (SVAM) | 05/12/2013 | C | Bezel,J(SEDOT) | | 10/23/12  20:33 | Munoz,V |
| sSwing (SSW) | 05/19/2013 | C | /.../Engine 06 PAU/Paramedic | | 05/10/13  14:56 | Nofs,T |
| sSwing (SSW) | 05/21/2013 | C | /.../Engine 06 PAU/Paramedic | | 05/10/13  15:17 | Nofs,T |
| sSwing (SSW) | 05/23/2013 | C | /.../Engine 06 PAU/Paramedic | | 05/10/13  15:19 | Nofs,T |
| sSwing (SSW) | 05/23/2013 | C | /.../Engine 06 PAU/Paramedic | | 05/10/13  15:19 | Nofs,T |
| sCanx Leave (SCX) | 05/25/2013 | C | | | 11/08/12  13:15 | Munoz,V |
| sSwing (SSW) | 05/25/2013 | C | /.../Engine 06 PAU/Paramedic | | 05/23/13  18:31 | L'Heureux,R |
| sSwing (SSW) | 05/27/2013 | C | /.../Engine 06 PAU/Paramedic | | 05/10/13  15:22 | Nofs,T |
| sWork Trade 24 (SWT24) | 06/01/2013 | B | /.../Engine 19 PAU/Paramedic #-1 | | 02/27/13  8:08 | Clark,C |
| sSwing (SSW) | 06/03/2013 | C | /.../Engine 06 PAU/Paramedic | | 05/27/13  10:43 | Nofs,T |
| sSwing (SSW) | 06/05/2013 | C | /.../Engine 06 PAU/Paramedic | | 06/03/13  19:24 | <system> |
| sVacation AM (SVAM) | 06/05/2013 | C | Dilic,H(SEDOT) | | 03/14/13  6:43 | Clark,C |

COT002356

| | | | | | | |
|---|---|---|---|---|---|---|
| sSwing (SSW) | 06/07/2013 | C | /.../Engine 06 PAU/Paramedic | | 05/27/13 10:46 | Nofs,T |
| sSwing (SSW) | 06/07/2013 | C | /.../Engine 06 PAU/Paramedic | | 05/27/13 10:47 | Nofs,T |
| sCanx Leave (SCX) | 06/09/2013 | C | | | 10/23/12 20:01 | Grimes,J |
| sSwing (SSW) | 06/09/2013 | C | /.../Engine 06 PAU/Paramedic | | 06/08/13 18:22 | Bathe,W |
| sSwing (SSW) | 06/11/2013 | C | /.../Engine 06 PAU/Paramedic | | 05/27/13 10:48 | Nofs,T |
| sAlternate Vac List (SAVL) | 06/18/2013 | C | | | 06/16/13 20:55 | Clark,C |
| sCanx Leave (SCX) | 06/18/2013 | C | | | 06/05/13 17:29 | Munoz,V |
| sSwing (SSW) | 06/18/2013 | C | /.../Engine 06 PAU/Paramedic | | 06/11/13 13:18 | Nofs,T |
| sCanx Leave (SCX) | 06/20/2013 | C | | | 06/14/13 9:28 | Munoz,V |
| sSwing (SSW) | 06/20/2013 | C | /.../Engine 06 PAU/Paramedic | | 06/19/13 9:16 | Munoz,V |
| sSwing (SSW) | 06/22/2013 | C | /.../Engine 06 PAU/Paramedic | | 06/11/13 13:20 | Nofs,T |
| sSwing (SSW) | 06/22/2013 | C | /.../Engine 06 PAU/Paramedic | | 06/11/13 13:21 | Nofs,T |
| sCanx Leave (SCX) | 06/24/2013 | C | | | 06/17/13 12:24 | Grimes,J |
| sSwing (SSW) | 06/24/2013 | C | /.../Engine 06 PAU/Paramedic | | 06/11/13 13:21 | Nofs,T |
| sAlternate Vac List (SAVL) | 06/26/2013 | C | | | 06/13/13 13:01 | Clark,C |
| sSwing (SSW) | 06/26/2013 | C | /.../Engine 06 PAU/Paramedic | | 06/11/13 13:22 | <system> |
| sTake Trade am (STTAM) | 06/26/2013 | C | Noble Jr.,B(SWTAM) | | 06/24/13 9:16 | Clark,C |
| sCanx Leave (SCX) | 07/03/2013 | C | | | 06/13/13 13:02 | Wuerfel,V |
| sSwing (SSW) | 07/03/2013 | C | /.../Engine 06 PAU/Paramedic | | 06/26/13 15:29 | Nofs,T |
| sSwing (SSW) | 07/05/2013 | C | /.../Engine 06 PAU/Paramedic | | 06/26/13 15:30 | Nofs,T |
| sSwing (SSW) | 07/07/2013 | C | /.../Engine 06 PAU/Paramedic | | 06/26/13 15:32 | Nofs,T |
| sSwing (SSW) | 07/07/2013 | C | /.../Engine 06 PAU/Paramedic | | 06/26/13 15:32 | Nofs,T |
| sSwing (SSW) | 07/09/2013 | C | /.../Engine 06 PAU/Paramedic | | 06/26/13 15:34 | Nofs,T |
| sSwing (SSW) | 07/11/2013 | C | /.../Engine 06 PAU/Paramedic | | 06/26/13 15:35 | Nofs,T |
| sSwing (SSW) | 07/18/2013 | C | /.../Engine 06 PAU/Paramedic | | 07/11/13 9:01 | Nofs,T |
| sSwing (SSW) | 07/20/2013 | C | /.../Engine 06 PAU/Paramedic | | 07/18/13 10:18 | <system> |
| sVacation AM (SVAM) | 07/20/2013 | C | Contreras,R(SEDOT) | | 10/23/12 19:02 | Munoz,V |
| sSwing (SSW) | 07/22/2013 | C | /.../Engine 06 PAU/Paramedic | | 07/11/13 9:02 | Nofs,T |
| sSwing (SSW) | 07/22/2013 | C | /.../Engine 06 PAU/Paramedic | | 07/11/13 9:03 | Nofs,T |
| sSwing (SSW) | 07/24/2013 | C | /.../Engine 06 PAU/Paramedic | | 07/22/13 18:02 | <system> |
| sVacation AM (SVAM) | 07/24/2013 | C | Vail,E(SEDOT) | | 06/13/13 13:02 | Munoz,V |
| sSwing (SSW) | 07/26/2013 | C | /.../Engine 06 PAU/Paramedic | | 07/11/13 9:04 | Nofs,T |
| sWork Trade PM (SWTPM) | 08/01/2013 | A | /.../Engine 06 PAU/Paramedic | | 05/11/13 9:48 | Clark,C |
| sSwing (SSW) | 08/02/2013 | C | /.../Engine 06 PAU/Paramedic | | 07/26/13 17:17 | Nofs,T |
| sSwing (SSW) | 08/04/2013 | C | /.../Engine 06 PAU/Paramedic | | 07/26/13 17:18 | Nofs,T |
| sSwing (SSW) | 08/06/2013 | C | /.../Engine 06 PAU/Paramedic | | 07/26/13 17:18 | Nofs,T |
| sSwing (SSW) | 08/06/2013 | C | /.../Engine 06 PAU/Paramedic | | 07/26/13 17:19 | Nofs,T |
| sSwing (SSW) | 08/08/2013 | C | /.../Engine 06 PAU/Paramedic | | 07/26/13 17:19 | Nofs,T |
| sSwing (SSW) | 08/10/2013 | C | /.../Engine 06 PAU/Paramedic | | 07/26/13 17:20 | Nofs,T |
| sSwing (SSW) | 08/17/2013 | C | /.../Engine 06 PAU/Paramedic | | 07/26/13 17:21 | Nofs,T |
| sSwing (SSW) | 08/19/2013 | C | /.../Engine 06 PAU/Paramedic | | 08/17/13 14:57 | Nofs,T |
| sSwing (SSW) | 08/21/2013 | C | /.../Engine 06 PAU/Paramedic | | 08/20/13 11:53 | Munoz,V |
| sVacation AM (SVAM) | 08/21/2013 | C | | | 06/05/13 17:30 | Munoz,V |

COT002357

| | | | | | | |
|---|---|---|---|---|---|---|
| sSwing (SSW) | 08/23/2013 | C | /.../Engine 06 PAU/Paramedic | | 08/21/13  10:17 | Nofs,T |
| sSwing (SSW) | 08/25/2013 | C | /.../Engine 06 PAU/Paramedic | | 08/21/13  11:12 | Nofs,T |
| aREGULAR PAY (.) | 09/01/2013 | C | /.../Engine 06 PAU/Paramedic | | 09/02/13  8:30 | <system> |
| aREGULAR PAY (.) | 09/03/2013 | C | /.../Engine 06 PAU/Paramedic | | 09/04/13  8:30 | <system> |
| aREGULAR PAY (.) | 09/05/2013 | C | /.../Engine 06 PAU/Paramedic | | 09/06/13  8:30 | <system> |
| aREGULAR PAY (.) | 09/07/2013 | C | /.../Engine 06 PAU/Paramedic | | 09/08/13  8:30 | <system> |
| aREGULAR PAY (.) | 09/09/2013 | C | /.../Engine 06 PAU/Paramedic | | 09/10/13  8:30 | <system> |
| aREGULAR PAY (.) | 09/16/2013 | C | /.../Engine 06 PAU/Paramedic | | 09/17/13  8:30 | <system> |
| aREGULAR PAY (.) | 09/18/2013 | C | /.../Engine 06 PAU/Paramedic | | 09/19/13  8:30 | <system> |
| sVacation AM (SVAM) | 09/18/2013 | C | Delfs,L(SEDOT) | | 06/05/13  17:30 | Clark,C |
| aREGULAR PAY (.) | 09/20/2013 | C | /.../Engine 06 PAU/Paramedic | | 09/21/13  8:30 | <system> |
| aREGULAR PAY (.) | 09/22/2013 | C | /.../Engine 06 PAU/Paramedic | | 09/23/13  8:30 | <system> |
| aREGULAR PAY (.) | 09/24/2013 | C | /.../Engine 06 PAU/Paramedic | | 09/25/13  8:30 | <system> |
| aREGULAR PAY (.) | 10/01/2013 | C | /.../Engine 06 PAU/Paramedic | | 10/02/13  8:30 | <system> |
| aREGULAR PAY (.) | 10/03/2013 | C | /.../Engine 06 PAU/Paramedic | | 10/04/13  8:30 | <system> |
| aREGULAR PAY (.) | 10/05/2013 | C | /.../Engine 06 PAU/Paramedic | | 10/06/13  8:30 | <system> |
| aREGULAR PAY (.) | 10/07/2013 | C | /.../Engine 06 PAU/Paramedic | | 10/08/13  8:30 | <system> |
| aREGULAR PAY (.) | 10/09/2013 | C | /.../Engine 06 PAU/Paramedic | | 10/10/13  8:30 | <system> |
| sVacation AM (SVAM) | 10/09/2013 | C | Nostrant,B(SEDOT) | | 06/13/13  13:32 | Munoz,V |
| aREGULAR PAY (.) | 10/16/2013 | C | /.../Engine 06 PAU/Paramedic | | 10/17/13  8:30 | <system> |
| sCanx Leave (SCX) | 10/16/2013 | C | | | 06/13/13  13:32 | Munoz,V |
| sVacation AM (SVAM) | 10/16/2013 | C | Larkin,T(SEDOT) | | 10/08/13  19:36 | Clark,C |
| aREGULAR PAY (.) | 10/18/2013 | C | /.../Engine 06 PAU/Paramedic | | 10/19/13  8:30 | <system> |
| aREGULAR PAY (.) | 10/20/2013 | C | /.../Engine 06 PAU/Paramedic | | 10/21/13  8:30 | <system> |
| aREGULAR PAY (.) | 10/22/2013 | C | /.../Engine 06 PAU/Paramedic | | 10/23/13  8:30 | <system> |
| aREGULAR PAY (.) | 10/24/2013 | C | /.../Engine 06 PAU/Paramedic | | 10/25/13  8:30 | <system> |
| sWork Trade 24 (SWT24) | 10/27/2013 | B | /.../Engine 06 PAU/Paramedic | | 10/06/13  18:10 | Clark,C |
| sVacation 24 (SV24) | 10/31/2013 | C | Neva,B(SSW) | | 10/23/12  18:34 | Clark,C |
| | | | | | | |
| | aREGULAR PA | 540.00 | Created | | | |
| | sActing (SACT | 12.00 | Created | | | |
| | sAlternate Vac | 216.00 | Created | | | |
| | sCanx Leave ( | 336.00 | Created | | | |
| | sFamily Med S | 128.50 | Created | | | |
| | sPersonal Lea | 24.00 | Created | | | |
| | sPersonal Lea | 12.00 | Created | | | |
| | sSick Leave 24 | 87.50 | Created | | | |
| | sSick Leave pr | 12.00 | Created | | | |
| | sSwing (SSW) | 1,976.00 | Created | | | |
| | sTake Trade a | 12.00 | Created | | | |
| | sVacation 24 ( | 48.00 | Created | | | |
| | sVacation AM | 244.00 | Created | | | |
| | sVacation pm | 48.00 | Created | | | |

COT002358

| | sWork Trade 2 | 48.00 | Created | | |
|---|---|---|---|---|---|
| | sWork Trade F | 12.00 | Created | | |

COT002359

# EXHIBIT 24



# MEMORANDUM

**DATE:** May 13, 2013

**TO:** Robert Barton
Program Manager
Office of Equal Opportunity

**FROM:** Jim Critchley
Fire Chief
Tucson Fire Department

**SUBJECT:** Response to Complaint Filed by Paramedic Carrie Clark

Tucson Fire has equipped all its stations with a location that can be used as a nursing room, pursuant to PPACA requirements. As a part of the review your office conducted with TFD's HR Manager, the following stations were not in compliance. This has been corrected.

Fire 3- All dorm rooms
Fire 9- Study Room
Fire 10-Study Room
Fire 12-Study Room
Fire 18- Rooms 11, 12, 13, & 1
Fire 19-Rooms 7, 8, 10, 13, 15, & 16
Fire 20-Room 103
Fire 21-Room 103
Fire 22-Room 123

Furthermore, a process has been implemented where employees needing these special accommodations can submit a request via the TFD HR office. A list of stations identifying the room or rooms is available for review.

If you have additional questions or concerns, please feel free to contact me.

JC/JA/bcs

c: Karen Tenace, Fire Administrator
JoAnn Acedo, TFD HR Manager

# EXHIBIT 25



# MEMORANDUM

DATE:     08/08/2013

TO:   JoAnn Acedo              FROM:    Michael Fischback
      HR Manager                        Deputy Chief
      Tucson Fire                       TFD Logistics

SUBJECT:       Tucson Fire Depatrment Charge of Discrimination Response

In response to Charge of Discrimination # T001201300048635A-2013-00456C:

G. On March 20th, I received a call From Paramedic Clark concerning her swing assignment for
that evening, Station 9. She had concerns that Station 9 was not properly equipped with a room
for expressing breast milk. I asked Deputy Chief Rodriguez and HR Manager Ms. Acedo to be
present for the discussion. Ms. Acedo had a list of stations that had met the requirements for
expressing breast milk (as determined by an OEOP visit to each station), and while station 9 met
the requirements, Deputy Chief Rodriguez and myself agreed that it would be better to find
another station.

During the conversation, Paramedic Clark stated that she had twice put a medic truck out of
service to be able to express milk. She claimed she had the approval of her chief officer to do
this. This caused concern for me and Chief Rodriguez. Twice during our conversation with
Paramedic Clark, she hung up on us. Additionally, on several occasions during the conversation,
Paramedic Clark would become frustrated and cry out "are you out of your friggin minds?" Each
time she hung up on us, we called her back to try to resolve the situation.
After discussion, the decision was made to assign Paramedic Clark to Engine 6. Station 6 met the
requirements needed for expressing milk, had a Paramedic opening, and had a Paramedic
Captain (which meant that, while not optimal, Engine 6 could run a call without Paramedic Clark
if she were temporarily unavailable). This way, the rig would not have to be placed out of
service. Paramedic Clark has since requested to be able to stay at Station 6 longer than her initial
temporary assignment.

H. Due to her unprofessional behavior during the conversation on March 20th, I gave Paramedic
Clark a Verbal Counseling on March 26th, with Deputy Chiefs Nied and Rodriguez present and
Sloan Tamietti (Paramedic Clark's griever). A Verbal Counseling is non-formal discipline.
During the counseling, Paramedic Clark inquired as to why she could not be assigned to Station
12. I told her that after a complaint was filed with the OEOP, a site visit by OEOP determined
that Station 12 was currently not compliant for expressing milk, and that it was not an option.
Paramedic Clark was quick to point out that she had not filed an official complaint. I apologized
to her for inferring that she had, but the point remained valid. OEOP was notified by Paramedic
Clark that some stations did not have private rooms available, and OEOP did station visits to
determine which did meet standards and which did not meet standards. At that time, station 12
was on the list that did not meet standards.

COT002149

# EXHIBIT 26



**TUCSON FIRE DEPARTMENT**

## Employee Counseling Form

| Employee Information | | |
|---|---|---|
| Employee Name: Carrie Clark | Date: | 3/26/2013 |
| Employee ID: 48179 | Job Title: | Paramedic |
| Supervisor: | Department: | 3022 |

| Type of Counseling | |
|---|---|
| ☐ Educational Counseling | ☒ Verbal Counseling |

| Type of Offense | | |
|---|---|---|
| ☐ Tardiness/Leaving Early | ☐ Substandard Work | ☐ Violation of Directive or Policy |
| ☐ Absenteeism | ☐ Abusive Language | ☐ Disregarding Dress Code Standards |
| ☐ Unexcused Absence | ☒ Inappropriate Conduct | ☒ Rudeness to Citizens/Co-workers |
| ☐ Other: | | |

### Details

**Description of Infraction (list specific issue that requires counseling):**

On March 20th, while discussing station assignment options with Sr. staff members (Chiefs Fischback and Rodriguez, and HR Manager JoAnn Acedo), you exhibited inappropriate and rude behavior that is unprofessional and not acceptable by TFD standards. On two occasions you hung up the phone while staff was still talking to you, and on several occasions you referred to Sr. staff as being "out of" their "friggin minds." While it is understandable that issues can become very frustrating at times, TFD is a structured organization, and professionalism with all members is expected at all times.

**Expectations and Plan for Improvement:**

It is expected that you will be professional at all times while conducting department business with TFD personnel.

**Consequences of further infractions or if expectations are not met (include follow-up dates, if applicable):**

Failure to comply with this counseling may result in progressive discipline.

### Acknowledgement of Receipt of Counseling

*By signing this form, you confirm that you understand the information in this counseling. You also confirm that you and your supervisor have discussed the issue and a plan for improvement. Signing this form does not indicate that you agree with this action but that you have been advised.*

Employee Signature                                      Date  3/26/13

Supervisor's Signature                                  Date

Appendix C

COT002065

# EXHIBIT 27

1  Michelle R. Saavedra
   Michael W.L. McCrory
2  Principal Assistant City Attorneys for
   MICHAEL G. RANKIN
3  City Attorney
   P.O. Box 27210
   Tucson, AZ 85726-7210
4  Michelle.Saavedra@tucsonaz.gov
   State Bar No. 25728
5  Pima County Computer No. 66163
   Michael.McCrory@tucsonaz.gov
6  State Bar Computer No. 3899
   Pima County Computer No. 37268
   Telephone: (520) 791-4221
7  Fax: (520) 623-9803
   *Attorneys for Defendant City of Tucson*

8

9                        **IN THE UNITED STATES DISTRICT COURT**

10                         **FOR THE DISTRICT OF ARIZONA**

11  CARRIE FERRARA CLARK,                    No.  4:14-CV-02543-TUC-CKJ

12             Plaintiff,                     **DECLARATION OF**
                                             **"TED" (EDWARD JAMES**
13  vs.                                      **MCDONOUGH III)**

14  CITY OF TUCSON,
                                             (Hon. Cindy Jorgenson)
15             Defendant.

16

17        Pursuant to 28 U.S.C. §1746, I, "Ted" (Edward James McDonough III), declare and

18  state as follows:

19        1.    I make this Declaration based on my personal knowledge.

20        2.    I have been employed at the Tucson Fire Department ("TFD") since

21  September, 1989 and have held the rank of Captain since February, 2004 and have been

22  the Captain for "C" shift at Station 6 since 2013 (assigned to Fire Station 17 now).  As the

23  shift captain, I am the first line supervisor of the shift personnel.

24        3.    I am also certified as a paramedic and have been certified since January,

25  1995.

26        4.    Carrie Clark ("Clark") was assigned to Station 6 to the Paramedic

27  Assessment Unit ("PAU") on or about March 22, 2013, as a temporary assignment while

1   she was expressing milk.  Station 6 had a private dorm room for each assigned member.

2   Prior to Clark coming to the new assignment, a lock was installed on the dorm room she

3   was going to use.

4        5.     Clark had greater seniority than the firefighter who was in the position when

5   she was assigned.   Clark retained her paramedic certification and functioned as a

6   paramedic while assigned to Station 6.  Although the position was for a firefighter before

7   Clark's assignment, it was reclassified to be a Firefighter/Paramedic position after she was

8   assigned.

9        6.     I was told by Chief Rodriguez that I was to use my discretion in handling

10  calls if Clark was not available due to the need to express milk.

11       7.     At the time Clark was assigned to Station 6 in March, 2013, I was not aware

12  that she had made any report to any agency regarding her right to express milk, the

13  adequacy of TFD stations or any claim of discrimination.

14       8.     I was not aware of anyone on my shift at Station 6 who harassed Clark about

15  her need to express milk and I would have taken action against anyone who did so.  I am

16  not aware of any problems that Clark had while at Station 6 regarding her need to express

17  milk other than her one report that she was being mocked when the new nursing room

18  policy was put out by TFD.  At that time she did not identify any specific person who had

19  mocked her and did not want the matter pursued.

20       9.     I do not personally know how long Clark continued to express milk from

21  when she was assigned in March 2013 to when she went on light duty for her second

22  pregnancy in June, 2014, other than the fact that she remained at the PAU position in

23  Station 6 for that time period.

24       10.    In May 2014, Clark was in her second pregnancy and obviously showing.

25  This raised concerns that she might have difficulty managing the Personal Protective

26  Equipment ("PPE") which includes a turnout jacket.   The turnouts are sized for the

27  individual and her increased waist size made it difficult for her turnout to be fully closed in

28  front.  Full closure of the turnout is essentially to provide the protection from fire, heat and

1   exposure during an emergency.  On several occasions I observed that Clark was having

2   trouble completely securing her turnout over her expanded waistline.  There were also

3   concerns that due to her condition, she might not be able to handle the physical

4   requirements of her job in an emergency situation.  I expressed these concerns to Chief

5   Nofs and continued to monitor her situation.  My sole concerns were her physical safety,

6   the safety of the crew and complying with the law.

7        11.    I have known of and supervised other women when they were pregnant.

8        12.    There were two incidents in May 2014, involving Clark's job performance.

9   One involved a response to a garbage truck fire where I observed that she was very slow in

10  donning her PPE in response to the call.  The second was a spontaneous drill I ordered.  In

11  that drill, I changed the scenario to one where the engineer injured his ankle getting out the

12  truck necessitating a change in everyone's duties.  The firefighter was assigned the duties

13  to manage the pumping that would have been performed by the engineer.  I did this

14  because the firefighter was in the process of pursuing engineer certification and I thought

15  the experience would help him prepare for an upcoming test.  I have done similar

16  spontaneous drills on other occasions and used varied scenarios to maintain the skill levels

17  of the crew.  It is particularly important to have firefighters drill with turnouts so that they

18  are used to working with them on.  If a firefighter or paramedic is not used to the turnout,

19  it could jeopardize that individual and the other members of the crew as well as the

20  effectiveness of response to an emergency.

21       13.    I was very concerned with Clark's response in the drill.  She left her hose

22  and left the scene obviously upset and crying.  I had to call two other supervisors to help

23  handle the situation.  I have never had someone just walk away from a drill before.  She

24  was not disciplined for those actions, although I believe discipline would have been

25  appropriate.  Clark was given an Educational Counseling about this incident and signed

26  the form.  This is not formal discipline, but "educational" only (addressed the performance

27  concerns).

28

14. About three weeks after the drill, Clark went on light duty and was no longer assigned to Station 6.

15. I did not know when Clark was at Station 6 that she had filed a claim with the Arizona Civil Rights Division or any other agency alleging discrimination and retaliation.

16. I did not take any employment action against Clark because of her pregnancy condition other than monitoring the safety concerns. I suggested at one point that for safety reasons, she use the reserve turnouts because there were bigger. I never told her she had to go on light duty, that she couldn't stay at Station 6 or that I didn't want her at Station 6.

17. I have reviewed the two attached memorandums dated May 22, 2014, marked as COT002019 and COT002020-21 and they are true and correct to the best of my recollection.

I state under penalty of perjury that the foregoing is true and correct.

Executed on May 12, 2017.

_____
"Ted" (Edward James McDonough III)



# MEMORANDUM

DATE: 12/15/11

**FROM:** Paul McDonough
Battalion Chief
Battalion 1, C-Shift

TO: Jim Critchley
Fire Chief
Tucson Fire Department

**SUBJECT:** **FINAL PROBATION INTERVIEW**

On **12/15/11, Carrie A. Clark** was interviewed for the position of **Paramedic**

The interview board consisted of:

> CHAIR: **Battalion Chief Paul McDonough**
> MEMBER: **Captain Edward Lopez**
> MEMBER: **Captain Richard L'Heureux**

The board found: Paramedic Carrie Clark to have a competent and proficient knowledge base. Additionally, the board noted her dedication as a Paramedic for the Tucson Fire Department.

Individual's performance was: ☒ SATISFACTORY ☐ UNSATISFACTORY

Reschedule Board: ☐ Yes ☒ No

Reschedule Date: **N/A**

Concurrence: _____

Assistant Chief

(Original to Human Resources Manager)

Form Rev. 03/26/2003

Promotional Interview

COT002020



**JCSON FIRE DEPARTMENT**
**PARAMEDIC**
**Performance Evaluation Form**

RECEIVED
AUG 2011

*(Instructions: Fill in text boxes first. Navigate between boxes by using the tab key or mouse. Fill in each check box. The spell check will work on the narrative field only.)* FIRE DEPT.

| Name: Carrie Clark | | Employee #: 48197 | | Date: 7/20/2011 |
|---|---|---|---|---|
| Annual: ☐  6-month Probation : ☒  Special: ☐ | | Period  From: 1-11  To: 7/11 | | |
| CEP Cert #: P-59455 | Expiration Date:  9—2012 | | CPR Exp. Date: 4/12 | |

CHECK THE APPROPRIATE BOX AFTER EACH OF THE FOLLOWING CATEGORIES

| | Excellent | Exceeds Standards | Meets Standards | Improvement Needed | Does Not Meet Standards |
|---|---|---|---|---|---|
| **1. GENERAL WORK HABITS** | ☐ | ☐ | ☒ | ☐ | ☐ |

Assignments are completed promptly, accurately and with minimal supervision. Apparatus and equipment are all properly maintained. Works well with others, completes tasks with minimal direction and carries out orders promptly. Is well groomed, properly dressed and wears uniforms that are neat and well maintained. Is able and willing to act up in a higher capacity when necessary. Works to enhance the quality of life within the community and the department through actions and words.

| | | | | | |
|---|---|---|---|---|---|
| **2. PHYSICAL FITNESS** | ☐ | ☐ | ☒ | ☐ | ☐ |

Maintains adequate level of fitness necessary to accomplish emergency and non-emergency activities as may be required of assigned rank and position. Participates in daily physical fitness activities.

| | | | | | |
|---|---|---|---|---|---|
| **3. SAFETY** | ☐ | ☐ | ☒ | ☐ | ☐ |

Employs safe working practices to ensure the health and well-being of themselves, their fellow firefighters and the members of the community. Follows safety policies and procedures established by the City of Tucson and Fire Department related to the driving of apparatus, use of tools and equipment and wearing of proper safety equipment during emergency and non-emergency operations to minimize risk to self, team and the community

| | | | | | |
|---|---|---|---|---|---|
| **4. KNOWLEDGE OF POLICIES AND PROCEDURES** | ☐ | ☐ | ☒ | ☐ | ☐ |

Has a general working knowledge of TFD manuals and is familiar with the policies and procedures contained therein. Maintains current knowledge of special emergencies and special equipment. Readily complies with the Tucson Fire Department and City of Tucson policies, procedures, and administrative directives.

| | | | | | |
|---|---|---|---|---|---|
| **5. GENERAL CONDUCT** | ☐ | ☐ | ☒ | ☐ | ☐ |

Conducts self in a professional manner at all times. Recognizes that the department and each of its members serves the community and citizens of Tucson. Is loyal to the profession and its principles and values. Represents the department in such a manner as to create positive community relations. Maintains a good attitude, displays enthusiasm, teamwork and dependability. Is punctual, reliable and conscientious in use of benefits. Is courteous and responsive when dealing with the public. Supports the mission and goals of the department as directed by the fire chief. Observes normal work hours.

fitness and nutrition at an optimal level. Thank you for the nutritional suggestions you have offered to the team when these discussion topics arise. Please let me know if there is anything I can do to assist you as I am one of the Department's Peer Fitness Trainers.
3. Safety - You wear appropriate protective equipment and safety gear when necessary to minimize the risk to everyone involved, and you take every opportunity to wash hands and prevent cross-contamination to other areas. You utilize the red top wipes, hand sanitizer and hand washing procedures during routine assignments and set the example for others to follow.
4. Knowledge of Policies and Procedures - You are very familiar with the policies, manuals and equipment and procedures expected by all members of this department. Remember to continue reviewing these things as you continue with your swing assignment.
5. General Conduct - You represent the department in a positive and professional manner, and you understand the importance of taking care of our customers and creating positive community relations with every interaction. You are loyal to the profession, and its principles and values, and your dedication in this area is greatly appreciated. You have a good attitude and fit in very well with the other members of the station and with completing tasks together as a team. Thank you for your commitment to this department and for honoring the values (professionalism, service, safety, teamwork, excellence and integrity) and the mission as expected of all members. You have been an asset to our team and a benefit to the community we serve.
6. Emergency Operations - Carrie, you understand and follow the administrative orders and radio procedures, and you take every opportunity to ensure we are doing what is right for our customers. Although we have not yet had any major non-EMS incidents during your assignment here, I am confident you will enthusiastically and competently complete assigned tasks in a timely manner both as a team and independently when necessary.
7. Records and Reports - You complete records, reports and all required paperwork in a timely manner. We switched to the new CityLearn this past year and you now are logged on and signed on to the system. Thank you for not hesitating to take care of this when asked about it.
8. Apparatus and Equipment - You arrive at work on time, perform the expected daily checks and maintain equipment to insure a high degree of readiness. You are thoroughly familiar with all advanced life support equipment, general EMS equipment and other tools and equipment assigned to medic 12, and you maintain a high level of expertise in operating that equipment.
9. Community Relations - This is the most important aspect of our job while conjunctively applying the expected values set forth by the Department. I appreciate your ability to cooperate and work as a team with others at the station, and for maintaining a caring and compassionate demeanor when dealing with our external customers. You interact well with others and exhibit genuine care and concern for injured or ill patients and their pets. Your compassionate nature goes one step further as you have served the community as a nurse for years in addition to volunteering at a local animal rescue organization. I received many phone calls from you on the PIO phone, during my assignment in that position, with offers to assist members of our community with the loss or injury of their animals. Your actions demonstrated your true compassionate nature for wanting to make a difference in the service we provide. Carrie, you represent the Department in a positive and professional manner and have been an asset to the team at Station 12. Thank you for your dedication and commitment to providing excellent service as part of a cooperative and enthusiastic team day in and day out.

*Discuss and confirm understanding of the following during the evaluation interview. Have employee place initials in space to the left of each policy.*

Has read and understands the department's drug and alcohol policy.
*(Manual of Operations, Section 211, Drug and Alcohol Policy)*
Has read and understands the internet use agreement and email policy.
*(COT Administrative Directive 1.08-4, Use of City Electronic Communication Systems)*
Is thoroughly familiar with the driving safety policy as well as applicable Arizona State Law.

COT002019