Michelle R. Saavedra
Michael W.L. McCrory
Principal Assistant City Attorneys for
MICHAEL G. RANKIN
City Attorney
P.O. Box 27210
Tucson, AZ 85726-7210
Michelle.Saavedra@tucsonaz.gov
State Bar No. 25728
Pima County Computer No. 66163
Michael.McCrory@tucsonaz.gov
State Bar Computer No. 3899
Pima County Computer No. 37268
Telephone: (520) 791-4221
Fax: (520) 623-9803
*Attorneys for Defendant City of Tucson*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| CARRIE FERRARA CLARK, | 4:14-cv-02543 |
| Plaintiff, | **DEFENDANT'S RESPONSE TO PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| CITY OF TUCSON, | (Hon. Cindy Jorgenson) |
| Defendant. | |

Defendant City of Tucson ("City") hereby responds to Plaintiff's Cross Motion for Summary Judgment (Doc. 117).

## I.    Summary of Disputed Facts

The City objects to the majority of Plaintiff's Separate Statement of Facts ("PSOF") as set forth in Defendant's Controverting Statement of Facts in Support of Its Response to Plaintiff's Cross Motion for Summary Judgment ("City's Controverting Facts"), filed contemporaneously with this Response.  This court should not consider those facts for the reasons stated therein.

The City disputes PSOF 17-18, 27-28, 30-31, 35, 56-57, 61-63, 67-68, 78, 91, 97, 99, 122, 125, 128-130, 139, 144-146, 151, 156, 158, and 160, for the reasons discussed in the City's Controverting Facts.  These disputes, however, do not create a genuine issue of material fact that would prohibit this court from finding in the City's favor as to all claims.

1

The City cites to irrefutable admissible evidence in support of each dispute, whereas Plaintiff relies solely on her self-serving declaration and allegations taken directly from her Third Amended Complaint ("TAC") with no citation to any admissible evidence in support thereof.

The only facts from the above listed that are not based on Plaintiff's self-serving declaration and/or the allegations from her TAC are PSOF 56-57, 68, and 158. (*See* City's Controverting Facts). PSOF 56-57 incorrectly states it was "five months after Plaintiff first complained of the lack of legally-compliant lactation facilities at TFD Stations" that EOPD looked into the situation. PSOF 68 is a mischaracterization of a memorandum. Lastly, under PSOF 158 Plaintiff claims a memorandum Chief Critchley authored contained reasons and rationale that differed from the Special Evaluation he provided to Gordon Clark, which is untrue.

This court should find in favor of the City for the reasons set forth in the City's Motion for Summary Judgment (Doc. 115) and herein reiterated.

## II.     The City's Response to Plaintiff's Legal Arguments.

### A.     Plaintiff has no claim under Section 207(r) of the Fair Labor Standards Act ("FLSA")

Plaintiff must show she lost wages as a result of the City's violation of FLSA § 207(r). She claims that she "was forced to use paid time off to cover what should have been unpaid break time" and "she was forced to work a significant number of additional hours that could have been substituted for paid time off, essentially receiving no wages or overtime for those hours." (*See* Doc. 117 at 4). These claims are conclusory, unintelligible, and unsupported by any admissible evidence. There is no such thing as "unpaid break time" for City employees. Plaintiff chose to take paid leave based upon her inaccurate belief that certain stations lacked a space for her to express milk in compliance with the law. Her mistake does not provide a legal or factual basis for a claim against the City.

Her claim is based solely on EOPD/OEOP investigator Matthew Larsen's findings. His findings, however, were not issued until March 22, 2013.  (*See* Doc. 118-1, Ex. R). Yet, Plaintiff claims she took paid leave because she was assigned to stations that were non-compliant with FLSA 207(r) from October 2012 to March 20, 2013.  (Doc. 117 at 3-4).  Her declaration refers to four stations she claims were non-compliant: Stations 3, 9, 19, and 20.  (*See* Doc. 118-1, ¶¶37, 38, 41, 46).  Stations 3, 19, and 20 had dorm rooms or a private room, respectively, just no locks on the doors.  (*Id*.; Doc. 118-1, Ex. Q).  Station 9 had dorm rooms with curtains and a study room with a window in the door, which could have been covered up.  (*Id*.; DSOF 49).  Plaintiff used paid leave on various occasions before she was even assigned to a station.  (*See* Doc. 118-1, ¶¶ 29-30, 40, 42-43).  There was no reason for her to use any leave because all stations were compliant with federal law and she was always paid for the break times she took to express milk.  She has not presented any admissible evidence to establish a prima facie case for damages under the FLSA § 207(r).  This is also addressed in the City's dispositive motion.  (*See* Doc. 115, Section III.A.1.).

Plaintiff cannot show the City violated FLSA § 207(r).  Her cross motion alleges the following as the bases for her claim: 1) she was assigned to swing shift when she returned to work after her first child's birth, 2) the City/TFD lacked a policy that set forth the law under FLSA, 3) the City's EOPD/OEOP investigator, Matthew Larsen, concluded that some stations were not in compliance with the law, and 5) she was "forced to expend vacation and sick leave" on various occasions between December 2012 and March 20, 2013, "[a]s a result of being assigned to stations that did not have legally-mandated lactation spaces."  (*See* Doc. 117 Section III.A.).

The irrefutable evidence shows she was assigned to swing shift in January 2012, after she completed her probation as a paramedic and before she went on leave for the birth of her first child.  (*See* DSOF 12, 13(a); Doc. 118-1, Ex. A2, ¶7).  She was not treated differently than any other employee when she was given the assignment, and the law does not require an employer to provide a nursing mother with preferential treatment.

3

1   (*See* Doc. 115, Section III.C.2.; FLSA 29 U.S.C § 207(r)).  Plaintiff fails to cite to any

2   authority to support her claim that TFD was required to have a specific policy that sets

3   forth the law under FLSA 29 U.S.C § 207(r), there is no such requirement.  The City/TFD

4   must comply with the law, and they did.

5       Plaintiff relies solely on EOPD/OEOP investigator, Matthew Larsen's, findings as

6   "proof" that the City violated FLSA § 207(r).  (*See* Doc. 115, Section III.A.2. at 6).  Mr.

7   Larsen, however, misapplied the law.  (*See* Doc. 118-1, Ex. Q).  He found that any station

8   that did not have a private room with a door that locks was not in compliance with federal

9   law.  (*Id.*).  The law does not require an employer provide a locked door, just a space other

10  than a bathroom, that is "shielded from view, and free from any intrusion."  (FLSA, 29

11  U.S.C. § 207(r)).  The law also requires an employer to provide reasonable break time to

12  express milk for one year after the child's birth.  (*Id.*).  Every station had a space available

13  that was in compliance and Plaintiff was never told she could not have time, or take

14  breaks as needed, to express milk.  (*Id.*; DSOF 50, 53).  Additionally, Plaintiff testified

15  she never went to a station where she had to use a bathroom to express milk.  (DSOF 51)

16      What Plaintiff presumed she was entitled to was a private dorm room at every

17  station.  (*See* DSOF 54).  That is not what the law requires. Plaintiff cannot prove the City

18  violated the FLSA § 207(r) and she cannot prove that she lost compensation as a result

19  thereof.

20      **B.   Plaintiff cannot present a prima facie case of sex discrimination under**

21          **Title VII, Pregnancy Discrimination Act ("PDA").**

22      Plaintiff alleges the City took various actions against her in violation of the

23  Pregnancy Discrimination Act ("PDA").   (Doc. 117 at 5-10).   The PDA prohibits

24  discrimination based on "pregnancy, childbirth, or related medical conditions."  42 U.S.C.

25  § 2000e(k).  Under the PDA, the City must treat Plaintiff "the same for all employment-

26  related purposes…as other persons not so affected but similar in their ability or inability to

27  work."  42 U.S.C. § 2000e(k).  "Under *McDonnell Douglas*, a plaintiff alleging disparate

28  treatment under Title VII must first establish a prima facie case of discrimination.

4

Specifically, the plaintiff must show that (1) [s]he belongs to a protected class; (2) [s]he was qualified for the position; (3) [s]he was subject to an adverse employment action; and (4) similarly situated individuals outside h[er] protected class were treated more favorably." *Chuang v. Univ. of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1123 (9th Cir. 2000)(internal citations omitted).

Plaintiff's cross motion alleges she was subjected to sex discrimination from October 2012 through August 2013. In summary, she claims the following are direct or circumstantial evidence of the discrimination: 1) TFD chose not to assign her to Station 20; 2) DC Nied and DC Rodriguez made comments to her when she asked to be assigned to Station 12 then denied her request and put it out to bid; 3) she was assigned to "non-compliant" stations; 4) Capt. L'Heureux made a comment to her husband regarding accommodating her; 5) TFD's HR Manager made comments to her during a phone call; 6) she was disciplined for using "colorful language;" 6) she was assigned to Station 6; 7) AC Fischback made a comment about her filing a complaint; and 8) the City did nothing when she complained about employees' use of the terms "Carrie Clause" or "Carrie Rule" when referring to the nursing policy. (Doc. 117 at 5-10).

Plaintiff's claim fails because her assignments were not discriminatory, they were based on legitimate business reasons, and the comments she refers to did not result in any adverse employment action. There is no dispute Plaintiff chose not to go to Station 20 because she wanted Station 12. (DSOF 18-19, 25; PSOF 10-11, 14-15, 19). She conceded that Paul McDonough was willing to put her at Station 20 until the end of the year. (City's Controverting Facts, Exhibit 70, pg. 53:19-21). Her first shift back she worked at Station 12. Her mother had to pick up expressed milk three times that day, and after that she decided she would rather work at Station 12, instead of Station 20. (*Id.*, pg. 53:22-54:18). Even though she remained on swing shift, she was mainly assigned to Station 12 until January 2013. (DSOF 44; PSOF 26). Station 12 was put out to bid and won prior to the department knowing about her and Paramedic Todd's requests. (DSOF 25). All stations were compliant with federal law and she admitted she never worked at a

station where she did not have an appropriate space to express milk.  (DSOF 50-51).
TFD's HR Manager JoAnn Acosta (Acedo) was not involved in Plaintiff's discipline for
using "colorful language" with her superiors.  (DSOF 66).  Plaintiff was assigned to
Station 6 because it was the best place for her considering her need to express milk and
the time it took to do so.  (*See* Doc. 115, Section III.C.5.).  AC Fischback immediately
apologized for his comment and no adverse action was taken as a result thereof.  (Doc.
115, Section III.C.2. at 14; DSOF 67).  Lastly, neither Plaintiff nor her husband wanted
the department to do anything about members using the terms "Carrie Clause" or "Carrie
Rule."  (Doc. 115, Section III.C.5. at 18; DSOF 85-89).  In fact, Plaintiff made it clear her
and her husband, Gordon Clark, did not consider it harassing and they did not want to
make a complaint; therefore she cannot now claim TFD discriminated against her when it
closed the investigation.  (*See* Doc. 118-2, Ex. FF, p. 12 of 179).

Plaintiff failed to present a prima facie case of sex discrimination under Title VII.
She did not show how each of the above listed constituted an adverse employment action,
and she did not present evidence that similarly situated individuals outside her protected
class were treated more favorably.  Even if she could meet her burden of establishing a
prima facie case, the City has presented admissible evidence showing each action was
taken for legitimate business reasons.  It is now Plaintiff's burden to present admissible
evidence to show the reasons provided are pre-textual.  She cannot do so.

C.     **Plaintiff was not subjected to a hostile environment constituting sex**
       **discrimination.**

Plaintiff claims she was subjected to a hostile environment because of her need to
express milk.  (DOC. 117 at 10-14).  Plaintiff must show the conduct was because of her
desire to express milk at work and that it was "severe or pervasive enough to create an
objectively hostile or abusive work environment."  *Harris v. Forklift Sys.*, Inc., 510 U.S.
17, 21 (1993).  "[W]hether an environment is 'hostile' or 'abusive' can be determined
only by looking at all the circumstances.  These may include the frequency of the
discriminatory conduct; its severity; whether it is physically threatening or humiliating, or

a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." (*Id*. 510 U.S. at 23).

Plaintiff's cross motion sets forth various actions, comments, or conduct that occurred over a 3 ½ year period, which she claims constitute a hostile work environment discrimination. (Doc. 117 at 10-14). Her motion, however, fails to present even a prima facie case of any hostile work environment.

### 1.     After the birth of her first child.

Plaintiff makes a sweeping conclusory statement that her "decision to express breast milk for her newborn son for the first year after his birth was questioned, derided, minimized, dismissed, and ridiculed at every turn." (*See* Doc. 117 at 11). She refers to numerous PSOF, most of which rely on her self-serving declaration, but she provides no explanation or argument as to why she believes they constitute a hostile work environment. (*Id*.). None of the conduct or actions she refers to rise to the level of "hostile" or "abusive." Even if this court believes they do, Plaintiff still fails to show that they affected her job performance, discouraged her from remaining on the job, or kept her from advancing in her career. *Harris v. Forklift Sysl, Inc.*, 510 U.S. 17, 21-22 (1993). The irrefutable evidence is contrary to her claim.

Plaintiff was allowed to work at Station 12 from October 2012 through January 2013. (DSOF 25, 44 & PSOF 26). All stations were compliant with federal law, she never worked at a station where she did not have an appropriate space to express milk, and she was never denied time to express milk. (DSOF 50-51, 53). She was assigned to Station 6 in March 2013, giving her a set station to work from thus alleviating any uncertainty of where she would be assigned. (DSOF 69-70). Station 6 is one of the slowest stations and the captain on her shift was also a medic. This provided her with relief from any interruption of expressing milk should an emergency call come in. (*Id*.). She liked Station 6 so much that she requested to remain there well beyond the one year after her first child's birth. (DSOF 85, 90). In fact, she remained there until June 16, 2014, when she requested to go on light duty due to her pregnancy with her second child.

(DSOF 104).   In June or July 2014, she competed for a position in Fire Prevention. (DSOF 114). A Paramedic may qualify for a lateral move to a Fire Inspector position after a written test and oral interview.   (*Id.*).   Plaintiff ranked first in the process and was laterally moved to a Fire Inspector position upon returning from maternity leave after the birth of her second child.   (*Id.*).

### 2.   After the birth of her second child.

Plaintiff alleges the hostile work environment discrimination "worsened" when she returned to work as a Fire Inspector.   (Doc. 117 at 11-14).   She bases this on the complaints various TFD members made in December 2014 and January 2015 regarding Captain Langejans ("Capt. Langejans").   (*Id.* at 11-13).   She claims the City/TFD "failed to take steps to prevent or promptly remedy the situation," and that she suffered adverse employment actions as result thereof.   (*Id.*).   The irrefutable admissible evidence disproves her claim.

It is undisputed TFD received complaints from members regarding Capt. Langejans in December 2014 and January 2015.   (DSOF 119-127).   Not all complaints related to Plaintiff.   (*Id.*).   TFD investigated all of the allegations and found there was no hostile work environment.   (DSOF 128-132, 135).   Capt. Langejans was disciplined for making inappropriate comments to his subordinates.   (DSOF 133).   Plaintiff testified it was a hostile work environment because both males and females were uncomfortable working around Langejans.   (DSOF 138).   She never heard Langejans make any gender specific comments and the only thing she said was gender specific hostility was him staring at her. (*Id.*).   The only comments she could attribute to Langejans were those she heard second hand from Inspectors Sisterman and Vincent.   (*Id.*).   Langejans did not supervise Plaintiff and he had no effect on her wages, benefits, evaluations, probation or schedule.   (DSOF 118, 140).

Plaintiff did not submit a complaint regarding Capt. Langejans until after TFD completed its investigation and she did so because she was not satisfied with TFD's disciplinary action against Capt. Langejans.   (DSOF 143).   Her complaint to EOPD was

thoroughly investigated.  (DSOF 144-148).  EOPD concluded there was no information to support a prima facie case of retaliation or discrimination under the City's Administrative Directive and the City Manager's Office concurred.  (DSOF 144, 149).  EOPD also concluded TFD was in violation of the City's nepotism policy, which the City Manager's Office agreed with and directed TFD to fix the violation.  (*Id.*, DSOF 152).  As a result of the nepotism findings, Gordon Clark and other TFD personnel where moved.  (DSOF 153-156).  Gordon Clark was moved back out to Operations in August 2015, which had been part of TFD's succession plan anyway.  (DSOF 156-157).

Seven months later, in March 2016, Plaintiff filed a wrongful conduct complaint alleging Capt. Langejans was harassing her.  (DSOF 166).  TFD investigated this complaint and found it to be unfounded.  (*See* Doc. 118-3, Ex. JJJ; DSOF 168-169).  Plaintiff was issued an educational counseling in March 2016, for reasons completely unrelated to her complaint or Capt. Langejans.  (*See* Doc. 118-3, Ex. III; DSOF 170-172).

There is no dispute, complaints were made about Capt. Langejans.  TFD, EOPD, and the City Manager's Office all looked into the complaints and responded to them.  (*See* Doc. 115, Section III.C.8.).  Plaintiff's cross motion did not present any admissible evidence to show Capt. Langejans' alleged harassment was due to her status as a nursing mother, nor did she present evidence to show his actions/conduct affected her job performance, discouraged her from remaining on the job, or kept her from advancing in her career.  *Harris, supra*.  Her claim for hostile work environment discrimination fails as a matter of law.

**D.**    **Plaintiff did not show a prima facie case under the *McDonnell Douglas* burden-shifting framework.**

Plaintiff dedicates a separate section in her cross motion to argue she has proven a prima facie case under the *McDonnel Douglas* burden-shifting analysis.  (Doc. 117, Section D at 14-15).  She argues she has presented a prima facie case because TFD has deviated from its Rules of Assignments for members in the past who were allegedly charged with criminal offenses, and TFD "prohibited" her assignment to Station 12

9

despite the fact that the only other nursing mother in TFD was assigned there.   (*Id.*).
There are several flaws to her reliance on these "facts" and her argument.

Plaintiff presents absolutely no evidence to support her claims regarding other TFD members.   She made this same claim to OEOP in January 2013, when Ms. Macias requested she provide documentation to support her allegations, she did not.   To date Plaintiff has provided no information to support her allegation.   (*See* Doc. 118-1, Ex. J at 108 or 194).   Even if true, this "fact" alone would not prove TFD discriminated against her because of the complaints regarding lactation spaces or as a result of her status as a nursing mother.

With respect to her claims relating to the "only other nursing mother in TFD," Arianne Phaneuf, she presents no admissible evidence this claim is even true.   Instead, she relies solely on her self-serving declaration with no reference to any admissible evidence. Even if true, Plaintiff presents nothing regarding Ms. Phaneuf's situation.   For instance, we do not know Arianne Phaneuf's position, her seniority in comparison to Plaintiff, whether she bid and won her position at Station 12, or how long she had been at that station.   On the other hand, we know Plaintiff was promoted to a paramedic position on January 2, 2011, and assigned to Station 4 for her probationary period.   (DSOF 14).   She went on light duty shortly before her one year probationary assignment at Station 4 was completed.   (DSOF 16).   She was assigned to swing shift as of January 2012, the end of her probationary period, and was temporarily assigned to light-duty while pregnant with her first child.   (*Id.*).   Her assignment to swing shift completing her probationary period as a paramedic in January 2012, was consistent with how all firefighter and paramedic assignments are made.   (DSOF 14).   When she returned to work after the birth of her first child, she remained on swing shift until TFD assigned her to Station 6 in March 2013. (DSOF 13(b-d)).   She remained assigned to Station 6 per her request until June 16, 2014, when she requested light-duty for the pregnancy of her second child.   (DSOF 13(d-e)).

All actions Plaintiff claims were discriminatory and/or retaliatory were unrelated to her need or request to express milk at work after her first child, and unrelated to any

complaints she made either verbally and/or in writing. The reasons for each action taken in the past 3 ½ years are explained in the City's dispositive motion (Doc. 115) and discussed in the sections above and below. All City/TFD actions were taken for legitimate business reasons. The admissible evidence the City presented in its dispositive motion, and here, demonstrates this. Under the *McDonnell* burden-shifting analysis, Plaintiff must show that the reasons the City provides for these actions are pre-textual. She has not done so in her cross motion and she will not be able to do so in response to the City's dispositive motion. Contrary to what she claims in her cross motion, she is not entitled to summary judgment under the *McDonnel Douglas* burden-shifting analysis.

**E.     Plaintiff was not retaliated against in violation of Title VII.**

Plaintiff's cross motion lists out various actions she claims were retaliatory "[o]ver the course of several years." (Doc. 117 at 16). All of these actions were done for legitimate business reasons as already discussed above and in the City's dispositive motion. (*See* Doc. 115, Section III.C.1-13.). The City addresses the additional claims Plaintiff asserts in her motion, not already addressed, as set forth below.

Plaintiff claims her husband's transfer from Prevention back out to Operations was retaliatory against her because it was done subsequent to her filing a complaint against Capt. Langejans. (See Doc. 117 at 16-17). The undisputable evidence shows otherwise. Gordon Clark was transferred due to the City Manager's Office directive to TFD to rectify the nepotism policy violation and his transfer had been discussed prior as part of a succession plan for the department. (*See* Doc. 115, Section III.C.9.). He was already on the list to be promoted to Battalion Chief and the department wanted him to return to Operations prior to his promotion. (*Id*.). He was not the only personnel moved as a result of the nepotism policy. (*Id*.).

The educational counseling Plaintiff received in March 2016 was not related to her complaint against Capt. Langejans. On its face, the documentation shows she was given this counseling because she was criticizing other inspectors and for disregarding her supervisor's statements. Capt. Langejans' name is not even mentioned. (Doc. 118-3, Ex.

11

III).  Plaintiff's other retaliatory claims relate to her transfer to Operations, the effective date of said transfer, and her husband's failure of probation as a Battalion Chief.  (Doc. 117 at 18-20).  All of these actions were addressed in the City's dispositive motion.  (*See* Doc. 115, Section III.C.10-13.).   The City has shown TFD took these actions for legitimate business reasons.  (*Id*.).  Plaintiff now has the burden to show with admissible evidence that the reasons provided are pre-textual and she cannot.

### F.      COT did not violate Section 215 of the FLSA.

#### 1.      Interview with OEOP and Assignment to Station 6.

Plaintiff's cross motion claims the City violated Section 215 of the FLSA because she was assigned to Station 6 after meeting with OEOP's Specialist Marty Macias on January 7, 2013, and "alleg[ed] that she was not being provided with an acceptable location to express milk."  (Doc. 117 at 20-21).  It is clear from Ms. Macias interview notes from January 7, 2013, that Plaintiff did not allege she was not provided appropriate spaces to express milk.  (See Doc. 118-1, Ex. J).  Plaintiff went to Ms. Macias to discuss the fact that TFD had not permanently assigned her to Station 12.  (*Id*.).  She specifically told Ms. Macias she wanted Station 12 because it was close to her mother and it would be more convenient for her mother to pick up the expressed milk.  (*Id*.).  When Plaintiff met with Ms. Macias, the majority of her swing shift assignments had been at Station 12.  (Doc.118-4, Ex. XXX at 8 and 10 of 95).  On one occasion she was assigned to Station 21 and once to Station 7, on October 29, 2012 and December 13, 2012, respectively.  (*Id*.; PSOF 13).

Plaintiff was assigned to Station 6 on March 22, 2013, after DC Rodriguez and AC Fischback became concerned that Plaintiff's need to express milk may interfere with TFD's ability to respond to emergency calls.  (*See* Doc. 115, Section III.C.5. at 17; DSOF 59-62, 69 & PSOF 56).  Her assignment to Station 6 resulted in her no longer being on swing shift and the captain on her shift was a medic who was able to cover for her should an emergency call come in while she was expressing milk.  (DSOF 70).  It is one of TFD's

slowest stations, meaning there was a greatly reduced chance Plaintiff's need to express milk would conflict with the need for an emergency response.  (*Id.*).

### 2.    Overtime, Trades, and Station 6's desirability.

Plaintiff was never denied overtime.  (*See* DSOF 73-74).  In fact, the one time she put her name on the overtime list was in November 2013, when she was assigned to Station 6.  (DSOF 75).  She worked that overtime shift.  (*Id.*; *See* Doc. 115, Section III.C.5. at 17-18).  The only trades she was denied was with her husband, Gordon Clark, because he was a captain at the time and only members of equal qualifications can do trades with each other.  (*Id.*; DSOF 76-79).  Her claim that Station 6 was an "undesirable work location" also has no merit.  Plaintiff liked Station 6 so much she insisted she stay assigned there well beyond her first child's one year birthday.  (DSOF 84-85).  TFD allowed her to do so and she remained there until she requested light-duty in June 2014. (DSOF 104).

### 3.    AC Fischback's comment.

Plaintiff claims AC Fischback's comment is direct evidence the decision to put her at Station 6 was because of her complaint to OEOP.  (Doc. 117 at 21-22).  Again, her "complaint" in January 2013, was that TFD would not permanently assign her to Station 12.  (Doc. 118-1, Ex. J).  She was not complaining about appropriate spaces to express her milk or reasonable breaks to do so under FLSA § 207(r). (*Id.*).  When AC Fischback stated, "well, that's what happens when you file a complaint with EEO," it had already been decided Plaintiff would  be assigned to Station 6.  (DSOF 69).  The decision was made on March 22nd and she received the verbal counseling on March 26th.  (DSOF 67, 69).  Moreover, AC Fischback made the comment in response to Plaintiff again requesting to be assigned to Station 12.  (DSOF 67).  By this time, Mr. Larsen's findings had come out and Station 12 was considered "non-compliant."  (*Id.*; Doc. 118-1, Ex. Q).  AC Fischback immediately apologized for the comment and Plaintiff cannot recall any other similar comment that anyone else at TFD thought she should not have gone to EOPD. (*See* Doc. 115, Section III.C.2. at 14; DSOF 67-68).

13

III.    **Conclusion**

Based on the foregoing, the City's Motion for Summary Judgment (Doc. 115), the City's Separate Statement of Facts (Doc. 116) and attached Exhibits (Docs. 116-1, 116-2, 116-3, 116-4, 116-5, 116-6), and the City's Controverting Facts filed contemporaneously with this Response, Plaintiff's Cross-Motion for Summary Judgment should be denied, and the City should be granted judgment in its favor as to all claims.

DATED September 19, 2017.

MICHAEL G. RANKIN
City Attorney

By:     s/Michelle R. Saavedra
Michelle R. Saavedra
Michael W. L. McCrory
Principal Assistant City Attorneys

I hereby certify that on September 19, 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Jeffrey H. Jacobson
JACOBSON LAW FIRM
2730 East Broadway Blvd., Suite 160
Tucson, AZ 85716
        *Attorney for Plaintiff*

By E. Ramirez