Michelle R. Saavedra
Michael W.L. McCrory
Principal Assistant City Attorneys for
MICHAEL G. RANKIN
City Attorney
P.O. Box 27210
Tucson, AZ 85726-7210
Michelle.Saavedra@tucsonaz.gov
State Bar No. 25728
Pima County Computer No. 66163
Michael.McCrory@tucsonaz.gov
State Bar Computer No. 3899
Pima County Computer No. 37268
Telephone: (520) 791-4221
Fax: (520) 623-9803
*Attorneys for Defendant City of Tucson*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| CARRIE FERRARA CLARK,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF TUCSON,<br><br>Defendant. | 4:14-cv-02543<br><br>**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**<br><br>(Hon. Cindy Jorgenson) |

Pursuant to Fed. R. Civ. P. 56 and LRCiv. 56.1, Defendant City of Tucson, through counsel undersigned, hereby submit its Reply in Support of its Motion for Summary Judgment (Doc. 115).

### MEMORANDUM OF POINTS AND AUTHORITIES

**I.  Plaintiff's Controverting Statement of Facts ("CSOF").**

Plaintiff's CSOF (Doc. 123), much like her Separate Statement of Facts in Support of Cross-Motion for Summary Judgment ("PSOF") (Doc. 118) disregards the Rules and applicable law. Plaintiff's CSOF must reference "the specific admissible portion of the record supporting [her] position if the fact [was] disputed." LRCiv. 56.1. Plaintiff did not comply.

Plaintiff disputed Defendant's Statement of Facts ("DSOF") Nos. 1, 3, 5, 6, and 59, fails to cite to any evidence in support thereof. Plaintiff must come forward with specific

1

facts to show that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e); *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993). She disputed DSOF Nos. 13b, 25, 29, 36, 40, 42, 44, 47, 48, 56, 61, 62, 67, 70, 73, 90, 179-181, 185, 200-203, yet cites to her self-serving declarations and nothing else in support thereof. "A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), *as amended* (Apr. 11, 1997) *citing Hansen v. United States,* 7 F.3d 137, 138 (9th Cir.1993); *United States v. One Parcel of Real Property,* 904 F.2d 487, 492 n. 3 (9th Cir.1990).

Plaintiff disingenuously disputes various DSOF that summarize her deposition testimony transcripts. Specifically, she disputes DSOF Nos. 17, 19, 26, 49, 54, 56, 57, 63, 137, 140, and 196. The City agrees these DSOF are not direct quotes from her testimony transcripts, but each statement of fact accurately summarizes the cited testimony and the City appropriately used said portions in support of its motion.

Plaintiff's CSOF disputes facts based on a "foundation" or "lacks supporting documentation" objection when the fact itself is taken from either a sworn declaration submitted in support thereof, or transcript from a deposition Plaintiff's counsel noticed in this matter. (*See* Doc. 116, DSOF and Doc. 123, CSOF Nos. 7, 9, 11, 39, 60, 62, 64, 79, 81, 87, 107-109, 111, 131-133, 135, 144, 146, 156, 165, 167, 174, 175-176, 182, 189, and 210). This court should give no credence to these disputes or objections because they are meritless.

Regardless of her claimed disputes to some of DSOF, Plaintiff's Opposition does not refute the arguments the City set forth in its motion and she has failed to meet her burden under the *McDonnell Douglas* burden-shifting analysis as discussed in more detail below.

**II. Response to Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Opposition").**

Plaintiff brought this lawsuit based on her belief the Tucson Fire Department ("TFD") and/or the City discriminated and/or retaliated against her by engaging in specific conduct, actions, or comments. In response to the City's Non-Uniform Interrogatories ("NUI") Plaintiff set forth the bases for her claims. (*See* Doc. 116-6, Exhibit 69 at 129-140). For purposes of its motion, the City did not dispute that these actions occurred. In fact, the City structured its motion to address Plaintiff's responses to the NUIs. In its motion, the City mistakenly cited to "DSOF 214" instead of "DSOF 212." (*See* Doc. 115 at 5, 8-12, and 19-21). However, it is evident in the substance of the motion that the City was referring to and addressing Plaintiff's responses to the NUIs. (*Id.*).

Plaintiff's Opposition does not show direct evidence of discrimination and/or retaliation in violation of the Fair Labor Standards Act ("FLSA") or the Pregnancy Discrimination Act ("PDA") under Title VII. The City's motion shows every alleged action or comment either did not result in an adverse employment action against Plaintiff, or if it did, there was a legitimate business reason for said action. The City's motion provided non-discriminatory and non-retaliatory reasons for each, therefore the burden shifted to Plaintiff to present admissible evidence showing the proffered reasons are pretextual under the *McDonnell Douglas* burden-shifting analysis. Plaintiff's Opposition fails to do so. Plaintiff's Opposition simply restates the allegations contained in her Third Amended Complaint ("TAC") and relies heavily on her self-serving declarations. This is not sufficient to defeat summary judgment.

**III. Plaintiff did not show she lost pay as a result of not having an appropriate lactation space or reasonable break times to express milk.**

The City presented admissible evidence showing all stations had an appropriate space in compliance with the law. (*See* Doc. 115, Section III.A.2.). In doing so, the City also proved Matthew Larsen's findings were an inaccurate application of the law because there is no legal requirement to provide a nursing employee with a room with a locking door. (*Id.*). The City also proved Plaintiff was assigned to swing shift prior to her need to

3

express milk. (DSOF 13(a)), a fact conceded by her husband, Gordon Clark. (*See* Doc. 118-1, Ex. A2, ¶ 7)).

Plaintiff cannot dispute she was offered an assignment to Station 20 upon her return in October 2012, but declined the assignment because she wanted Station 12. (*See* DSOF 18-19, PSOF 10-11, 14-15, 19). This fact is proven by Plaintiff's own statements and admissions in this case. (*See* Doc. 125, Defendant's Controverting Statement of Facts in Support of Its Response to Plaintiff's Cross Motion for Summary Judgment ("City's Controverting Facts"), No. 11 and Doc. 125-1, Exhibit 70)). Her desire to be assigned to Station 12 had absolutely nothing to do with stations not having appropriate spaces for her to express milk. She wanted Station 12 to be closer to her mother.

The City's Response to Plaintiff's Cross Motion for Summary Judgment ("City's Response") addressed Plaintiff's claim regarding taking sick or vacation leave to avoid station assignments. (*See* Doc. 124, Section II.A.). Plaintiff testified she did not inform TFD schedulers she was taking leave to avoid a specific station and her husband testified he did not recall ever going to anyone in the department to discuss this. (DSOF 41; Doc. 125, City's Controverting Facts No. 27 and Doc. 125-1, Exhibit 77). It is clear, based on the irrefutable evidence, TFD was not aware she was taking leave for this reason. Plaintiff's Opposition does not present any admissible evidence to prove otherwise. Even if she took paid time off to avoid stations it was based on her inaccurate belief some stations did not have an appropriate space to express milk. Plaintiff's misconceptions do not provide her with a legal claim against the City under the FLSA.

Plaintiff's Opposition claims she was deprived of the opportunity to earn overtime and make trades at Station 6. The City addressed this in its motion and its Response and proved this to be untrue. (*See* Doc. 115, Section III.C.5.; Doc. 124, Section II.F.2.). Plaintiff did not dispute the fact she only requested overtime once and she worked it. (*See* CSOF 73-75). The only trivial dispute she presented in her CSOF relating to trades was the City's interchangeable use of the terms "equal qualifications" versus "equal rank."

4

(*See* CSOF 76). Plaintiff failed to present any evidence linking her alleged deprivation of overtime or trades to a discriminatory or retaliatory motive.

### IV. Mr. Larsen's findings and TFD's subsequent decision to designate a nursing room with a locked door does not prove a violation of the FLSA.

Plaintiff's Opposition argues the City's "own documents demonstrate" it was in violation of FLSA. (Doc. 122, Section II.B. at 4). To the contrary, the City has shown with admissible evidence all stations were compliant with the law. (*See* Doc. 115, Section III.A.2.; Doc. 124, Section II.A.). Nowhere in the FLSA requirements does it state a locked door is required. (*See* FLSA, 29 U.S.C. § 207(r)). Mr. Larsen's findings do not change the law this court must apply in determining whether or not Plaintiff has a viable claim under the FLSA. Also, the fact TFD elected to exceed FLSA's requirements when it designated a nursing room with a locked door at every station does not provide Plaintiff with a legal claim against the City. Plaintiff's complete reliance on these facts makes it clear she has no evidence to show the City violated the FLSA.

### V. Plaintiff's combined Title VII and FLSA discrimination and retaliation arguments.

Plaintiff's Opposition "combines her FLSA and Title VII discrimination and retaliation analysis." (Doc. 122, Section II.C.). She wants this court to believe this is a "factually dense and complicated matter," it is not. The structure of Plaintiff's Opposition makes it difficult and confusing to discern what she claims was discrimination and/or retaliation and under what legal theory she relies, FLSA or PDA under Title VII. These two legal theories are distinct and Plaintiff should have addressed them as such. The FLSA deals with Plaintiff's right to have an appropriate lactation space and reasonable break times to express milk, whereas the PDA under Title VII prohibits the City from treating her any differently because of her need to express milk.

Contrary to Plaintiff's assertion, this case is simple. There was no FLSA violation on the part of the City, as already discussed above and in the City's motion, as well as, the City's Response. (*See* Doc. 115, Section III.A.2.; *see also* Doc. 124, Section II.A.).

Plaintiff was never discriminated or retaliated against for complaining about lactation spaces in violation of the FLSA. She was never discriminated or retaliated against because of her need to express milk in violation of Title VII. The City's motion addresses every single allegation of discrimination and retaliation raised in Plaintiff's response to the NUIs, which were attached to the City's Separate Statement of Facts ("DSOF") as Exhibit 69 (Doc. 116-6 at 129-140). Rather than address each argument the City presented in it motion, Plaintiff's Opposition merely regurgitates her claims relying solely on the allegations contained in her TAC and her self-serving declarations. Her TAC allegations and self-serving declarations do not create a genuine issue of material fact and do not defeat the City's arguments.

Under Section II.C.1 of Plaintiff's Opposition, she states in conclusory fashion the following are "direct evidence of discriminatory animus:" 1) TFD chose not to assign her to Station 20; 2) she was accused of wanting to be closer to her mother; 3) TFD accommodated other employees; 4) BC McDonough, DC Nied, and DC Rodriguez made comments during a meeting with her in November 2012, then her request for Station 12 was denied and put out to bid; 5) Captain L'Heureux made a comment about her not deserving "special accommodations," then failed to assign her to "compliant stations;" 6) statements were made during the March 20, 2013 phone call and then she received an educational counseling for that same call; 7) during her educational counseling AC Fischback commented "that's what happens when you file a complaint with EEO" in response to Plaintiff again requesting Station 12; 8) no one did anything about some note on the door at Station 6 that said "Carrie Clark;" and 9) she was singled out during the May 22, 2014 fire drill.

All of the above claims have been addressed either in the City's motion (Doc. 115), or the City's Response (Doc. 124) and the City's Controverting Facts with Exhibits (Doc. 125 and Doc. 125-1, respectively). The evidence, which has not been refuted by Plaintiff, is that she chose not to be assigned to Station 20 because she wanted Station 12, which was closer to her mother. (*See* Section III, *supra*.). Plaintiff presents no admissible evidence to

support her claim that other employees were accommodated, nor does she show these other employees were similarly situated and treated more favorably. (*See* Doc. 124, Section II.D.). Any comments that may have been made during the November 2012 meeting are not connected to any adverse employment action. Plaintiff was assigned to work at Station 12, while on swing shift, until January 2013. (PSOF 26; *see also* DSOF 25). Station 12 was put out to bid and won by a senior paramedic before TFD was advised of her request. (DSOF 25). Capt. L'Heureux had no knowledge of any conflict or issues with where he assigned Plaintiff until March 2013. (*See* Doc. 125, City's Controverting Facts Nos. 27 and 69). Capt. L'Heureux did his best to assign Plaintiff to the stations she wanted, and he was not the only personnel responsible for her assignments. (DSOF 39-40, 42). Plaintiff admits not everyone knew about her situation. (Doc. 125, City's Controverting Facts No. 34). Plaintiff does not link any of the comments made by Mrs. Acosta during the March 20, 2013 phone call with any adverse action. Mrs. Acosta was not involved in the educational counseling and has no authority regarding assignments. (DSOF 66, *see also* Doc. 125, City's Controverting Facts No. 72). Plaintiff does not connect any adverse action to the comment AC Fischback made during the educational counseling meeting. The decision to assign her to Station 6 was made during the March 20, 2013 phone call. Her assignment to Station 6 was based on legitimate business reasons, which ultimately made it easier on Plaintiff and she liked it there so much she requested to remain there well beyond her first child's first birthday. (*See* Doc. 115, Section III.C.5. at 17). The City addressed the May 2014 drill and presented admissible evidence showing Plaintiff was not singled out and it was not conducted to discriminate or retaliate against her. (Doc. 115, Section III.C.6.). Plaintiff has not presented sufficient evidence to refute the City's position.

Under Section II.C.2 of Plaintiff's Opposition, she again relies on the claims in her TAC and her self-serving declarations and does not address the City's motion. (Doc. 122 at 13-17). Plaintiff had the opportunity to present admissible evidence to show the City's proffered reasons for each action is pretext and failed to do so. This section is particularly

difficult to reply to because she continually moves from a discrimination argument to a retaliation argument and overlaps the two, again with no specifics regarding what legal theory she is discussing. (*Id.*).

All of the actions set forth in this section have already been addressed in the City's motion, or in the City's Response. Plaintiff's Opposition does not add anything new that requires any additional reply from the City as can be seen by virtue of the fact that she cites only to her PSOF. The City refers this court back to its prior briefings in this matter, which address each action, conduct, or comment Plaintiff refers to. The City has proven nothing was done to discriminate or retaliate against Plaintiff. (*See* Doc. 115; *see also* Doc. 124, Doc. 125 and 125-1).

**VI. Conclusion.**

Plaintiff's Opposition does not refute the admissible evidence or the legal arguments presented in the City's motion. The City presented proof of non-discriminatory and non-retaliatory reasons for every action, conduct, or comment Plaintiff bases her FLSA and PDA, Title VII discrimination and retaliation claims. Plaintiff failed to meet her burden to show the proffered reasons are pretextual, therefore the City is entitled to judgment as a matter of law for all claims.

DATED October 3, 2017.

                                           MICHAEL G. RANKIN
                                           City Attorney

                                           By:   <u>s/Michelle R. Saavedra</u>
                                                      Michelle R. Saavedra
                                                      Michael W. L. McCrory
                                                      Principal Assistant City Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Jeffrey H. Jacobson
JACOBSON LAW FIRM
2730 East Broadway Blvd., Suite 160
Tucson, AZ 85716
    *Attorney for Plaintiff*

By E. Ramirez