**JACOBSON LAW FIRM**
2730 EAST BROADWAY BLVD., SUITE 160
TUCSON, ARIZONA 85716
TELEPHONE (520) 885-2518
FACSIMILE (520) 844-1011
jeff@jhj-law.com
Jeffrey H. Jacobson, SB#019502
Attorney for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| CARRIE FERRARA CLARK,<br><br>         Plaintiff,<br><br>vs.<br><br>CITY OF TUCSON,<br><br>         Defendant. | No. CV-14-02543-TUC-CKJ<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Hon. Cindy K. Jorgenson |

Plaintiff Carrie Ferrara Clark replies to Defendant's Response[1] to her Cross-Motion for Summary Judgment on her Third Amended Complaint as follows. For the reasons discussed below, there are no genuine issues as to any material fact such that a reasonable jury could find in favor of Defendant on any of the claims in Plaintiff's Third Amended Complaint. Therefore, as a matter of law, summary judgment in favor of Plaintiff is appropriate.

---

[1] Pursuant to LRCiv. 7.2(m), Defendant's response should be stricken as untimely. Plaintiff filed her Cross Motion for Summary Judgment on August 18, 2017. Defendant had 30 days to file its response. LRCiv. 56.1(d); FRCP Rule 56. Therefore, Defendant had until September 18, 2017, at 11:59:59 PM to file its Response. FRCP 6(a)(1). Defendant did not file its Response to Plaintiff's Cross Motion for Summary Judgment until September 19, 2017, at 8:12 AM MST. Defendant never contacted undersigned to request an extension of time, nor was there any indication of an emergency requiring additional time. No Motion for Extension of Time was filed with the Court. Absent excusable neglect, Defendant's response should be stricken as untimely.

### A. Defendant's Attempts to Minimize or Dismiss Plaintiff's Declaration are Unavailing

Defendant's Response (Doc. 124) repeatedly refers to Plaintiff's Declaration (Exhibit A1) as "self-serving" in an attempt to impeach or weaken its impact. Nevertheless, the Ninth Circuit acknowledges that declarations, in and of themselves, are self-serving "and this is properly so because the party submitting it would use the declaration to support his or her position. *Nigro v. Sears, Roebuck and Co.*, 784 F.3d 495, 497 (9th Cir. 2015), *citing S.E.C. v. Phan,* 500 F.3d 895, 909 (9th Cir.2007) (finding the district court erred in disregarding declarations as "uncorroborated and self-serving"). While the source of the evidence may have some bearing on its credibility and its weight, the district court may not disregard a piece of evidence at the summary judgment stage solely based on its self-serving nature. *Id.* On the other hand, an affidavit lacking detailed facts and any supporting evidence is insufficient to create a genuine issue of material fact. *See F.T.C. v. Publ'g Clearing House, Inc.,* 104 F.3d 1168, 1171 (9th Cir.1997). Defendant claims that Plaintiff's Declaration contains "no reference to any admissible evidence in support." Doc 125, p. 1, ln. 23-24. This is misleading. While Plaintiff's Declaration does not contain direct references to supporting exhibits, Plaintiff couples her declaration with citations to relevant exhibits, where available, in her Separate Statement of Facts. Doc. 118.

It is also worth noting that Defendant's Motion for Summary Judgment is supported by *nine* of these so-called "self-serving" declarations, or just under 12 percent of its 77 exhibits. Exhibits 1-2, 8, 13, 20, 27, 42, 53, 63. Regardless, Defendant's arguments are unavailing. Plaintiff's Declaration is valid evidence; it is her version of the events in this case, based on her personal knowledge. Her Declaration is limited to legally relevant matters, and is internally and externally consistent. It is not as if Defendant did not have a chance to depose Plaintiff in this case – it did so on *four* different occasions.

### B. There is No Dispute of Material Fact that TFD Violated 29 U.S.C § 207(r)

The Fair Labor Standards Act (FLSA) must be interpreted broadly. *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 597 (1944). The FLSA is "remedial and humanitarian in purpose. We are not here dealing with mere chattels or articles of trade

but with the rights of those who toil, . . . Those are rights that Congress has specifically legislated to protect. Such a statute must not be interpreted or applied in a narrow, grudging manner." *Id.*

According to 29 U.S.C. § 207(r), employers must provide: 1) a reasonable break time for an employee to express breast milk for her nursing child for 1 year after the child's birth each time such employee has need to express the milk; and 2) a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk. The FLSA limits liability for violations of Section 207(r) to "unpaid minimum wages." *Id.* at **§** 216(b).

Because TFD assigned Plaintiff to a swing shift when she returned from maternity leave, neither TFD nor Plaintiff knew, on any given shift, where Plaintiff would be assigned. PSOF 31, 35, 159; Doc 87 ¶ 14; Exh. EEE ¶ 14. On at least 11 occasions between December 2012 and March 2013, Plaintiff took vacation and/or sick leave to avoid having to work at stations where she knew she would not have a place, shielded from view and free from intrusion from coworkers and the public. PSOF 27-28. Per section 20 of the Labor Agreement between Defendant and the Tucson Firefighters Association Local 479, an affiliate of the International Association of Fire Fighters, at the completion of their employment, TFD employees may choose to sell back their sick leave up to 288 hours at 100% of their hourly rate. Any sold-back sick leave above and beyond 288 hours is paid back to the employee at 50% of their hourly rate. Exhs. OOOO; SSSS ¶ 2. Here, Plaintiff had to give up employer-granted vacation and sick leave because Defendant did not provide her with an assignment to a space to express her breastmilk that was free from intrusion. However, whether Plaintiff suffered money damages is a red herring in the summary judgment phase. Plaintiff has requested a bifurcation of liability and damages in this case and damages, in the form of wage loss, are not part of the proof calculus in a 207(r) claim.

Next, Defendant argues that Plaintiff's FLSA claim is "based solely on EOPD/OEOP investigator Matthew Larsen's findings." Doc. 124, p. 3 ln 1. This is not true as Plaintiff has submitted Declarations, deposition testimony excerpts, and other documents supporting her FLSA claim. Further, the OEOP findings alone establish that no trier of fact could find for

the Defendant on Count One of Plaintiff's Third Amended Complaint. Next, there is no record evidence that TFD – until this lawsuit was filed - *ever* disputed OEOP's findings. In fact, on May 13, 2013, Fire Chief Critchley wrote an official memorandum to OEOP Program Manager Robert Barton which states, in relevant part:

> Tucson Fire has equipped all its stations with a location that can be used as a nursing room, pursuant to PPACA requirements. As part of the review your office conducted with TFD's HR Manager, the following stations were not in compliance. This has been corrected.

Defendant's Exhibit 24, Doc. 116-3.

Despite these unqualified admissions by TFD's highest ranking officer, Defendant now claims (without any supporting evidence) that "all stations were compliant with federal law" or some version of the same, uncorroborated claim. Doc 124, p. 3, ln. 11-12. *See, e.g., Id.* at p.4 ln. 12-13) ("Every station had a space available that was in compliance"); Doc. 115, p. 2 ln. 7-8 (". . . all stations had rooms that complied with federal law, . . .") HR Manager Acedo was not only with OEOP during its inspection, but she was also copied on his May 13, 2013, memorandum to OEOP. Critically, HR Manager Acedo's Declaration, however, does *not* contain any reference to *any* disagreement with OEOP's findings that 43 percent of TFD's fire stations were not in compliance with federal law protecting nursing mothers in the workplace. Exhibit 8. Defendant also conspicuously omits any evidence from TFD Captain Mike Ward, who accompanied OEOP on its second day of fire station inspections. *See* Exhibit Q.

Defendant also attempts to impeach the OEOP investigator and his findings by claiming that the investigator "misapplied the law" or some version of the same sentiment. Doc. 124, p. 4 ln. 6-7; see also DSOF 33. This is another argument of convenience for Defendant. When an OEOP/EOPD investigation resulted in information that was favorable to Defendant's position, Defendant describes it as "thorough" and relies on its findings as if it were gospel. *See, e.g.*, Doc. 115, p. 3 ln. 9-11. When EOPD found that TFD was in violation of the City of Tucson's Administrative Directive on nepotism, Defendant – likely to try to avoid the eventual pretext argument - embraced EOPD and used it as its alleged rationale to transfer Plaintiff's husband, Gordon Clark. *Id.* at p. 22-23.

4

Further, Defendant repeatedly claims that the FLSA "does not require a private bedroom with a lock" or words to that effect. Doc. 115, p. 7 ln. 6-7; *see also* Doc. 124, p. 4 ln. 9. The FLSA requires that covered employers provide a space, other than a bathroom, that is shielded from view and free from intrusion." The United States Department of Labor's (DOL) initial interpretation of the 'space requirement' is that the law "requires employers make a room (either private or with partitions for use by multiple nursing employees) available for use by employees taking breaks to express milk." Reasonable Break Time for Nursing Mothers, 75 Fed. Reg. at 80075. In cases where a room is *not* practicable, the requirement can be met by creating a space with partitions or curtains. *Id.*

For any lactation space provided by the employer, it "must ensure that the employee's privacy through means such as signs that designate when the space is in use, or a lock on the door." *Id.* at 80076. ***The law, therefore, puts the onus squarely on the employer to provide a legally-compliant lactation space for its employees***. And DOL guidance clearly contemplates either a sign *or* a lock on a door, neither of which TFD made available until and only after Plaintiff complained.

Also critical to this case was the DOL's concern with health and sanitation concerns that locker rooms bring. Specifically, "locker rooms might not be appropriate because "wet environments are at risk of being contaminated with pathogenic bacteria and have been linked to outbreaks of methicillin-resistant *Staphylococcus aureus* (MRSA)." *Id.* Specifically referring to TFD's assignment of Plaintiff to Station 9, Defendant claimed that this station was in compliance with federal law because there was a study room there which had a door. Exhibit 10, p. 34 ln. 10-20. To that end, Plaintiff expressed her concerns that the study room could have MRSA, fecal matter, blood, or other types of diseases of organisms in it. She would not want to set up her pump equipment in a room where someone could have, for example, had blood on their pants and did not know it. *Id.* at p. 36, ln. 1-13.

Finally, DOL is clear on one important point. Employers are obligated to follow the law, no matter how logistically difficult. 75 Fed. Reg. at 80076-77. Despite this guidance, Defendant insists on shifting the blame to Plaintiff to make her requests for compliant lactation space unreasonable.

**C. As a Matter of Law, TFD Subjected Plaintiff to Gender Discrimination and Retaliated Against Her in Violation of the FLSA and Title VII**

The FLSA makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter." 29 U.S.C. § 215(a)(3). Claims for retaliation under this provision are subject to Title VII's burden-shifting analysis. *See Spata v. Smith's Food & Drug Ctrs., Inc.,* 253 F. App'x 648, 649 (9th Cir. 2007). Where a Plaintiff produces direct evidence that her employer was motivated by retaliatory animus, she may proceed under the "mixed motive" proof scheme, under which the burden shifts to the defendant to prove that it would have taken the adverse action even if the plaintiff had not engaged in protected activities. *Knickerbocker v. City of Stockton,* 81 F.3d 907, 911 (9th Cir.1996). Courts employ the McDonnell Douglas burden shifting scheme where a plaintiff relies on circumstantial evidence to prove that retaliatory animus motivated the employer to take the disputed adverse employment action. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-804 (1973).

Direct evidence is "'evidence of the conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude . . . sufficient to permit the fact finder to infer that the attitude was more likely than not a motivating factor in the employer's decision.'" *Everts v. Sushi Brokers LLC,* U.S. Dist. Az. (CV015-02066-PHX-JJT) (March 27, 2017) *quoting Shelley v. Geren*, 666 F.3d 599, 615-16 (9th Cir. 2012). Direct evidence "requires an admission by the decision-maker that his or her actions were based on the prohibited animus. Absent such remarks, a plaintiff must show a nexus between a decision-maker's actions and a superior's discriminatory remarks." *Id.* (citing *Day v. LSI Corp.* 174 F.Supp.3d 1130, 1162 (D. Ariz. 2016); *Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003). In this case, there is ample direct evidence of discriminatory animus such that no dispute of material fact exists, making summary judgment appropriate.

Before Plaintiff returned to work after the birth of her first child, TFD was aware of her needs as a nursing mother and was seeking a long-term opening in a legally-compliant

location. PSOF 12, 14. Plaintiff initially asked to be assigned to Station 20. PSOF 10-11, 13; CSOF 18, 25. However, when she returned to work, TFD's assignments her working at Station 12 and Station 21 for her first two shifts. PSOF 13. BC McDonough asked Gordon Clark, Plaintiff's husband, whether Station 12 was a better fit for Plaintiff and if she would rather be at Station 12 than at Station 20. He said yes. PSOF 16. Station 12 was a workable option for Plaintiff because, in part, it had two other mothers on the same shift as Plaintiff, as well as a mother on a different shift, one of whom was also pumping breast milk. PSOF 17. Instead of giving her a permanent assignment to Station 12, TFD eventually put the spot at Station 12 out to bid. PSOF 18-19, 22.

On or about November 12, 2012, BC McDonough brought Plaintiff to TFD headquarters to meet with Deputy Chief (DC) Ed Nied and DC Rob Rodriguez. During that meeting, DCs Nied and Rodriguez accused Plaintiff of simply wanting to be closer to her mother who was picking up Plaintiff's expressed breastmilk. BC McDonough, DC Nied, and DC Rodriguez also suggested that Plaintiff should just take more time off from work and that they could not remember any other women in the past having the same issues with breastfeeding. PSOF 21. These statements are direct evidence of discrimination.

In enacting the Pregnancy Discrimination Act, Congress required employers to provide women-only benefits or otherwise incur additional expenses on behalf of women in order to treat the sexes the same. *Erickson v. Bartell Drug Co.*, 141 F. Supp. 2d 1266, 1270 (W.D. Wash. 2001) (internal citation omitted). TFD also treated other male employees with non-pregnancy related needs differently. PSOF 23-25. Plaintiff has presented sufficient evidence for a jury to conclude that TFD treated her less favorably than other similar non-breastfeeding employees regarding both the manner and place of her assignments. *Young v. United Parcel Service, Inc.*, 135 S. Ct. 1338, 1344 (2015).

Next, TFD's assignment scheduler, Captain Rick L'Heureux, when told that Plaintiff needed to be assigned to a station with appropriate lactation space said, "I don't think she deserves any special accommodations" (or words to that effect). PSOF 27.

On March 20, 2013, TFD assigned Plaintiff to another station that did not have legally-compliant lactation space. When Plaintiff spoke with then-Assistant Chief (AC)

Michael Fischback, DC Rodriguez and HR Manager Acedo, about this problem, HR Manager Acedo told Plaintiff that her pumping seemed excessive and that "it seems to me that you're not fit for duty." PSOF 35-41; PSOF 159; Doc 87 ¶ 43; Exh. EEE ¶ 43. HR Manager Acedo also suggested that Plaintiff simply wake up her Captain (EC) or BC when she needed to express breastmilk. PSOF 37-38. Plaintiff reacted to HR Manager Acedo's suggestion, leading to TFD formally disciplining Plaintiff. PSOF 58-59. These statements – from TFD's human resources manager no less - are direct evidence of causation between Plaintiff's protected status and its TFD's assignments and other actions in this case.

On March 26, 2013, at the same meeting that TFD formally disciplined Plaintiff for her March 20 comments, Plaintiff asked AC Fischback why she could not work at Station 12. AC Fischback said that Station 12 was not on TFD's list of stations that were in compliance. When Plaintiff said that the only other nursing mother in TFD was at Station 12, AC Fischback replied, "Well, that's what happens when you file a complaint with EEO." When Plaintiff pointed out that she had not filed a complaint, AC Fischback said that someone had gotten them involved. PSOF 64. AC Fischback's statement was not some stray remark; it is a clear "if-then" statement. *If* Plaintiff had not filed a complaint with EEO or caused EEO to get involved, *then* she would not have been disciplined – at least according to AC Fischback.

In January 2014, Plaintiff informed TFD that she was pregnant with her second child. PSOF 68. On May 14, 2014, BC Nofs asked HR Manager Acedo a "personnel" question. "Was out there today and the crew had this concern – PM Clark is pregnant and apparently showing quite a bit. The concern is her ability to pull hose, lift stretchers, preform [sic] all the functions of a firefighter and PAU medic." Exhibit HHHH. BC Nofs also tried to find a policy in TFD's Manual of Operations, "but both the old and new say – 219 – Pregnancy Policy (currently under review) . . . . So that was no help." *Id*. HR Manager Acedo responded, "If Captain McDonough has documented tasks she is required to perform but cannot due to her condition, then we can request an evaluation." *Id*. Eight days later, on May 22, 2014, Captain McDonough forced Plaintiff into performing a firefighter drill by herself. Temporal proximity between a protected activity and an adverse

employment action, coupled with employer knowledge of the protected activity, raises a strong inference of unlawful retaliation sufficient to establish causation through the timing-knowledge test. *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987).

Further, TFD's excuses for this drill are inconsistent, strain credibility and as such, are a mere pretext. A plaintiff can prove pretext in two ways: (1) indirectly, by showing that the employer's proffered explanation is "unworthy of credence" because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer. *Chuang v. Univ. of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1127 (9th Cir. 2000) (internal citation omitted.) In this case, there are three different explanations for the drill. According to BC Nofs, the drill occurred because firefighter McKendrick "was ready to test for an engineer rank, . . ." DSOF 97. BC Nofs' May 22, 2014, Memorandum, indicates that Captain McDonough said that "the drill was in response to a call they had the previous shift in which several incidents brought safety concerns to light." Exhibit 36. According to Captain McDonough, however, he drilled "because the firefighter was in the process of pursuing engineer certification and I thought this experience would help him prepare for an upcoming test." DSOF Exhibit 27 ¶ 12 ln. 13-15. Nevertheless, before an employee can test for an engineer rank, they have to successfully complete certification class. Exh. SSSS ¶ 15. These instances of shifting, inconsistent, conflicting explanations for the drill represent clear pretext.

Plaintiff has also proven a prima facie case of retaliation under the *McDonnell Douglas* burden-shifting analysis. There is no genuine dispute that Plaintiff is a member of a protected class, or that TFD failed to accommodate her as required by law to provide her with a place, other than a bathroom, that was shielded from view and free from intrusion from coworkers and the public so she could express her breastmilk. PSOF 10-11, 13-22, 26-28, 35, 42, 45, 48, 64, 66, 74, 77-78, 81, 84, 86-87. TFD does not follow its Rules of Assignment and can make exceptions based on "management rights." PSOF 23-24. TFD has deviated from its Rules of Assignment for male employees who have been convicted of

driving under the influence, charged with other criminal offenses, and employees whom are on a work improvement plan. PSOF 24; Exhibit H, p. 88-90 of 194.

As noted in her Opposition to Defendant's Motion for Summary Judgment, TFD unlawfully discriminated and retaliated against Plaintiff the following actions. Doc. 122.

- assigning her to work at non-compliant fire stations (PSOF 27, 33);
- formally disciplining her (PSOF 58-59);
- failing to address, discourage, or correct inappropriate, discriminatory, and harassing behavior in TFD (PSOF 55, 70, 73-74);
- refusing to assign her temporarily to Station 12 (PSOF 15-18, 22, 64);
- singling her out to perform firefighting drills while she was pregnant with her second child (PSOF 70);
- changing her start time while she was on light duty;
- forcing her to get a doctor's note to exercise, and restricting where she could exercise (PSOF 94-96);
- withdrawing time from her vacation bank without her consent (PSOF 97);
- failing to adequately and properly address the hostile work environment in Fire Prevention (PSOF 123);
- using its investigation into Captain Langejans to justify transferring her husband, Gordon Clark, to a lower paying, less desirable position, under a nepotism policy that TFD does not otherwise enforce (PSOF 126-129);
- issuing her an Educational Counseling for disturbing workplace harmony when she complained of Captain Langejans' harassment (PSOF 133-34);
- involuntarily transferring her from Fire Prevention to Operations and retroactively enforcing its new seniority policy to effectively strip her of two years of seniority (PSOF 135-39);
- failing to properly investigate and prevent TFD employees from referring to its new Nursing Rooms Policy as the "Carrie Clause" or the "Carrie Rule." PSOF 70, 74, 76, 81-83.
- transferring her to a light duty position in which she had to report to someone she had deposed the day before (PSOF 142-44);
- changing its seniority policy to calculate seniority for time worked in each job classification, then making it retroactive to one day after Plaintiff's transfer to Operations from Fire Prevention became effective, stripping her of two years of seniority (PSOF 139);
- failing to pay her to attend Defendant's depositions of her (PSOF 113, 118, 120);
- constructively demoting her by forcing her to demote to avoid being placed back on swing shift as a paramedic in a hostile work environment (PSOF 149); and
- refusing to pay her full "$150 Club" benefit (PSOF 150); and
- failing Gordon Clark during his probationary period in the Battalion Chief position in violation of City policies (PSOF 152).

Any of these, standing alone, qualify as "adverse treatment that is reasonably likely to deter employees from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1239-40 (9th Cir. 2000). Under the totality of the circumstances, a reasonable jury could conclude that TFD subjected Plaintiff to "a pattern of ongoing and persistent harassment severe enough to alter the conditions of [her] employment." *Morgan v. Nat'l R.R. Passenger Corp.,* 232 F.3d 1008, 1017 (9th Cir.2000), *rev'd in part on other grounds,* 536 U.S. 101 (2002).

### D. Conclusion

No genuine issue of material fact exists to dispute that since October 27, 2012, TFD has discriminated against Plaintiff and retaliated against her under the FLSA and Title VII. Defendant lacked any policy to guide its fire department on how to provide legally-compliant lactation space in its fire stations. Plaintiff attempted to resolve the issue but was met with discrimination and retaliation for engaging in her legally-protected activity. For these reasons, Plaintiff respectfully requests summary judgment on all of her claims and for this Court to set a further hearing on damages.

DATED this 3rd day of October, 2017.

**JACOBSON LAW FIRM**

 *s/Jeffrey H. Jacobson*
Jeffrey H. Jacobson
*Attorney for Plaintiff*

### CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michelle Saavedra
Michael W.L. McCrory
Principal Assistant City Attorneys
Office of the City Attorney, Civil Division
255 W. Alameda, 7th Floor
Tucson, Arizona 85701
*Attorneys for Defendant*